# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, INC., | ) | |
| | ) | Civil Action No.: 1:16-cv-06097 |
| Plaintiff, | ) | |
| v. | ) | Judge: |
| | ) | |
| TECHTRONIC INDUSTRIES CO. LTD., | ) | |
| TECHTRONIC INDUSTRIES NORTH AMERICA, | ) | **JURY TRIAL DEMANDED** |
| INC., ONE WORLD TECHNOLOGIES INC., OWT | ) | |
| INDUSTRIES, INC., ET TECHNOLOGY (WUXI) | ) | |
| CO. LTD., AND RYOBI TECHNOLOGIES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, the Chamberlain Group, Inc. ("CGI"), complains against Defendants, Techtronic Industries Co. Ltd., Techtronic Industries North America, Inc., One World Technologies Inc., OWT Industries, Inc., Et Technology (Wuxi) Co. Ltd., and Ryobi Technologies, Inc. ("Defendants"), as follows:

## GENERAL ALLEGATIONS

1.  CGI is a company incorporated under the laws of the State of Connecticut with its principal place of business in Elmhurst, Illinois.

2.  CGI was founded in 1906 and offers innovative access control devices including residential garage door openers, commercial door operators, gate access solutions, home connectivity products, and related accessories. CGI is the leader in residential garage door openers and commercial door operators, with products grounded in safety, security, connectivity, and reliability.

3.      Amongst other product offerings, CGI develops, manufactures, and sells the well-known LiftMaster® products, which have been recognized as the number one brand of professionally installed garage door openers as well as highly preferred Do-It-Yourself Chamberlain® branded products, which are present in a majority of garages in America.  As an inventive company, always seeking ways to better serve its customers and consumers with additional features and functionality (in addition to safety and security), CGI also offers its MyQ® technology for remote monitoring and control of the home and business, including garage doors, lights, and gates, both as a retrofit for most major brands of garage door openers and on LiftMaster® and Chamberlain® MyQ®-enabled product lines.

4.      In order to continually improve its product offerings for its customers and consumers, CGI invests substantial resources in research and development of access control products—including in developing products having new and improved functionality, quality, and security.  Over the years, CGI has received accolades for being an innovation leader in this field of technology and has received numerous seminal and valuable patents for its inventions.  CGI relies upon its patents to maintain and protect its reputation as the industry leader in access control technology, and to protect its customers and consumers from inferior and/or imitation devices that may suffer from safety, security or other issues.

5.      CGI's patents in this field include U.S. Patent No. 7,635,966 (referred to herein as the '966 patent), which claims, e.g., inventions for a system that provides a rechargeable battery backup for a barrier movement operator, such as garage door or gate openers, that comprises a barrier movement operator for controlling the movement of a moveable barrier, a head unit for commanding the movable barrier, a battery charging station in electrical communication with at least one rechargeable battery and in electrical communication with the head unit, circuitry electrically connected to the battery charging station to supply power from the rechargeable

2

battery to the head unit, and electrically powered equipment other than and physically separate or separable from the barrier movement operator that comprises an apparatus for receiving the rechargeable battery and to be powered by the rechargeable battery to perform a predetermined function.

6.     The '966 patent's inventions provide many new and useful features.  For example, the '966 patent describes a novel battery charging station that derives power from a fixed storage location where a garage door head unit is installed, where a single battery can be used to provide backup power to the garage door motor in addition to providing power to tools that are often utilized or stored in a garage such as a saw, a drill or a light.  The '966 inventions allow users to conveniently minimize the number of batteries and battery charging stations that are needed to keep on hand and to realize the cost and space savings benefits associated with the '966 inventions.

7.     CGI's patents in this field further include U.S. Patent No. 7,224,275 (referred to herein as the '275 patent), which claims, e.g., inventions for a movable barrier operator comprising a controller having a plurality of potential operational status conditions defined, at least in part, by a plurality of operating states, a movable barrier interface that is operably coupled to the controller, a wireless status condition data transmitter that is operably coupled to the controller, wherein the wireless status condition data transmitter transmits a status condition signal that: corresponds to a present operational status condition defined, at least in part, by at least two operating states from the plurality of operating states; and comprises an identifier that is at least relatively unique to the movable barrier operator, such that the status condition signal substantially uniquely identifies the movable barrier operator.

8.     The '275 patent's inventions provide many new and useful features.  For example, the '275 patent describes a novel method of wirelessly monitoring the status of features that can

be associated with the environment of modern garage door openers. The '275 patent also provides users with the security and assurance of knowing that the conditions being monitored are unique to the user and not to neighboring systems.

9.      Together, the '966 and '275 patents are referred to herein as the "Asserted Patents." The United States Patent and Trademark Office ("USPTO") examined the Asserted Patents over a period of many years. The USPTO considered whether the inventions that they describe and claim were both new and also not obvious in light of prior patents, articles, inventions, and other references. The USPTO also rigorously assessed the language used to describe and claim the inventions. After this thorough examination, the USPTO determined that the inventions were inventive and patentable.

10.     The USPTO considered and examined the '966 patent for over a three year period, starting when the patent was filed on June 28, 2006. The '966 patent includes 22 distinct inventions/claims.

11.     The USPTO considered and examined the '275 patent for a four year period, starting when the patent was filed on May 29, 2003. The '275 patent includes 31 distinct inventions/claims.

12.     On information and belief, Defendant Techtronic Industries Co., Ltd. ("TTI") is a Hong Kong based global power equipment and floor care company founded in 1985 with current annual revenue of approximately $5 Billion Dollars. See http://www.ttigroup.com/en/investor_relations/financial_summary/financial_highlights/index.php?cat=fullyear. On information and belief, it has its principal place of business at Unit B-F 24/F CDW Building, 388 Castle Peak Road, Tsuen Wan, New Territories, Hong Kong. On information and belief, TTI makes 74.9% of its sales in North America and 78.8% of its sales are in the power equipment, accessories and hand tools area into which the Accused Controller

Products now fall. See

http://www.ttigroup.com/en/investor_relations/financial_summary/turnover_breakdown_analysis.php?cat=fullyear.

13.    On information and belief, Techtronic Industries North America, Inc. is a wholly owned subsidiary of the Hong Kong entity TTI and is a corporation organized under the laws of Delaware, having a principal office located at 303 International Circle, Suite 4900, Hunt Valley, Maryland 21030.

14.    On information and belief, One World Technologies Inc. is a Delaware corporation with its principal place of business at 1428 Pearman Dairy Road, Anderson, South Carolina 29625.

15.    On information and belief, OWT Industries Inc. is a Delaware corporation having its principal place of business at 225 Pumpkintown Highway, Pickens, South Carolina.

16.    On information and belief, Et Technology (Wuxi, Co., Ltd.) is a Chinese corporation with its principal place of business at Xiqun Road (East Section), Xinqu Meicun Industrial Cluster Zone Wuxi 214112 Zhejiang China. On information and belief, all of the Accused Controller Products are made by Et Technology in China and are later imported into the United States by Et Technology and TTI.

17.    On information and belief, Ryobi Technologies, Inc. is a corporation organized under the laws of Delaware, having a principal office located at 1428 Pearman Dairy Road, Anderson, South Carolina 29625.

18.    On information and belief, Defendants jointly make, use, sell, offer for sale or import the Ryobi Ultra-Quiet Garage Door Opener, Model No. GD200 ("Accused Controller Products").

19.     The Accused Controller Products are now being offered for sale nationwide. Sales of this garage door opener will damage CGI's hard-earned position in the marketplace and good reputation and irreparably harm CGI in other ways.

20.     Defendants' actions have caused CGI harm, and will cause further harm to CGI if they continue. In addition, Defendants' knowing acts of infringement will frustrate CGI's ongoing strong business relationships, contracts, and potential contracts, with resulting lost sales and profits, and otherwise are or will cause substantial harm to CGI's business.

21.     As a result of Defendants' actions, CGI was forced to file this lawsuit to protect its patented innovations and its reputation as the leader in the control access industry.

## JURISDICTION AND VENUE

22.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.* The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

23.     On information and belief, Defendants are subject to personal jurisdiction in the State of Illinois and the Northern District of Illinois because they are doing and have done substantial business in this District, including business relating to the sale and distribution of the Accused Controller Products. Defendants have continuous and systematic business contacts with the State of Illinois and directly, or through subsidiaries and intermediaries such as retailers, conduct business in Illinois by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page, *see, e.g.*,: https://www.ryobitools.com/power-tools/products/list/category/garage-door-opener) the Accused Controller Products in the State of Illinois and the Northern District of Illinois. Defendants, directly, or through subsidiaries and intermediaries such as retailers, have purposefully and voluntarily placed the Accused Controller Products into the stream of commerce with the

6

intention and expectation that they will be purchased and used by consumers in the Northern District of Illinois. Therefore, the exercise of jurisdiction over Defendants is appropriate under the applicable jurisdictional statutes and would not offend traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400(b), because, among other reasons, Defendants are subject to personal jurisdiction in this judicial district and have committed acts of infringement in this judicial district.

## COUNT I

## (Infringement of U.S. Patent No. 7,635,966)

25.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

26.     On December 22, 2009, the USPTO duly and legally issued the '966 patent, entitled "*Barrier Movement Operator Battery Backup And Power Equipment Battery Charging Center*," to Brian Butler. A true and correct copy of the '966 patent is attached as Exhibit A.

27.     CGI is the owner, by assignment, of all rights, title and interest in the '966 patent, including the right to recover damages for past infringement.

28.     Defendants have infringed and continue to infringe the '966 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, in addition to the Ryobi One+ rechargeable battery, which practice one or more of the claims of the '966 patent. For example, based on CGI's current investigation, the Accused Controller Products infringe at least claim 9 of the '966 patent as follows:

| Claim 9: A battery charging apparatus, comprising: | Defendants' advertising and product information show how the Accused Controller Products in addition to the Ryobi One+ rechargeable battery meet this claim element: |
|---|---|

Introducing the next generation of garage door openers with the Ryobi Ultra-Quiet Garage Door Opener. The ultra-powerful motor will quietly open and close large doors with ease due to the 2HPs for faster openings.

Ultra-Quiet Garage Door Opener, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed May 19, 2016).

This product is designed to be powered by either a RYOBI ONE+™ 18V lithium-ion (Li-ion) battery pack (DC mode) or by electric power (AC mode). The unit will operate in AC mode whenever it is connected to an electric power source. It will switch to DC mode when an approved battery pack is installed and the unit is not connected to an AC power source.

Operator's Manual Garage Door Opener GD200 at p. 36, https://manuals.ttigroupna.com/system/files/9593/original/GD200_698_trilingual.pdf (last accessed May 19, 2016).



Operator's Manual Garage Door Opener GD200 at p. 36, https://manuals.ttigroupna.com/system/files/9593/original/GD200_698_trilingual.pdf (last accessed May 19, 2016).



Ultra-Quiet Garage Door Opener, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed May 19, 2016).

| | |
|---|---|
| a battery charging station in electrical communication with a rechargeable battery and in electrical communication with a head unit of a barrier movement operator for supplying power to at least one rechargeable battery | Defendants' advertising and product information show how the Accused Controller Products in addition to the Ryobi One+ rechargeable battery meet this claim element:<br><br>This product is designed to be powered by either a RYOBI ONE+™ 18V lithium-ion (Li-ion) battery pack (DC mode) or by electric power (AC mode). The unit will operate in AC mode whenever it is connected to an electric power source. It will switch to DC mode when an approved battery pack is installed and the unit is not connected to an AC power source.<br><br>Operator's Manual Garage Door Opener GD200 at p. 36, https://manuals.ttigroupna.com/system/files/9593/original/GD200_698_trilingual.pdf (last accessed May 19, 2016).<br><br>CHARGING A BATTERY PACK<br>See Figure 65. |

Battery packs are shipped in a low charge condition to prevent possible problems. Therefore, you should charge them before first use. If the garage door opener does not charge the battery pack under normal circumstances, return both the battery pack and garage door opener to your nearest repair center for electrical check.

- Connect the garage door opener to an AC power supply.
- Install battery pack into the garage door opener as described earlier.
- Press on the battery pack to be sure contacts on the battery pack engage properly with contacts in the garage door opener.
- The battery pack may become slightly warm to the touch while charging. This is normal and does not indicate a problem.
- When the battery pack is fully charged, you may remove the battery pack or leave it in the battery port to provide DC power if needed.



Fig. 65

Operator's Manual Garage Door Opener GD200 at p. 36, https://manuals.ttigroupna.com/system/files/9593/original/GD200_698_trilingual.pdf (last accessed May 19, 2016).



Ultra-Quiet Garage Door Opener, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed May 19, 2016).

| | |
|---|---|
| the at least one ==rechargeable battery== being removably connectable to ==electrically powered equipment other than and physically separate or separable from the barrier movement operator== to provide power to the electrically powered equipment; | Defendants' advertising and product information show how the Accused Controller Products in addition to the Ryobi One+ rechargeable battery meet this claim element:  The RYOBI 18V ONE+ System has more than 50 tools that work with the same battery platform, giving you |

the ultimate versatility in tool selection to get your job finished. With upgraded LITHIUM+ batteries, you can get more done in less time and improve the performance of every RYOBI 18V tool ever made. No matter how you add it up, ONE+ is the one system that delivers more.

About the ONE+ System, https://www.ryobitools.com/power-tools/products/list/family/one-plus (last accessed May 19, 2016).





18V One+ Hammer Drill Kit, https://www.ryobitools.com/power-

| circuitry electrically connected to the battery charging station to supply power from the at least one rechargeable battery to the head unit. | tools/products/details/657 (last accessed May 19, 2016). |
|---|---|
| | Defendants' advertising and product information show how the Accused Controller Products in addition to the Ryobi One+ rechargeable battery meet this claim element: |
| | CHARGING A BATTERY PACK |
| | See Figure 65. |
| | Battery packs are shipped in a low charge condition to prevent possible problems. Therefore, you should charge them before first use. If the garage door opener does not charge the battery pack under normal circumstances, return both the battery pack and garage door opener to your nearest repair center for electrical check. |
| | • Connect the garage door opener to an AC power supply. |
| | • Install battery pack into the garage door opener as described earlier. |
| | • Press on the battery pack to be sure contacts on the battery pack engage properly with contacts in the garage door opener. |
| | • The battery pack may become slightly warm to the touch while charging. This is normal and does not indicate a problem. |
| | • When the battery pack is fully charged, you may remove the battery pack or leave it in the battery port to provide DC power if needed. |
| |  Fig. 65 |

13

| | Operator's Manual Garage Door Opener GD200 at p. 36, https://manuals.ttigroupna.com/system/files/9593/original/GD200_698_trilingual.pdf (last accessed May 19, 2016). |
|---|---|

29.     All Defendants have been placed on notice of the '966 patent at least as early as on or about May 25, 2016.

30.     Defendants have also induced and/or are inducing the infringement of the '966 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products in addition to the Ryobi One+ rechargeable battery.  These products, as provided by Defendants to their customers and used as intended and instructed, infringe the '966 patent and Defendants have known of this infringement since at least since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants.  Defendants sold and/or offered for sale these products, and are continuing to do so, to retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Defendants know to be infringing.  Defendants have also sold and/or offered for sale these products, and are continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that Defendants know to be infringing.  *See, e.g.,* Defendants' marketing of the Accused Controller Products and Ryobi One+ battery as depicted in the claim charts above.

31.     Defendants have also contributed to and/or are contributing to the infringement of the '966 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products in addition to the Ryobi One+ rechargeable battery.  Defendants have made and/or sold these products with knowledge that these products are especially designed for use as a component of a patented system, apparatus and kit, and/or an apparatus for use in a patented process, and are not staple articles of commerce suitable for substantial noninfringing

use.  For example, among other things, Defendants actively and knowingly sell these products and provide the manuals and other documentation for these products to customers and others for use as a component of a patented system, apparatus and kit and/or an apparatus for use in a patented process.  These products are especially designed for use as a component of a patented system, apparatus and kit and/or an apparatus for use in a patented process, constitute a material part of the invention, are sold by Defendants for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use.  On information and belief, Defendants' customers and consumers have used these products in the United States in this manner and infringed the '966 patent.

32.     As a result of Defendants' infringement of the '966 patent, Plaintiff has suffered and will continue to suffer damages.  Plaintiff is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

33.     Defendants' acts of infringement of the '966 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that their actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants.  Defendants' acts, since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants, constitute willful and deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

34.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, for which there is no adequate remedy at law, entitling Plaintiff to injunctive relief.

## COUNT II

### (Infringement of U.S. Patent No. 7,224,275)

35.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

36.     On May 29, 2007, the USPTO duly and legally issued the '275 patent, entitled "*Movable Barrier Operators Status Condition Transception Apparatus And Method*," to James J. Fitzgibbon.  A true and correct copy of the '275 patent is attached as Exhibit B.

37.     CGI is the owner, by assignment, of all right, title and interest in the '275 patent, including the right to recover damages for past infringement.

38.     Defendants have infringed and continue to infringe the '275 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, which practice one or more of the claims of the '275 patent. For example, based on CGI's current investigation, the Accused Controller Products infringe at least claim 1 of the '275 patent as follows:

| Claim 1: A movable barrier operator comprising: | Defendants' advertising and product information show how the Accused Controller Products meet this claim element:<br><br>    Introducing the next generation of garage door openers with the Ryobi Ultra-Quiet Garage Door Opener. The ultra-powerful motor will quietly open and close large doors with ease due to the 2HPs for faster openings.<br><br>*Ultra-Quiet Garage Door Opener*, Ryobi Power Tools, https://www.ryobitools.com/power-tools/products/details/802 (last accessed May 19, 2016). |
|---|---|
| a controller having a plurality of potential operational status conditions defined, at least in part, by a plurality of operating | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |

| | |
|---|---|
| states |  Main Board<br><br>Internal Photos, Application for Equipment Authorization, FCC ID VMZGD200, *available at* https://www.fcc.gov/general/fcc-id-search-page. |

| | |
|---|---|
| | <br><br>*Ryobi Garage Door Opener Module System*,<br>http://ryobitools.com/gdo/ (last accessed May 19, 2016). |
| <mark>a movable barrier interface</mark> that is operably coupled to <mark>the controller</mark> | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |



*Operator's Manual Garage Door Opener GD200* at p. 19, https://manuals.ttigroupna.com/system/files/9593/original/ GD200_698_trilingual.pdf (last accessed May 19, 2016).



*Operator's Manual Garage Door Opener GD200* at p. 25, https://manuals.ttigroupna.com/system/files/9593/original/ GD200_698_trilingual.pdf (last accessed May 19, 2016).



THE UNCOVER EUT VIEW 1

Internal Photos, Application for Equipment Authorization, FCC ID VMZGD200, *available at* https://www.fcc.gov/general/fcc-id-search-page.

a wireless status condition data transmitter that is operably coupled to the controller

Defendants' advertising and product information show how the Accused Controller Products meet this claim element:



WIFI MODE (Front)

Internal Photos, Application for Equipment Authorization, FCC ID VMZGD200, *available at* https://www.fcc.gov/general/fcc-id-search-page (red boxes and annotations in original).

| wherein the wireless status condition data transmitter transmits a status condition signal that: | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |
|---|---|
| | **APP ENHANCED**<br>Connect your smartphone to the RYOBI Garage Door Opener right out of the box.  No additional purchase, just visit the Google Play or Apple app stores.<br>• Control your garage door from anywhere you have wireless signal<br>• Monitor your garage door remotely<br>• Get enhanced functionality out of your RYOBI Garage Door Opener Modules<br><br>*Module System*, http://ryobitools.com/gdo/module-system/#app-enhanced (last accessed May 19, 2016). |



*Ryobi Garage Door Opener Module System,*
http://ryobitools.com/gdo/ (last accessed May 19, 2016).

| | |
|---|---|
| corresponds to a present operational status condition defined, at least in part, by <mark>at least two operating states from the plurality of operating states</mark>; and | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |



*Ryobi Garage Door Opener Module System*, http://ryobitools.com/gdo/ (last accessed May 19, 2016).

| | |
|---|---|
| comprises an identifier that is at least relatively unique to the movable barrier operator, such that the status condition signal substantially uniquely identifies the movable barrier operator. | Defendants' advertising and product information show how the Accused Controller Products meet this claim element: |



*Ryobi Garage Door Opener Module System*,
http://ryobitools.com/gdo/ (last accessed May 19, 2016).

Plaintiff's testing showed messages being sent from the unit tested by Plaintiff that included the MAC address of the wifi chip in that unit:



Photo showing MAC address of unit tested by Plaintiff.



Exemplary capture of a packet showing a message sent including the MAC address of the unit tested by Plaintiff (MAC address highlighted).

39.     All Defendants have been placed on notice of the '275 patent at least as early as on or about May 25, 2016.

40.     Defendants have also induced and/or are inducing the infringement of the '275 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products and the Ryobi app.  These products, as provided by Defendants to their customers and used as intended and instructed, infringe the '275 patent and Defendants have known of this infringement since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants.  Defendants sold and/or offered for sale one or more of these products, and are continuing to do so, to retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Defendants know to be infringing.  Defendants have also sold and/or offered for sale these products, and are continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that Defendants know to be infringing.  *See, e.g.*, Defendants' marketing of the Accused Controller Products and the Ryobi app as depicted in the claim charts above.

41.     Defendants have also contributed to and/or are contributing to the infringement of the '275 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products and the Ryobi app.  Defendants have made and/or sold these products with knowledge that these products are especially designed for use as an apparatus for use in a patented process and are not staple articles of commerce suitable for substantial noninfringing use.  For example, among other things, Defendants actively and knowingly sell these products and provide the manuals and other documentation for these products to their customers and others for use as an apparatus in a patented process.  These products are especially designed for use as an apparatus in a patented process, constitute a material part of the invention,

26

are sold by Defendants for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use. On information and belief, Defendants' customers and consumers have used these products in the United States in this manner and infringed the '275 patent.

42. As a result of Defendants' infringement of the '275 patent, Plaintiff has suffered and will continue to suffer damages. Plaintiff is entitled to recover from Defendants the damages adequate to compensate for such infringement, in an amount to be determined at trial.

43. Defendants' acts of infringement of the '275 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent. On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that their actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least the filing of this Complaint and/or the date this Complaint was served upon Defendants. Defendants' acts constitute willful and deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

44. Defendants' acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, for which there is no adequate remedy at law, entitling Plaintiff to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, CGI prays that this Court enters judgment and provides relief as follows:

A. That Defendants have infringed and are infringing the Asserted Patents, namely, the '966 patent and the '275 patent;

B. That Defendants have induced, and are inducing, infringement of the Asserted Patents;

C.     That Defendants have contributed to, and are contributing to, infringement of the Asserted Patents;

D.     That Defendants have willfully infringed, and are willfully infringing, the Asserted Patents;

E.     That the Asserted Patents are valid and enforceable;

F.     That Defendants, their officers, agents, and employees, and those persons in active concert of participation with any of them, and their successors and assigns be preliminarily and permanently enjoined from infringement of the Asserted Patents, including but not limited to an injunction against making, using, offering to sell, and selling within the United States, and importing, and importing into the United States, and products covered by the Asserted Patents;

G.     For an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

H.     That Defendants be ordered to account for and pay to CGI the damages resulting from Defendants' infringement of the Asserted Patents, including lost profits, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

I.     That this action be adjudged an exceptional case and CGI be awarded its attorneys' fees, expenses and costs in this action pursuant to 35 U.S.C. § 285; and

J.     That CGI be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

CGI demands trial by jury on all issues so triable.

Dated:  June 10, 2016　　　　　　By: */s/ Nicole L. Little*　　　　　　
　　　　　　　　　　　　　　　Katherine Vidal
　　　　　　　　　　　　　　　(To be admitted Pro Hac Vice)
　　　　　　　　　　　　　　　vidal@fr.com
　　　　　　　　　　　　　　　Matthew McCullough
　　　　　　　　　　　　　　　(To be admitted Pro Hac Vice)
　　　　　　　　　　　　　　　mccullough@fr.com
　　　　　　　　　　　　　　　FISH & RICHARDSON P.C.
　　　　　　　　　　　　　　　500 Arguello Street., Suite 500
　　　　　　　　　　　　　　　Redwood City, California 94063
　　　　　　　　　　　　　　　Telephone:  (650) 839-5070
　　　　　　　　　　　　　　　Facsimile:  (650) 839-5071

　　　　　　　　　　　　　　　Benjamin C. Elacqua
　　　　　　　　　　　　　　　elacqua@fr.com
　　　　　　　　　　　　　　　(To be admitted Pro Hac Vice)
　　　　　　　　　　　　　　　Michael Rueckheim
　　　　　　　　　　　　　　　rueckheim@fr.com
　　　　　　　　　　　　　　　FISH & RICHARDSON PC
　　　　　　　　　　　　　　　1221 McKinney Street, Suite 2800
　　　　　　　　　　　　　　　Houston, Texas 77010
　　　　　　　　　　　　　　　Telephone: 713-654-5300
　　　　　　　　　　　　　　　Facsimile: 713-652-0109

　　　　　　　　　　　　　　　Maria Elena Stiteler
　　　　　　　　　　　　　　　stiteler@fr.com
　　　　　　　　　　　　　　　(To be admitted Pro Hac Vice)
　　　　　　　　　　　　　　　FISH & RICHARDSON P.C.
　　　　　　　　　　　　　　　60 S. Sixth Street
　　　　　　　　　　　　　　　Minneapolis, MN 55402
　　　　　　　　　　　　　　　Telephone: (612) 335-5070
　　　　　　　　　　　　　　　Facsimile: (612) 288-9696

　　　　　　　　　　　　　　　Nicole L. Little (IL 6297047)
　　　　　　　　　　　　　　　nlittle@fitcheven.com
　　　　　　　　　　　　　　　FITCH, EVEN, TABIN & FLANNERY LLP
　　　　　　　　　　　　　　　120 South LaSalle Street, Suite 1600
　　　　　　　　　　　　　　　Chicago, Illinois 60603
　　　　　　　　　　　　　　　Telephone: (312) 577-7000
　　　　　　　　　　　　　　　Facsimile: (312) 577-7007

　　　　　　　　　　　　　　　ATTORNEYS FOR PLAINTIFF
　　　　　　　　　　　　　　　THE CHAMBERLAIN GROUP, INC.