**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, INC., | ) | |
| | ) | Civil Action No.: 1:16-cv-06097 |
| Plaintiff, | ) | |
| v. | ) | The Honorable Harry D. Leinenweber |
| | ) | |
| TECHTRONIC INDUSTRIES CO. LTD., | ) | Magistrate Judge Sidney Schenkier |
| TECHTRONIC INDUSTRIES NORTH AMERICA, | ) | |
| INC., ONE WORLD TECHNOLOGIES INC., | ) | |
| OWT INDUSTRIES, INC., ET TECHNOLOGY | ) | |
| (WUXI) CO. LTD., AND RYOBI | ) | |
| TECHNOLOGIES, INC. | ) | |
| | ) | |
| Defendants. | | |

**SCHEDULING ORDER AND DISCOVERY ORDER**

The Court enters the following scheduling order and discovery order pursuant to Federal

Rule of Civil Procedure 16(b).

The parties shall adhere to the following schedule:

| Event | Date |
|---|---|
| CGI To Reduce Asserted Claims to Twelve (12) | Ten days after TTI makes available source code |
| Exchange of Claim Terms Needing Construction | October 10, 2016 |
| Meet and Confer to Settle on Terms Requiring Construction (LPR 4.1) | October 12, 2016 |
| Exchange Constructions For All Terms | October 17, 2016 |
| Opening Claim Construction Brief (by TTI) and Joint Appendix (LPR 4.2(a)-(b)) | October 28, 2016 |

| | |
|---|---|
| Discovery re Opinions of Counsel (LPR 3.6) | November 4, 2016 |
| Responsive Claim Construction Brief (by CGI) (LPR 4.2(c)) | November 8, 2016 |
| Reply Claim Construction Brief (by TTI) (LPR 4.2(d)) | November 14, 2016 |
| Joint Claim Construction Chart (LPR 4.2(f)) | November 15, 2016 |
| Claim Construction Ruling | At the Court's Discretion |
| Expert Reports of Parties with Burden of Proof (LPR 5.1(b)) | December 9, 2016 |
| Final Infringement Contentions | December 9, 2016 (same deadline as opening expert reports) |
| Final Invalidity Contentions | December 9, 2016 (same deadline as opening expert reports) |
| Rebuttal Expert Reports (LPR 5.1(c)) | December 23, 2016 |
| Final Non-Infringement Contentions | December 23, 2016 (same deadline as rebuttal expert reports) |
| Final Validity Contentions | December 23, 2016 (same deadline as rebuttal expert reports) |
| Completion of Expert Discovery (LPR 5.2) | January 13, 2017 |
| Dispositive Motions (LPR 6.1) | January 30, 2017 |
| Pretrial Order Due; Motions in Limine Due; Disputed Jury Instructions Presented to Court (LR 16.1) | January 30, 2017 |
| First Date of Jury Trial | February 6, 2017 |

**Additional Joint Proposals:**

The Court also orders the following agreed stipulations for the above-captioned litigation:

1. The Court's Local Patent Rules and Local Patent Rules for Electronically Stored Information apply in this litigation. The stipulations below are only meant to supplement those Rules.

2. ESI Production Format: Except as provided in Paragraph 9, Electronically Stored Information ("ESI") shall be produced electronically, as single page, uniquely and sequentially numbered Group IV TIFF files not less than 300 dpi resolution, with a corresponding load file ("Image Load File"). Except with regard to ESI documents that are redacted for privilege, the images shall be accompanied by text files containing the extracted text on a document basis, if available. Text must be extracted as to preserve Unicode characters and provided in UTF-8 encoding. The text files shall be named to match the endorsed number assigned to the image of the first page of the document. The images shall also be accompanied by an image cross-reference load file (such as Opticon or "LFP") providing the beginning and ending endorsed number of each document and the number of pages it comprises. The Producing Party shall also provide a data load file ("Data Load File" or "DAT") corresponding to the TIFF files, that shall contain the metadata, as reasonably available, and a path to the text files. For the avoidance of any doubt, there is no obligation on the Producing Party to create metadata where none exists or is not reasonably available.

3. METADATA. The following metadata or objectively coded fields will be provided, if available, for each document:

| | |
|---|---|
| PRODBEGDOC | Bates number of the first page of document. |
| PRODENDDOC | Bates number of the last page of document. |
| PRODBEGATTACH | PRODBEGDOC of the first document |
| PRODENDATTACH | PRODENDDOC of the last document |
| FILENAME | Name of the file. |

| FROM | Author of email. |
|---|---|
| TO | Recipients of email. |
| CC | Carbon Copy recipients of email. |
| BCC | Blind Carbon Copy recipients of email. |
| EMAILSUBJECT | Email subject line. |
| DATECREATED | Date the document was created. |
| DATESENT | Date the email was sent. |
| DATERECEIVED | Date the email was received. |
| DATELASTMOD | Date the document was last modified. |
| DOCEXTENSION | File extension of the document. |
| DESIGNATION | Confidentiality level assigned to the |
| MD5HASH | Unique MD5 Hash value of the document. |
| TEXTPATH | Relative path to extracted text files. |
| NATIVEPATH | Relative path to native files. |

4. Production of Paper Discovery: Unless impracticable, Paper Discovery will be produced in electronic form. Paper Discovery produced in electronic form shall be rendered text searchable via OCR or other means by the Producing Party. Where possible, the Producing Party should identify the custodian and/or author, if available, of Paper Documents in appropriate metadata fields. A Party need not produce a non-electronic duplicate of any Paper Discovery produced in electronic form, except that upon a reasonable request by the Receiving Party and a showing of good cause (e.g., problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format for inspection at a mutually agreeable time and place.

5. Appearance and Content: Subject to any necessary redaction, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic. Documents produced natively shall include a slip sheet saying DOCUMENT AVAILABLE IN NATIVE FORMAT.

6. Document Unitization: If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. If unitization cannot be

maintained, the original unitization shall be documented in a load file or otherwise electronically tracked.

7.      Color: Documents containing color need not be produced in color unless the Receiving Party makes a reasonable request for production of a specific document in color.

8.      Document Numbering for TIFF Images: Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier Bates number ("Document Number") not less than eight (8) digits and (if applicable) a confidentiality designation electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (e.g., "CGI-00000001").

9.      Production of ESI in Native Format: In the event that production of a document in TIFF image file format would be impracticable, the Producing Party shall have the option of producing such document in Native Format. In all other instances, after initial production of ESI in TIFF image file format, a party must demonstrate a particularized need for production of that ESI in its Native Format. In the event that a Receiving Party requests production of Native Format ESI, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production. However, nothing in this Paragraph, except pursuant to Paragraph 10 is to be read as requiring any Producing Party, absent agreement or court order, to produce ESI in Native Format. No document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the document prior to its collection. Native Files should be produced with accompanying slip sheets indicating that the document has been produced as a Native File. In addition, Native Files should be named as the Document Number and include the confidentiality designation in the file name (e.g., "CGI- 00000123

(CONFIDENTIAL BUSINESS INFORMATION).ppt"). Furthermore, any printed copies of a Native File shall either be attached to the slip sheet bearing the confidentiality designation and/or shall have the confidentiality designation marked on every page.

10.     Native File Exceptions: Notwithstanding Paragraph 9 to the extent a Producing Party produces a spreadsheet (e.g., Excel), MS Project, MS PowerPoint, CAD or similar engineering drawings or schematics, video, animation or audio files such documents shall be produced in Native Format.

11.     De-duplication: To the extent identical copies of documents (i.e., documents with identical hash values) appear in the files of a custodian, the Producing Party need not produce more than one such identical copy for that custodian, except if a duplicate document exists that is part of a document family, the duplicate will only be removed, pursuant to the terms of this paragraph, if the entire family is removed as a duplicate, i.e. a single document will not be removed from a family even if it is a duplicate.  E-mail attachments will not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates, in which case the entire duplicate e-mail family may be eliminated.  An e-mail that includes content in the BCC or other blind copy field should not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical.  Standalone documents will not be eliminated as duplicates of email attachments.

12.     Production Media: The Producing Party shall produce document images, load files and metadata on ftp sites, hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media and the Document Number ranges of the documents in that production (e.g., "CGI Production October 1, 2016, CGI-00000123 - CGI-0000456"). To the extent that

the Production Media includes any information designated as "CONFIDENTIAL BUSINESS INFORMATION" information under the Protective Order in this Litigation, the label on such Production Media shall indicate that Production Media includes information so designated and shall be encrypted. Production Media shall also include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Document Number range that is being replaced.

13. Original Documents: Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain Native Format copies, including associated metadata, of all ESI produced in the Litigation and original hard copy documents for all Paper Discovery produced in the Litigation.

14. Third-Party Software: To the extent that documents produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues that may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

15. ESI of Limited Accessibility: If a Producing Party contends that any responsive ESI, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the places in which such ESI is kept. The parties shall negotiate in good faith concerning the

production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court.

16. <u>Inadvertent Failure to Designate</u>:

    i. The Parties agree that the inadvertent failure by a producing Party to designate documents, testimony or other information as protected material with one of the designations provided for in the Protective Order (including any amendments to that Order) shall not waive any such designation provided that the producing Party notifies all receiving Parties that such discovery material is protected under one of the categories of the Protective Order (including any amendments to that Order) within fourteen (14) days of the producing Party learning of the inadvertent failure to designate. The producing Party shall reproduce the protected material with the correct confidentiality designation within seven (7) days upon its notification to the receiving Parties. Upon receiving the protected material with the correct confidentiality designation, the receiving Parties shall return or securely destroy, at the producing Party's option, all discovery information that was not designated properly.

    ii. A receiving Party shall not be in breach of the Protective Order (including any amendments to that Order) for any use of such discovery material before the receiving Party receives such notice that such discovery material is protected under one of the categories of the Protective Order (including any amendments to that Order). Once a receiving Party has received notification of the correct confidentiality designation for the

protected material, the receiving Party shall treat such discovery material at the appropriately designated level pursuant to the terms of this Order.

iii. If, upon review of the information produced, the receiving Party can readily determine that the producing Party inadvertently or unintentionally failed to designate the information with one of the designations provided for in the Protective Order (including any amendments to that Order), the receiving Party shall promptly notify the producing Party, and shall treat the information as highly confidential subject to the Protective Order (including any amendments to that Order) until informed by the producing Party that the document should be designated otherwise. If, after the receiving Party notifies the producing Party of the suspected failure to correctly designate, the producing Party does not respond for five (5) business days, the receiving Party may treat the documents as properly designated.

iv. In the event of a disclosure of any protected material pursuant to this Order to any person or persons not authorized to receive such disclosure under the Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the producing Party whose protected material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed protected material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

v.   Unauthorized or inadvertent disclosure does not change the status of protected material or waive the right to hold the disclosed document or information as protected.

17.   <u>Expert Discovery</u>:

i.   The Parties agree to the limitations of Rule 26 of the Federal Rules of Civil Procedure with regard to the discovery of expert materials. For the avoidance of doubt, the Parties agree that all communications between a Party's counsel and a testifying expert, and all materials generated by a testifying expert with respect to that person's work, are exempt from discovery unless relied upon by the expert in forming any opinions in this litigation. Nothing in this stipulation is intended to restrict the Parties' ability to inquire into the basis of any of the opinions expressed by any expert in his or her report, declaration, or affidavit, including the manner in which such opinions were reached, and information considered in reaching such opinions.

ii.   A testifying expert's draft reports, outlines and notes (including preliminary diagrams, highlighting, and marginalia), as part of the testifying expert's investigation and/or in developing the testifying expert's opinions and reports, are exempt from discovery. This limitation applies regardless of  whether such draft reports have been disclosed, or otherwise transmitted to, or contain any notes,  writing, or markings created by in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such testifying expert. The expert must produce his or her final report and all materials on which

he or she relied. Nothing in this provision modifies an expert's obligation to disclose all information considered by the expert in forming his or her opinions.

iii. The Parties agree that counsel need not preserve drafts of expert reports (partial or complete), notes, and other evidence of communications with experts on the subject of the expert's actual or potential testimony. Further, the Parties agree that neither Party need to produce communications between counsel and expert witnesses, communications between an expert and others, including staff members, who work at the direction of the expert to support the expert, or drafts of expert reports.

iv. No discovery may be taken from or about any consulting expert that will not provide testimony and/or an expert opinion in the above-captioned litigation ("Consulting Expert") except to the extent that the Consulting Expert has provided information, opinions or other materials that a Testifying Expert has considered or relied upon in formulating his/her final report, trial or deposition testimony or any opinion in this action. In such a case where a Consulting Expert has provided materials or information that a Testifying Expert has relied on in formulating his/her final report, trial or deposition testimony, discovery may be taken of the Consulting Expert regarding those materials and information. The limitations herein do not preclude a Party from discovery of prior opinions or testimony of an expert in matters other than the above-captioned litigation, to the extent the prior opinions or testimony are

related to and/or may be inconsistent with the opinions given in this litigation.

18.     Materials, communications, and other information exempt from discovery shall be treated as attorney-work product for the purposes of this litigation and these stipulations.

19.     Privileged Documents: The parties agree not to produce privilege logs at this time.  However, each Party reserves the right to subsequently request a privilege log covering specified categories of documents, appropriately narrowed by the parties to the communications, the time period, and the subject matter.  In the event that such a request is made, the Parties agree to meet and confer regarding the scope of the request, the potential relevance of the information requested, the likelihood that the information is not privileged, and the burden of creating the requested log but, in no case, shall a Party be required to log a document created on or after May 26, 2016.  If an agreement is not reached, the Parties reserve the right to move to compel the production of any log requested pursuant to this paragraph.  The Parties further reserve the right, if necessary, to move to compel the production of an allegedly privileged document listed on any privileged document log.  The parties agree not to object to either type of motion to compel on the ground that the Parties agreed not to produce privilege logs at the present time.

20.     Non-Party Productions: The Parties agree to produce documents received from third parties in connection to a response to a subpoena in this litigation as a result of a subpoena or other formal request (whether officially served or not) to such third parties within three (3) business days of receipt. Any materials received pursuant to a subpoena from a third-party without a Bates stamp, the issuing party will endorse the non-party production with unique prefix and bates number prior to producing them to the opposing party and Staff.

21.  Hearing Equipment: The Parties agree to meet and confer to identify audio/video equipment for their shared use at any hearings. To the extent such equipment is identified and procured, the Private Parties agree to share equally the costs of said audio/visual equipment.

22.  Modification: This Stipulated Order may be modified by Court Order or by stipulated order of the Parties.

23.  Nothing in this Stipulation shall be interpreted as waiving a party's right to object to any discovery request including without limitation objections on the basis of relevance, overbreadth, or undue burden.

Dated: 10/12/2016

_____

Honorable Harry D. Leinenweber