IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CHAMBERLAIN GROUP, INC.,

                Plaintiff,

       v.

TECHTRONIC INDUSTRIES CO.,
LTD., TECHTRONIC INDUSTRIES
NORTH AMERICA, INC., ONE
WORLD TECHNOLOGIES, INC.,
OWT INDUSTRIES, INC., ET
TECHNOLOGY (WUXI) CO. LTD.,
and RYOBI TECHNOLOGIES, INC.,

                Defendants.

Case No.  16 C 6097

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendants' Motion for Leave to File a Revised First Amended Answer [ECF No. 258] is granted in part and denied in part. Defendants may amend their Answer to include the proposed allegations, counterclaims, and inequitable conduct affirmative defense relating to the '966 patent, except for those charging misrepresentation of '966 patent claims and non-disclosure of the '676 prior art patent. The Court denies as futile Defendants' Motion with respect to the proposed allegations, counterclaims, and affirmative defenses concerning the '275 patent. The Court also denies as futile leave to amend to include the proposed patent misuse affirmative defense.

# I.   BACKGROUND

## A.   Procedural Background

Plaintiff Chamberlain Group, Inc. ("Chamberlain") brought this litigation alleging that certain models of Defendants' Ryobi garage door openers ("GDOs") infringe claims of two patents it holds on GDO technology:  U.S. Patent Nos. 7,224,275 ("the '275 patent") and 7,635,966 ("the '966 patent").  The '275 patent recites a GDO featuring a wireless status condition data transmitter that wirelessly relays status condition messages to one or more remote peripherals, such as a smart phone.  The '966 patent covers a GDO with a rechargeable, removable battery that can be used to power other electrical equipment physically separate from the GDO.

Defendants filed their first Answer and Counterclaims on July 5, 2016 [ECF No. 50].  Several months later, Defendants moved for leave to amend [ECF No. 154] based on Chamberlain's alleged failure to disclose to the United States Patent and Trademark Office (the "PTO") prior art material to the '966 patent.  On January 5, 2017, the Court denied Defendants' Motion because their proposed answer failed to allege adequately the materiality of the withheld prior art.  (*See,* ECF No. 242 at 4-5 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1329-30 (Fed. Cir. 2009)).)

On January 18, 2017, Defendants again moved for leave to amend [ECF No. 258], this time attaching a more detailed proposed answer and also alleging inequitable conduct in the procurement of the '275 patent. Defendants seek to add affirmative defenses of inequitable conduct, patent misuse, and unclean hands to infringement of both patents. The proffered affirmative defenses derive from Defendants' allegations - fully detailed in their proposed inequitable conduct and antitrust counterclaims - that Chamberlain procured the two patents at issue by withholding material prior art from the PTO during prosecution and, in the case of the '966 patent, materially misrepresenting the scope of certain claims.

### B. Factual Background

Defendants' proffered Answer and Counterclaims contain the following allegations. Mr. James J. Fitzgibbon (Fitzgibbon") is an engineer who holds and at all relevant times held the position of "Director of Intellectual Capital" at Chamberlain. His responsibilities include maintaining the company's patent portfolio and working with inventors and patent counsel during prosecution. (ECF No. 258-1 ("Ctrclm.") ¶ 17, 19.) Once Chamberlain determines to pursue a patent application, Fitzgibbon meets with outside patent counsel to prepare the application. (*Id.* ¶ 24.) During prosecution, Fitzgibbon reviews

office actions and assists outside counsel in responding to them. (*Id.* ¶ 25.)

### 1. Prosecution of the '275 Patent

Chamberlain filed the '275 patent application on May 29, 2003, the same day that it filed a patent application that issued as U.S. Patent No. 7,071,813 ("the '813 patent"). (Ctrclm. ¶¶ 15, 20.) The '813 patent discloses a movable barrier opener that transmits status signals to reflect its own operational states and a corresponding remote control apparatus that receives such signals and effects a variety of user-facilitated control strategies. (*Id.* ¶¶ 15, 35). On March 28, 2005, the Examiner rejected certain proposed claims of the '813 patent application, finding them anticipated by U.S. Patent No. ,388,559 to Cohen ("*Cohen*"). *Cohen* teaches a movable barrier operator that transmits a state signal indicating whether a garage door or lock is opening, open, closing or closed. (¶¶ 16, 61-62.)

Fitzgibbon is the sole named inventor on both the '275 and '813 patents. (Ctrclm. ¶ 19.) During prosecution of these patents, he reviewed copies of office actions with Chamberlain's outside patent counsel, Fitch, Even, Taben & Flannery ("Fitch Even"), and had access to the prior art references cited therein, including *Cohen*. Although Fitzgibbon admits that he reviewed *Cohen,* he failed to disclose it to the Examiner during

prosecution of the '275 patent. (*Id.* ¶¶ 30, 61-62.)  Just prior

to the rejection of the '813 patent claims over *Cohen,* on

March 16, 2005, the Examiner issued a non-final rejection of the

proposed claims of the '275 patent, finding them anticipated and

obvious in view of U.S. Patent No. 5,402,105 to Doyle, *et al.*

("*Doyle*"). (*Id.* ¶ 34.)   In a June 21, 2005 Office Action

Response, Fitzgibbon and Fitch Even counsel attempted to

overcome the rejection by arguing that *Doyle* did not transmit

status condition signals corresponding to a present operational

status condition defined, at least in part, by at least two

operating states. (*Id.* ¶ 34.)   They did not disclose *Cohen,*

which the PTO had cited during prosecution of the '813 patent as

teaching "automatically wirelessly transmitting a status signal

111 (*i.e.,* state signal)." (*Id.* ¶¶ 36, 40.)

### 2.  *Prosecution of the '966 Patent*

On behalf of Chamberlain, Mr. Kenneth Samples of Fitch Even

filed the '966 patent application.  Whereas the named inventor,

Mr. Butler, had no involvement in the decision to file the

application or in writing the application, Fitzgibbon again

played a prominent role both in reviewing Mr. Butler's invention

disclosure form and in prosecution. (Ctrclm. ¶¶ 71-72.)

Fitzgibbon was also involved in prosecuting Chamberlain's U.S.

Patent App. No. 2003/0063715 ("*Peplinski*") and U.S. Patent

No. 7,786,619 ("the '619 patent"), of which he is the named

inventor. (*Id.* ¶ 73.) Fitzgibbon was also aware of a GDO line Chamberlain developed for Sears retail stores ("*Craftsman*"), which practices the '619 patent and was modified in the course of developing the disclosures for the '966 patent. (*Id.* ¶ 156.) Defendants allege that Fitzgibbon had knowledge of all four references, whereas the Fitch Even lawyers (Messrs. Samples, Peters, and Levstik) lacked knowledge of *Craftsman*. (*Id.* ¶ 159.)

In a May 11, 2009 Office Action Response, Chamberlain, through Fitzgibbon and attorney Nicholas Peters of Fitch Even, amended the claims of the '966 patent to overcome the Examiner's obviousness rejection over two cited references, U.S. Patent No. 7,002,312 to Wojciak ("*Wojciak*") in view of U.S. Patent No. 5,781,107 to Ji ("*Ji*"). (They had previously overcome a rejection based on *Wojciak* in view of U.S. App. No. 2002/0180600 to Kirkland, *et al.* ("*Kirkland*").) They argued that *Wojciak* does not teach two limitations of claim 1: a rechargeable battery connected through circuitry to provide power to the head unit of a barrier movement operator; and electrically powered equipment other than and physically separable from the barrier movement operator. (*Id.* ¶ 78.) They further argued that *Ji* does not disclose that (1) this equipment comprises "an apparatus for receiving the at least one rechargeable battery where the equipment can be powered by the at least one rechargeable battery to perform a predetermined function," or (2) "the

rechargeable battery is charged by and used by a barrier movement operator." (*Ibid.*) (Both of these are limitations of claim 1.) In addition, they represented that claims 9 and 19 of the '966 patent contain limitations similar to that of claim 1 and argued for their patentability over *Wojciak* and *Ji* for the same reasons. (*Id.* ¶¶ 79, 148.) Those claims, in fact, do not require the presence of such electrically powered equipment but instead relate to a rechargeable battery "being removably connectable to" and "configured" to connect to such equipment. (*Id.* ¶ 148.)

The Examiner issued a notice of allowance on August 8, 2009, stating that the prior art fails to disclose or suggest the following limitations of claims 1, 9, 15, and 19: "battery charging station in electrical communication with at least one rechargeable battery and in electrical communications with the head unit to supply power"; "barrier movement operable *[sic]* having head unit"; "circuitry electrically connected to the battery charging station to supply power from the at least rechargeable [sic] battery to the head unit *[sic]*"; "powered equipment . . . physically separate or separable from the barrier movement operator"; and "perform predetermined function." (Ctrclm. ¶ 80.)

In sum, no one involved in prosecuting the '966 patent disclosed *Peplinski,* which describes a barrier movement operator

with a battery backup system, or the '619 patent, which discloses a barrier movement operator with a backup battery system. Similarly, no one disclosed U.S. Patent No. 6,923,676 ("the '676 patent"), which was previously cited against the '619 patent as disclosing "a plug allowing the battery to be replaced and the battery could be used with a moveable barrier operator" and other electrically powered equipment. (Ctrclm. ¶¶ 114, 160.) Further, Fitzgibbon did not disclose the *Craftsman* GDO, which features a battery backup system whose batteries can be interchanged with another GDO to open or close its garage door. Indeed, Chamberlain and its counsel failed to disclose *any* prior art reference in connection with the '966 patent application. (*Id.* ¶¶ 67, 74.)

## II. <u>LEGAL STANDARD</u>

A plaintiff may amend its complaint "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). This leave should be "freely given," but not "always" or "automatically." *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 432 (7th Cir. 2009); *see also, Crest Hill Land Dev., LLC v. City of Joliet,* 396 F.3d 801, 804 (7th Cir. 2005). District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the non-movant, or where amendment would be futile. *Hukic,* 588 F.3d at 432

(quotation omitted); *see also, Independent Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 943 (7th Cir. 2012). An amendment is futile if the amended claims could not survive a Rule 12(b)(6) motion to dismiss. *See, Arlin-Golf, LLC v. Village of Arlington Heights,* 631 F.3d 818, 822-23 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Independent Trust,* 665 F.3d at 934 (internal quotation marks omitted). The issue is not whether the claimant will ultimately prevail but whether it is entitled to offer evidence to support the claims. *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011) (quotation omitted). Indeed, an asserted claim "need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Independent Trust,* 665 F.3d at 935 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). The plausibility standard, while not akin to a probability requirement, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). Where a complaint pleads facts that are merely consistent with liability, it "stops short

of the line between possibility and plausibility." *Id.* (internal quotation marks omitted).

### III.  <u>DISCUSSION</u>

#### A.  Inequitable Conduct

"Patent applicants have a duty to prosecute patent applications in the PTO with candor, good faith, and honesty." *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.,* 607 F.3d 817, 829 (Fed. Cir. 2010) (internal quotation marks and alteration omitted); *see also,* 37 C.F.R. § 1.56(a).  Breach of this duty – "including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information – coupled with an intent to deceive, constitutes inequitable conduct." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,* 488 F.3d 982, 999 (Fed. Cir. 2007).  An inequitable conduct claim therefore has two elements:  "(1) an individual associated with the filing and prosecution of a patent application . . . failed to disclose material information" to the PTO; and "(2) the individual did so with a specific intent to deceive" the PTO.  *Exergen,* 575 F.3d at 1327 n.3.  Federal Circuit law governs whether the facts alleged suffice to plead inequitable conduct. *Id.* at 1318.

Concerned that inequitable conduct could "devolve into a magic incantation to be asserted against every patentee," the Federal Circuit requires that inequitable conduct be pleaded

with particularity under Rule 9(b).  *Exergen,* 575 F.3d at 1326–27, 1331.  "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  *Id.* at 1326-27.  Support for an inequitable conduct claim requires "[a] reasonable inference . . . that is plausible and that flows logically from the facts alleged."  *Id.* at 1329 n.5.  Chamberlain first contends that Defendants' motion is untimely.  More substantively, Chamberlain argues that Defendants fail to plead both the materiality and intent elements of the inequitable conduct counterclaims.

### 1.  Timeliness

Defendants first sought leave to amend the Answer on October 31, 2016.  Although the allegations in Defendants' new proposed Answer with respect to the '966 patent are largely consistent with their prior Motion, Defendants have added an entirely new inequitable conduct counterclaim based on the '275 patent.  Defendants claim that, in light of the December 2016 deposition of James Fitzgibbon, they injected the '275 patent inequitable conduct counterclaim and the corresponding affirmative defenses.  (ECF No. 258 ("Defs.' Mot.") at 2.)  Chamberlain argues that both counterclaims are untimely and unduly prejudicial.

The Court sees no reason to dismiss the inequitable conduct counterclaims for untimeliness. First, a discovery cutoff has not yet been imposed, and the fact that *Markman* briefing (typically an arduous enterprise) is already complete only lessens the opportunity cost of additional discovery on inequitable conduct issues. Second, in seeking leave to amend, Defendants have not spurned a court-imposed deadline. Indeed, Defendants' Federal Circuit appeal largely mooted the Court's original scheduling order, and the Court postponed *Markman* activities and the trial date as a result. (*See,* ECF No. 217.)

The result is no different simply because Defendants have already sought and been denied leave to amend the Answer to add '966 patent inequitable conduct allegations. The Court did not engage the untimeliness arguments advanced there because, without more, Defendants' knowledge of the prosecuting attorneys' identities and prior art references a few months before moving to amend does not clearly amount to undue delay. *Cf., e.g., Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1297-98 (7th Cir. 1993) (upholding denial of motion to amend when the defendant was in possession of facts on which the proposed amendment was based for more than two years); *Collaboration Properties, Inc. v. Tandberg ASA,* No. 05 C 1940, at *2 (N.D. Cal. Jan. 25, 2007) (rejecting an untimeliness argument where the defendant possessed "nearly all of the evidence it now cites

in support of its proposed inequitable conduct defense for more than a year"); *Inline Connection Corp. v. AOL Time Warner Inc.,* 237 F.R.D. 361 (D. Del. 2006) (denying leave to amend where the defendants admittedly had all the information necessary to plead new inequitable conduct allegations over two years before the proposed amendments were filed). And far from delaying unduly, Defendants refiled their revised amended answer within two weeks of the Court's order denying leave.

The likelihood of prejudice is similarly minimal, particularly where "the availability of the information regarding inequitable conduct is primarily within the control of [Chamberlain]." *Cordance Corp. v. Amazon.com, Inc.,* 255 F.R.D. 366, 373 (D. Del. 2009). Further, Chamberlain has known of Defendants' intent to add inequitable conduct issues into this case for nearly six months, and it is litigating Defendants' inequitable conduct charges in a parallel ITC proceeding. The Court appreciates that the allegations there may well implicate patents and withheld prior art that are not at issue in this case. (*See,* ECF No. 308 at 2.) However, the relevant individuals from whom discovery may be necessary appear to be substantially the same across both proceedings.

Therefore, the Court finds that Defendants' Motion is timely as to the proposed inequitable conduct counterclaims and affirmative defenses.

## 2. *Futility*

### a. *Materiality*

To satisfy Rule 9(b) as to materiality, a pleading must set forth the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen,* 575 F.3d at 1327 (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). Information withheld from the PTO is material only when "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1291 (Fed. Cir. 2011) (*en banc*).

Prior art disclosures are "not material if [they are] cumulative of other information already disclosed to the PTO." *Honeywell,* 488 F.3d at 1000; *see also, Exergen,* 575 F.3d at 1329-30 ("[T]he pleading . . . does not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record. Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims."); 37 C.F.R. § 1.56(b). This Court, along with others in this Circuit, rejects the notion that *Exergen* requires blind formalism, such as inclusion in the pleadings of the word "non-cumulative." *See, e.g., Bone Care*

*Int'l, LLC v. Pentech Pharms., Inc.,* No. 08 C 1083, 2010 WL 1655455, at *6 (N.D. Ill. Apr. 23, 2010).

## I.  The '275 patent

The Court first notes that Defendants have adequately met the "who," "what," "when," and "where" prongs of *Exergen.* They have identified relevant individuals by name, a specific office action response Chamberlain filed on a specific date, withheld prior art (*i.e., Cohen*), relevant disclosures therein, and at least claim 1 of the '275 patent (as what would otherwise not have issued).  Chamberlain does not contest that Defendants meet these prongs of *Exergen*.  Rather, it argues that Defendants fail to identify "how the allegedly withheld prior art is material over the prior art technology considered by the examiner during prosecution . . . and identified on the face of the '275 patent and/or the specific features that Cohen adds that TTI contends were not already present in the prior art of record."  (ECF No. 272 ("Pl.'s Opp.") at 2.)

Defendants make only a few allegations relevant to the "how" and "why" of materiality.  First, they state that the PTO rejected certain claims of the '813 patent as anticipated by *Cohen*'s disclosure of "automatically wirelessly transmitting a status signal 111 (*i.e.,* state signal)." (Ctrclm. ¶ 40.) Second, they allege that Chamberlain in a June 21, 2005 Office Action Response distinguished prior art cited against the '275

patent application (such as *Doyle*) by arguing that "it did not involve transmission of state signals" but without disclosing *Cohen*. (*Id.* ¶¶ 41-42.) Third, according to Defendants, Chamberlain's agents "kn[ew] that *Cohen* disclosed the transmission of state signals" and that the '275 patent would not have issued "[b]ut for the failure of Mr. Fitzgibbon through CGI's attorneys at Fitch Even to disclose *Cohen* to the PTO." (*Id.* ¶¶ 42, 57.)

The Court finds that these allegations are insufficient under *Exergen* because there is no factual basis whatsoever from which to infer that *Cohen*'s disclosures are non-cumulative. *DS Smith Plastics Limited v. Plascon Packaging, Inc.,* No. 15 C 5760, 2016 WL 69632 (N.D. Ill. Jan. 6, 2016), is not to the contrary. There the defendants alleged that the plaintiff's agents during prosecution filed an amendment and response asserting novelty of the patent at issue, prior to which "claims 1 and 11 did not issue, while after the [challenged] assertion of novelty, they did." *Id.* at *5. Here, however, Defendants nakedly assert without associated factual support that Chamberlain's omission of *Cohen* when distinguishing the '275 patent claims over *Doyle* caused the Examiner to allow claim 1. Pleading such facts with particularity is crucial: if other references before the Examiner contain disclosures cumulative of *Cohen*'s, then failure to disclose *Cohen* was not

material to patentability. *See, e.g., Exergen,* 575 F.3d at 1329-30; *Nalco Co. v. Turner Designs, Inc.,* No. 13 C 2727, 2014 WL 645365, at *5 (N.D. Cal. Feb. 19, 2014) ("Absent from Turner's proposed amendment and reply brief are any facts showing that the '380 patent was not cumulative of other references before the PTO."); *Aevoe Corp. v. AE Tech. Co., LTD.,* No. 12 C 53, 2013 WL 876036, at *8 (D. Nev. Mar. 7, 2013) ("[T]o satisfy the 'why' component, Defendants' counterclaim must also plead with particularity that the withheld information is not cumulative of the information actually disclosed during prosecution. Such facts are absent from Defendants' counterclaim."). Both the face of the '275 patent and the prosecution history suggest that this, in fact, was precisely the case.

Besides *Doyle,* the face of the '275 patent lists dozens of prior art references that the Examiner cited during prosecution. Immediately following the maligned June 21, 2005 Office Action Response, the Examiner rejected the '275 patent claims, including claim 1, by curtly dismissing Chamberlain's *Doyle*-based arguments as "moot in view of the new ground(s) of rejection" – "anticipat[ion] by either Morris or Chang, newly cited." App. No. 10/447,663 File History, Sept. 2, 2005 Office Action, at 2, 5. The Examiner interpreted Morris to show:

> [T]he movable barrier operator 112 that includes a
> controller 18 having a plurality of potential
> operational status conditions, defined at least in
> part by a plurality of operating states 12, 14, 16,
> 48; . . . and a wireless status condition data
> transmitter, col. 4, lines 42-44, that transmits a
> status condition signal that corresponds to a present
> operational status condition defined at least in part,
> by at least two operating states from the plurality of
> operating states, see col. 5, lines 5-13 and 37-55.

*Id.* at 2-3. Similarly, the Examiner read Chang to disclose "the movable barrier operator comprising a controller having plural operating states as defined by the movable barrier interface sensor 20 wherein a wireless transmitter 51 transmits the status signals to a remotely located receiver, see figure 5." *Id.* at 3. Therefore, it is simply not plausible that disclosing *Cohen* would have changed anything, because the Examiner rejected the '275 patent claims based on references with disclosures that are apparently identical in relevant part to those Defendants attribute to *Cohen*. In this factual milieu, it is all the more important that Defendants plausibly allege "how" *Cohen*'s purportedly anticipating disclosure of "automatically wirelessly transmitting a status signal 111 (*i.e.,* state signal)" was not cumulative of the other prior art before the Examiner.

Defendants also fall short by failing plausibly to allege how the Examiner would have deployed *Cohen*. For example, Defendants' proposed answer only states with respect to claim 1's first limitation that *Cohen* discloses a "remote

control apparatus" that is "capable of transmitting a state signal 111," which indicates "whether a door 140, which may be a garage door, is opening, open, closing or closed." (Ctrclm. ¶¶ 46-47.) Therefore, *Cohen*'s state signal indicates only one status – that of the garage door. But the first limitation of claim 1 of the '275 patent recites a "controller having a *plurality* of potential operational status conditions," such as those related to the garage door, the operating lights, vacation mode, etc. ('966 patent at 8:6-7; 4:5-45 (emphasis added).) To anticipate, a single reference must disclose each and every limitation of a challenged claim. *See, e.g., Verdegaal Bros. v. Union Oil Co. of California,* 814 F.2d 628, 631 (Fed. Cir. 1987). Defendants have not plausibly alleged that such is the case with *Cohen*, and they have not remedied the problem by identifying any other prior art with which the Examiner would have combined *Cohen* in an obviousness rejection. Because even accepting Defendants' allegations does not sufficiently "put [Chamberlain] on notice as to . . . how that information would have changed the examiner's decision regarding" patentability, Defendants fail to make an adequate materiality showing. *Cumberland Pharms., Inc. v. Mylan Institutional LLC,* No. 12 C 3846, 2012 WL 6567922, at *6 (N.D. Ill. Dec. 14, 2012).

Therefore, the Court finds that Defendants' allegations concerning *Cohen*'s materiality to the '275 patent would not

survive a Rule 12(b)(6) motion to dismiss. Defendants fail to plead adequately the "how" and/or "why" elements of materiality. This is "especially" problematic where Defendants "have had the benefit of extensive discovery." *Waters Indus., Inc. v. JJI Int'l, Inc.,* No. 11 C 3791, 2012 WL 5966534, at *6 (N.D. Ill. Nov. 28, 2012). As such, the Court denies as futile leave to amend Defendants' Answer to add inequitable conduct affirmative defenses or counterclaims based on fraud in the procurement of the '275 patent.

## II. The '966 patent

As for the '966 patent, the Court again first notes that Defendants have adequately met the "who," "what," "when," and "where" prongs of *Exergen*. Their proposed answer identifies several relevant individuals by name (at least Fitzgibbon, Peters, and Livstik), specific office action responses that Chamberlain filed on certain dates, where the withheld prior art references (*i.e., Peplinski*, the '619 patent, the '676 patent, and *Craftsman*) disclose information pertinent to the '966 patent, the nature of alleged affirmative misrepresentations, and at least claim 9 as the subject matter of the '966 patent that would not have issued but for the challenged conduct.

Chamberlain does not contest that Defendants meet these prongs of *Exergen*. As it did with respect to the '275 patent, however, Chamberlain disputes Defendants' showing of "why" and

"how the allegedly withheld prior art is material and non-cumulative of the '966 patent's teaching that GDOs with backup batteries were known." (ECF No. 272 ("Pl.'s Opp.") at 2.) Chamberlain does not appear to respond to Defendants' misrepresentation allegations. Chamberlain more generally asserts that Defendants have simply revised their prior inadequate allegations "to add invalidity contentions for the allegedly withheld prior art," thus flunking the heightened pleading standard required to show but-for materiality and intent. (*Ibid.*)

Overcoming the inadequacies explored above with respect to the '275 patent allegations, Defendants have adequately pleaded materiality of the withheld prior art to the '966 patent. First, Defendants have alleged facts plausibly showing that the references before the Examiner did not contain disclosures cumulative of those in the four withheld references. *See, e.g., Exergen,* 575 F.3d at 1329-30. The '966 patent examiner allowed the claims in the very next action following the challenged conduct. During prosecution of the '275 patent, by contrast, the Examiner followed the Office Action Response that Defendants claim should have disclosed *Cohen* by mooting all the arguments raised therein and instead citing against the '275 patent references containing ostensibly equivalent disclosures to *Cohen*. In addition, the face of the '966 patent *only* lists the

three references (*Ji*, *Wojciak*, and *Kirkland*), all of which were distinguished prior to or during the challenged Office Action Response. As in *DS Smith,* Defendants have pointed to an amendment and response – in which Chamberlain's agents asserted patentability over the three cited prior art references - "prior to which" the claims did not issue but after which "they did." *DS Smith,* 2016 WL 69632 at *5.

Second, no apparent lacuna in Defendants' pleading forestalls effective notice to Chamberlain of how the withheld references would have changed the Examiner's decision. In contrast to their allegations regarding procurement of the '275 patent, Defendants include in their '966 counterclaim quotes from the notice of allowance clearly indicating what limitations the Examiner found missing from the cited prior art – many of which Defendants allege are disclosed in the four withheld prior art references. (Ctrclm. ¶ 80.) This suffices to plead the "why" and "how" of Chamberlain's inequitable conduct. *See, e.g., Weber-Stephen Products LLC v. Sears Holding Corp.,* No. 13 C 1686, 2014 WL 656753, at *5 (N.D. Ill. Feb. 20, 2014) (finding the "why" and "how" of materiality adequately pleaded where the Examiner's reasons for allowance were incompatible with the defendant's allegations about what the withheld prior art disclosed); *Sloan,* 2012 WL 1108129 at *6, 9 (same).

Similarly, Defendants have adequately pled the "how" and "why" of materiality with respect to the alleged misrepresentations. Defendants allege that Fitzgibbon and Peters made no argument relative to claims 9 and 19 independent of their argument with respect to claim 1 that *Wojciak* and *Ji* do not disclose the electrically powered equipment other than and separate or separable from the barrier movement operator. Instead, they requested that the Examiner withdraw its rejections over *Wojciak* and *Ji* simply because "[c]laims 9 and 19 contain limitations similar to that of claim 1." App. No. 10/447,663 File History, May 11, 2009 Office Action Response, at 10. However, as Defendants note, claims 9 and 19 do not require the presence of electrically powered equipment. Defendants also claim that the withheld prior art discloses this limitation of claim 1. Crucially, Defendants' allegation that the cited misrepresentations in the May 11, 2009 Office Action Response led to issuance of the patent at issue, is supported by the Examiner's ensuing allowance of the subject claims. *Cf. Courtesy Products LLC v. Hamilton Beach Brands, Inc.,* No. 13 C 2012, 2015 WL 6159113, at *6 (D. Del. Oct. 20, 2015), *adopting recommendation,* 2016 WL 354745, at *1 (D. Del. Jan. 28, 2016) (conditioning materiality of misrepresentations on allegations that they were the but-for cause of allowance and on whether the examiner allowed or rejected the subject claims in the ensuing

office action).  That the Examiner issued the notice of allowance immediately following these statements adequately establishes the "how" and "why" of materiality.

Finally, the Court rejects Chamberlain's argument that disclosure in the '966 patent prior art background section of a barrier movement operator with a battery backup system establishes cumulativeness of the withheld references.  The specification's terse summary of the state of "current barrier movement operators" is not as extensive as the disclosures Defendants claim were withheld.  As far as the Court can discern, the only relevant background statements from the '966 patent are:  first, "[s]ome current barrier movement operators can be powered via a backup battery"; second, "[t]hese battery backups are independent items which are typically used only for operating the barrier movement operator"; and third, "[t]hese systems require some method to recharge the batteries either built into the operator or as an additional power supply for battery charging." ('966 patent at 1:31-42.)  The four withheld references, however, generally describe stand-alone battery back-up units that are physically separate pieces of equipment capable of being plugged into the head unit either to receive power from it or serve as a battery back-up.  They further describe how the same units can be removed and used with multiple GDOs and how these units contain electrical components

and equipment that are powered by the back-up battery. (*See,* ECF No. 282 ("Defs.' Reply") at 9-10.) In addition, they describe certain aspects of the technology, such as the "circuitry" connecting the head unit and a battery charging station, that constitute limitations of claim 9 but are entirely absent from the background section. (*See, e.g.,* Ctrclm. ¶¶ 110-112, 123-125, 142-145; '966 patent at 8:19-21 (claim 9).) These alleged disclosures are not only richer and more extensive than the summary's description; at times they even appear to contradict the summary. (*Compare, e.g.,* Ctrclm. ¶ 122 (describing how the '676 patent's rechargeable backup battery can be used to power "any number of electronic devices"); *with* '966 patent at 1:37-39 ("These battery backups are independent items which are typically used only for operating the barrier movement operator.").)

The cases Chamberlain cites are inapposite because they all concern proof of inequitable conduct after the presentation of evidence. *See, e.g., Andrew Corp. v. Gabriel Elecs., Inc.,* 847 F.2d 819, 824 (Fed. Cir. 1988) ("We affirm the district court's conclusion that inequitable conduct has not been proved by clear and convincing evidence."); *Vandenberg v. Dairy Equip. Co.,* 740 F.2d 1560, 1568 (Fed. Cir. 1984) ("The proof here falls short of the clear and convincing evidence needed to prove fraud."); *Bayer AG v. Housey Pharms., Inc.,* 128 Fed.Appx. 767 (Fed Cir.

2005) (appeal after declaratory judgment); *Berry Plastics Corp. v. Intertape Polymer Corp.,* No. 10 C 76, 2016 WL 4486182, at *13 (S.D. Ind. Aug. 25, 2016) ("Berry has failed to prove, by clear and convincing evidence, that the Applicants withheld the prior art. . . ."). Such cases are not instructive on what Defendants must allege under *Exergen* to *plead* inequitable conduct. In fact, some of these cases actually undercut Chamberlain's argument, either because they state that prior art not made of record before the PTO is inherently not cumulative, *Berry,* 2016 WL 4486182 at *12, or because they concern withheld references that were disclosed by name in the patent specification, which is clearly not the case here. *See, Bayer AG,* 128 Fed.Appx. at 770 ("Dr. Housey did not knowingly withhold the Uehara 1985 and Hsiao 1986 references from the PTO. He clearly disclosed them by including them in the '281 patent's specification."). At the pleading stage, Chamberlain cannot taint undisclosed prior art references with cumulativeness based purely on generic descriptions of prior art technology in the specification.

Because Defendants have alleged the "who," "what," "where," "when," "how," and "why" of the challenged conduct, the Court finds that Defendants have adequately pleaded materiality under *Exergen* with respect to the '966 patent.

*b.  Intent*

"[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen,* 575 F.3d at 1328-29. Because an uncited reference "may be many pages long, and its various teachings may be relevant to different applications for different reasons . . . one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference." *Id.* at 1330 (emphasis in original).

After *Therasense,* courts "can no longer infer intent to deceive from non-disclosure of a reference solely because that reference was known and material." *1st Media, LLC v. Elec. Arts, Inc.,* 694 F.3d 1367, 1372-73 (Fed. Cir. 2012) (citing *Therasense,* 649 F.3d at 1290).  While the inference of deceptive intent need not be the "single most reasonable" inference, it must be plausible and flow from the facts alleged.  *Itex, Inc. v. Westex, Inc.,* 2010 WL 2901793, at *2 (N.D. Ill. July 21, 2010) (citing *Exergen,* 575 F.3d at 1329 n.5).

I.  The '275 patent

As discussed above, Defendants' inequitable conduct allegations with respect to procurement of the '275 patent are wanting in materiality.  Nonetheless, the Court analyzes specific intent as an independent and alternative ground for denying leave to amend.

Defendants allege on information and belief that Fitzgibbon "acted with specific intent to deceive the PTO when withholding the *Cohen* reference." (Ctrclm. ¶¶ 58, 63.)  While permissible to aver specific intent based on information and belief, the pleading must set forth the specific facts on which the belief is reasonably based.  *Exergen,* 575 F.3d at 1330-31.  Those specific facts are that Fitzgibbon reviewed *Cohen* at some point, was aware that the PTO cited it against the '813 patent, and worked with Fitch Even during prosecution of both the '813 and '275 patents to review and respond to office actions. (*Id.* ¶¶ 61, 64.)  In response, Chamberlain argues that Defendants fail *Exergen* by alleging mere knowledge of *Cohen* on the part of Fitzgibbon and nothing beyond simple non-disclosure to the PTO. Chamberlain also points to testimony from Fitzgibbon to the effect that he did not believe *Cohen* contained information that was material to the '275 patent.  The Court finds that Defendants have failed to plead facts giving rise to a reasonable belief that Fitzgibbon, to the extent he was aware of

*Cohen*, both knew that it contained disclosures material to the '275 patent and withheld it from the PTO during prosecution with the specific intent to defraud the PTO.

Defendants' allegations that Fitzgibbon knew of the materiality of *Cohen* to the '275 patent claims are implausible in light of discovery already obtained. At his second deposition, Fitzgibbon testified extensively that he viewed *Cohen* as disclosing "an independent device" separate and apart from a "conventional movable barrier operator" that was capable only of identifying the state of the garage door (and not other states of the GDO controller). (Fitzgibbon Tr. 265:2-6, 266:20-267:4, 274:24-275:11, 276:5-7, 281:6-12.) To the extent Fitzgibbon did not expressly employ the words "material" or "immaterial" to describe *Cohen,* the thrust of his testimony is clear enough to implicate *Waters,* in which the court found intent inadequately pled where the prosecuting attorney gave deposition testimony that withholding of the prior art references at issue stemmed from his assessment that they were not material. *See, Waters,* 2012 WL 5966534 at *6. That Defendants premise the need for an amended complaint on Fitzgibbon's testimony (*see,* Defs.' Mot. at 2 ("Based on Mr. Fitzgibbon's admissions, TTI has amended its Affirmative Defense of Inequitable Conduct and counts for fraud on the PTO to include the '275 patent."), obviates their argument that

evaluating his testimony here impermissibly encroaches on the merits.

*DS Smith* is in accord. There, the defendants alleged that individuals associated with the plaintiff had "directed the filing" with the PTO of some of the references that they later failed to disclose. *DS Smith,* 2016 WL 69632 at *6 (describing their "oversight of the application filing of many of the prior art references"). The court found that this allegation, combined with the individuals' involvement in other of the plaintiff's patent applications and in responding to office actions, gave rise to a plausible inference that they knew that the withheld prior art references were material to patentability of the patent at issue. Here, however, there is no indication that Fitzgibbon directed the filing of the *Cohen* patent application, and thus *DS Smith* does not support Defendants' allegation that he knew of specific information in *Cohen* that was material to the '275 patent. Instead, Defendants' allegations only support a reasonable inference of general knowledge of *Cohen* coupled with mere non-disclosure.

Even if the Court ignores Fitzgibbon's deposition testimony, the weight of case law would still counsel against validating Defendants' allegations of scienter. This is not a situation like that presented in *Cumberland,* where the "inference of intent" was "bolstered . . . by allegations that

the withheld references were not simply known to [the named inventor and overseer of drug development at Cumberland], but were also previously relied upon by Cumberland and/or the FDA for the approval of the NDA filed for Acetadote [a commercial embodiment encompassed by the patent at issue]." *Cumberland,* 2012 WL 6567922 at *11–12. Nor have Defendants presented a scenario akin to that in *Bone Care Int'l, LLC v. Pentech Pharms., Inc.,* No. 08 C 1083, 2010 WL 1655455 (N.D. Ill. Apr. 23, 2010), where the intent allegations satisfied *Exergen*. The defendants in that case alleged that two patent attorneys involved in prosecution of the patent at issue "previously had cited the specific omitted material in connection with the earlier patent applications." *Bone Care,* 2010 WL 1655455 at *5. In contrast to *Cumberland* and *Bone Care,* Defendants have not alleged that Chamberlain submitted *Cohen* in an attempt to gain intellectual property protection, cited *Cohen* in connection with earlier patent applications, or otherwise deployed *Cohen* in its service. Rather, Defendants merely allege that Fitzgibbon was aware of and at some point reviewed *Cohen* because it was asserted against the separate '813 patent.

For these reasons, Defendants fail to plead facts supporting a reasonable inference that Fitzgibbon had knowledge of *Cohen*'s allegedly material information and specifically intended to defraud the PTO by not disclosing it. As such, the

Court denies as futile Defendants' motion to amend with respect to the '275 patent on the independent ground that they fail to plead *scienter* adequately under *Exergen*.

## II. The '966 patent

The Court finds Defendants' '966 allegations sufficient under *Exergen* to plead specific intent to defraud the PTO, at least as to the *Peplinski,* '619 patent, and *Craftsman* references. First, Defendants have sufficiently alleged that the accused individuals had detailed knowledge of *Peplinski* and the '619 patent by virtue of their role in directing their earlier filing with the PTO. Samples, at least, had detailed knowledge of *Peplinski* because he prosecuted that application before the PTO. Fitch Even also prosecuted the '619 patent application on behalf of Chamberlain. Defendants claim that Fitzgibbon helped develop *Peplinski,* which was also cited during prosecution of the '619 patent (for which Fitzgibbon is the named inventor), and that Chamberlain owns both *Peplinski* and the '619 patent. Thus, Defendants do not plead "only that the applicants had general knowledge of the [four] undisclosed prior art references or . . . simply 'had become aware' of the prior art references." *DS Smith,* 2016 WL 69632 at *6 (quotation omitted). Rather, as in *DS Smith,* the accused individuals "directed the filing of some of the uncited references with the PTO" – specifically, *Peplinski* and the '619 patent. *Id.*

The *Craftsman* allegations similarly go beyond mere knowledge or general awareness of a reference. Defendants claim that Chamberlain designed and manufactured the *Craftsman* GDO for Sears with Fitzgibbon's help, that the *Craftsman* GDO practices the '619 patent, and that it was used as a test platform for developing the '966 patent technology. Inferring specific knowledge of *Craftsman*'s material disclosures based on such intimate familiarity with the reference is reasonable and a far cry from *Exergen*'s prohibitions.

Additionally, Defendants' allegations with respect to procurement of the '966 patent much more closely track the sufficient allegations in *Cumberland* than do their '275 patent allegations. Unlike the third-party *Cohen* reference, Fitzgibbon oversaw crucial aspects of the development of *Peplinski,* the '619 patent, and the *Craftsman* GDO. *See,* 2012 WL 6567922 at *11-12. Indeed, Chamberlain, through Fitzgibbon and the Fitch Even individuals, submitted the first two of these references for the purpose of gaining intellectual property protection. Therefore, Defendants have adequately pleaded facts that, when combined with their allegations on information and belief, support the reasonable inference that the identified individuals knew of the specific material information in the withheld references.

The Court finds, however, that Defendants' intent allegations with respect to the '676 patent are too weak to meet *Exergen*'s demands. Defendants allege only that the '676 patent was cited during prosecution of the '619 patent as disclosing a plug allowing replacement of the battery, which could be used with a movable barrier operator. Notwithstanding the involvement of the accused persons in prosecuting the '619 patent, such allegations approximate those concerning *Cohen* and fail for all the same reasons. In fact, the allegations here are even weaker. Whereas Defendants at least allege that Fitzgibbon reviewed *Cohen,* there is no such allegation with respect to the '676 patent. Instead, Defendants claim only that Fitzgibbon and the other individuals must have known of the '676 patent's specific material information because the Examiner cited the '676 patent as prior art during prosecution of the '619 patent. Thus, Defendants have only alleged the mere fact of these individuals' involvement in a patent prosecution during which a third-party patent was cited as prior art. Without more, the Court cannot infer "intent to deceive from non-disclosure of a reference solely because that reference was known and material." *1st Media,* 694 F.3d at 1372-73.

Second, Defendants adequately plead that non-disclosure of the *Peplinski,* '619 patent, and *Craftsman* references was a product of specific intent to defraud the PTO. Consider first

*Peplinski.* Mr. Peters allegedly argued that the "cited prior art did not teach a rechargeable battery used to power a head unit" while failing to disclose *Peplinski,* which he knew from the '619 patent proceedings to disclose a rechargeable battery used to power a head unit. (Ctrclm. ¶ 165.) This constitutes a "positive assertion[] of novelty about [a] feature[] critical to the issuance" of the patent, and indicates plausible allegations of specific intent to deceive. *DS Smith,* 2016 WL 69632 at *7. Defendants allege other facts making it plausible that Fitzgibbon also knew this feature of *Peplinski* and, by not disclosing it, specifically intended to defraud the PTO. (*See, e.g., id.* ¶ 155 ("Mr. Fitzgibbon was aware of *Peplinski* during the prosecution of the '966 Patent because it was developed in CGI's Advanced Development Group, which he founded in 1998.").)

To the extent Defendants do not levy similar allegations with respect to the '619 patent or *Craftsman,* other facts in their proposed answer suffice to entitle Defendants to an inference that these two references were also withheld with specific intent to deceive. Chief among these is the allegation that no one from Chamberlain or Fitch Even filed an information disclosure statement or submitted any prior art whatsoever during prosecution of the '966 patent. This supports a reasonable inference that non-disclosure of the references was accompanied by deceptive intent. *See, e.g., Weber-Stephen,* 2014

WL 656753 at *5 (finding that the allegation that the plaintiff submitted "*no prior art whatsoever* in connection with" the patent application at issue supported a reasonable inference of non-disclosure with deceptive intent) (emphasis in original).

The last specific intent issue concerns Defendants' more petite allegations that Peters and Fitzgibbon made affirmative misrepresentations to the PTO. Defendants assert that, after distinguishing prior art on the basis that it did not disclose claim 1's electrically powered equipment other than and separate or separable from the barrier movement operator, Peters and Fitzgibbon represented that claims 9 and 19 were similar to claim 1 to gain allowance of those claims. Defendants allege that withheld prior art references *do indeed* disclose this limitation of claim 1 and that claims 9 and 19 do not, in fact, require such equipment but instead relate to a rechargeable battery "being removably connectable" or "configured" to connect to such equipment. Defendants face two problems, each of which corresponds to the two alleged misrepresentations.

First, it is not reasonable to infer that Fitzgibbon and Peters specifically intended to defraud the PTO in asserting the novelty of claim 1 over the cited prior art. In fact, they were merely representing that the *cited* prior art (*Ji* and *Wojciak*) does not teach claim 1's "equipment" limitation. Nothing in Defendants' proposed answer alleges that those two references,

alone or in combination, disclose the "equipment" limitation of claim 1. Whether withheld references might teach this limitation is irrelevant to whether the challenged statement concerning the cited references' teachings amounted to an affirmative misrepresentation. As such, Defendants have not even pleaded facts that are consistent with a specific intent to deceive, let alone facts that make an inference of such intent reasonable.

Second, with respect to the similarity posited between the limitations of claim 1 and claims 9 and 19, while Defendants have pleaded facts consistent with a specific intent to deceive, an *Exergen* inference of specific intent to deceive is not reasonable. Defendants simply allege that claims 9 and 19 contain "equipment" limitations that are different from the corresponding limitations of claim 1 such that these limitations cannot be said to be "similar" – at least not in context, where Chamberlain's agents were trying to distinguish the claims over *Ji* and *Wojciak*. It is not necessary to engage in a semantic inquiry into differences between the words "similar" and "identical" (although reading claims 1, 9, and 19 leaves this generalist Court with the impression that many facets of their "equipment" limitations are indeed "similar"). The rub is that, even assuming factual inaccuracy of the statement, Defendants' bare allegations fall too close to impermissibly "call[ing] into

question every possible mistake or misstep made by the applicants without any evidence that those mistakes or missteps were made with an intent to deceive." *Human Genome Sciences, Inc. v. Genentech, Inc.,* No 2:11 C 6519, 2011 WL 7461786, at *6 (C.D. Cal. Dec. 9, 2011). Absent are factual allegations that would make an inference of specific intent to deceive any more likely than other possible explanations: laziness, excusable oversight, incompetence, or indeed permissible zealous argument in favor of patentability on the part of Chamberlain's agents. While the inference of specific intent to deceive need not be "the *single most reasonable* inference," *Itex,* 2010 WL 2901793 at *5 (emphasis in original), Defendants must plead "facts consistent with liability plus something to tip the scales" beyond the mere possibility of specific intent to deceive. *Human Genome Sciences,* 2011 WL 7461786, at *3 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Therefore, the Court finds that Defendants have adequately pleaded specific intent to deceive the PTO under *Exergen* as to the withholding of the *Peplinski,* '619 patent, and *Craftsman* references. It therefore grants Defendants leave to amend the Answer to include the allegations related to those three references and to add an inequitable conduct counterclaim and affirmative defense based on procurement of the '966 patent. By contrast, because Defendants have failed to plead specific

intent adequately under *Exergen,* the Court denies lave to amend with respect to the allegations concerning non-disclosure of the '676 patent and misrepresentations of claims 1, 9, and 19.

## B. Antitrust

Defendants also bring counterclaims of unlawful monopoly under section 2 of the Sherman Act and under the Illinois Antitrust Act. "[T]he enforcement of a patent procured by fraud on the Patent Office may be violative of [§] 2 of the Sherman Act provided the other elements necessary to a [§] 2 case are present." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 174 (1965). Therefore, Defendants must plead both *Walker Process* fraud – which, like inequitable conduct, is subject to Rule 9(b)'s standards – and an antitrust violation.

Defendants incorporate by reference their inequitable conduct allegations with respect to both asserted patents and do not state independent facts to support other wrongful conduct with respect to the '275 patent. (Ctrclm. ¶¶ 176-177). Because Defendants have failed to satisfy Rule 9(b)'s heightened pleading standard with respect to the '275 patent allegations, they flunk the fraud prong of *Walker Process*. The Court therefore denies as futile Defendants' motion for leave to amend the Answer to add the antitrust counterclaims regarding the '275 patent. (*See,* Jan. 5, 2017 Order at 6.) However, the opposite

is true with respect to the '966 patent.  Because the Court finds that Defendants' associated inequitable conduct allegations suffice under *Exergen* and Rule 9(b), they have sufficiently met the fraud prong of *Walker Process*.

To establish the antitrust prong of a *Walker Process* claim, Defendants must allege that Chamberlain holds "monopoly power in the relevant market" and "willfully acquired or maintained that power by anticompetitive means." *Delano Farms,* 655 F.3d at 1351 (citation omitted).  As a general matter, monopoly power may be inferred from the predominant share of the market.  *U.S. v. Grinnell Corp.,* 384 U.S. 563, 571 (U.S. 1966).  If Defendants "fail to identify any facts from which the court can infer . . . sufficient market power to have been able to create a monopoly, their § 2 claim may be properly dismissed." *Endsley v. City of Chicago,* 230 F.3d 276, 282 (7th Cir. 2000).  Courts interpret the Illinois Antitrust Act in light of federal antitrust law upon which it is modeled.  *Laughlin v. Evanston Hosp.,* 550 N.E.2d 986, 990 (Ill. 1990).

Defendants likewise make the requisite *Walker Process* antitrust allegations – namely, that a relevant market exists and that Chamberlain possesses monopoly power within that market.  Defendants define the relevant market as the U.S. residential GDO market (Ctrclm. ¶ 184), with Chamberlain's "HD950WF and [Defendants'] Ryobi GD200 [being] essentially sole

competitors at their price point." (*Id.* ¶ 181 (internal quotation marks omitted).) Defendants highlight Chamberlain's statement that it is a "two-player market – CGI and everyone else." (*Id.* ¶¶ 182-183, 189.) They also assert the presence of a monopoly within this market, reiterating that Chamberlain has a 70-80 percent market share. (*Id.* ¶¶ 172, 190.) Further, they point to statements by Chamberlain that Defendants' competition harms its ability to maintain its prices. (*See, id.* ¶¶ 185-187.)

As such, the Court finds that Defendants have satisfied *Walker Process* with respect to the '966 patent and grants leave to amend the Answer to include the proposed allegations.

## C. Patent Misuse

The key patent misuse inquiry is whether the patentee has impermissibly broadened the physical or temporal scope of the patent grant in a manner that produces anticompetitive effects. *See, Princo Corp. v. Int'l Trade Comm'n,* 616 F.3d 1318, 1328 (Fed. Cir. 2010) (*en banc*) ("Where the patentee has not leveraged its patent beyond the scope of rights granted by the Patent Act, misuse has not been found.") (citations omitted). "[P]roof of an antitrust violation," however, "does not establish misuse of a patent in suit unless the conduct in question restricts the use of that patent and does so *in one of the specific ways that have been held to be outside the*

*otherwise broad scope of the patent grant.*" *Id.* at 1329 (emphasis added).

Where a patent misuse defense is premised on patent enforcement, the recent trend among district courts is to allow such a defense to survive a motion to dismiss so long as Defendants can allege facts to plead "bad faith and improper purpose in bringing the suit." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1558 (Fed. Cir. 1995); *see, e.g., ESCO Corp. v. Cashman Equip. Co.,* 158 F.Supp.3d 1051, 1070-71 (D. Nev. 2016); *Nalco,* 2014 WL 645365 at *10. A lawsuit is brought in bad faith only if "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60 (1993). A purpose is improper "if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome." *Glaverbel,* 45 F.3d at 1558.

Therefore, to plead patent misuse, Defendants must allege facts justifying a reasonable inference that Chamberlain (1) acted with bad faith and improper purpose in bringing the suit and (2) impermissibly broadened the scope of the patent grant with anticompetitive effect. *See, e.g., ESCO,* 158 F.Supp.3d at

1069-70 (citing 25 U.S.C. 271(d)(3)); *Nalco,* 2014 WL 645365 at
*10; *Rego-Fix AG v. Techniks, Inc.,* No. 10 C 1188, 2011 WL
471370, at *2 (S.D. Ind. Feb. 2, 2011) (citing *Glaverbel,* 45
F.3d at 1558).

Given the Court's determination that the '275 patent
inequitable conduct counterclaim is insufficiently pleaded, "so
too is the patent misuse claim to the extent that it relies on
inequitable conduct." *VDF FutureCeuticals, Inc. v. Sandwich
Isles Trading Co.,* No. 11 C 288, 2011 WL 6820122, at *7-8 (D.
Haw. Dec. 27, 2011); *accord Target Training Int'l, Ltd. v.
Extended Disc N. Am., Inc.,* No. H-10-3350, 2011 WL 3235683, at
*4-5 (S.D. Tex. Jul. 27, 2011). And it fares no better to the
extent it relies on the antitrust allegations, because the Court
has found those allegations similarly inadequate. Because there
are no other independent allegations pertinent to patent misuse,
Defendants have failed to show bad faith on the part of
Chamberlain in seeking to enforce the '275 patent. Amending the
Answer to add a '275 patent misuse defense would be futile.

By contrast, the Court finds Defendants' allegations
concerning the '966 patent adequate under *Exergen* and *Walker-
Process*. Thus, bad faith is sufficiently established to survive
a motion to dismiss. Further, the Court is willing to accept
that Defendants, by incorporating their antitrust allegations,
sufficiently plead that Chamberlain's enforcement of the '966

patent is likely to engender anticompetitive effects. The problem, however, is the absence of any further allegations regarding improper purpose in bringing this litigation or how it attempts to broaden the scope of the '966 patent grant. For example, Defendants have not sufficiently alleged that Chamberlain brought this case "to harass a competitor and deter others from competition" rather than win a favorable judgment. *Glaverbel,* 45 F.3d at 1558. Similarly, if a plaintiff's conduct "is reasonably within the patent grant, *i.e.,* [if] it relates to subject matter within the scope of the patent claims," then "the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse." *Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 869 (Fed. Cir. 1997) (citations and internal quotations omitted).

Because Defendants have not pleaded facts to establish, for example, that Chamberlain brought this lawsuit against a product (the Ryobi GDO) "that no reasonable person could believe . . . infringed" the *issued* claims, the Court lacks a rationale for finding that Chamberlain's litigation conduct is amenable to a patent misuse defense. *Nalco,* 2014 WL 645365 at *12-13; *see, e.g., Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc.,* 118 F.Supp.3d 646, 658-59 (D.N.J. 2015) (dismissing as futile the defendant's counterclaim for patent misuse because it "hinge[d] upon [the patentee's] allegedly bad faith conduct in pursuing

its patent infringement action" but "failed to plead *any* allegation" that the patentee had, with anticompetitive effect, impermissibly broadened the physical or temporal scope" of the two patents); *cf. Microthin.com, Inc. v. Siliconezone USA, LLC,* No. 06 C 1522, 2006 WL 3302825, at *10 (N.D. Ill. Nov. 14, 2006) (authorizing patent misuse defense where the defendant alleged that the plaintiff, after being informed in separate litigation of prior use and sale of products practicing its patents, then "attempted to unlawfully expand the scope [of] its patents, 'based on mouse pads,' by attempting to enforce its patents against Defendant for its 'Kitchenzone' cutting boards") (quotation omitted). The gravamen of Defendants' allegations – that Chamberlain and its agents failed to disclose prior art during prosecution and then brought this litigation – does not relate to broadening the physical or temporal scope of the patent.

Therefore, the Court denies Defendants' Motion with respect to the patent misuse affirmative defense on grounds of futility.

### D. Unclean Hands

As relevant, establishing unclean hands requires proof of inequitable conduct plus a showing that the plaintiff's conduct immediately relates to the claim it has asserted against the defendant. *See, Consol. Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 810 (Fed. Cir. 1990). The Court therefore

examines the sufficiency of Defendants' unclean hands pleading with these twin elements in mind.

With respect to the '275 patent, Defendants fail to state a claim of inequitable conduct under *Exergen*. Where an accused infringer's unclean hands defense is based on alleged acts of inequitable conduct, it rises and falls based on those allegations. *See, e.g., Collaboration Properties,* 2007 WL 205065, at *7. Thus, without a basis for unclean hands independent of the alleged inequitable conduct, Defendants can only survive a Rule 12(b)(6) motion with plausible allegations of "egregious misconduct" relating to this litigation. *Therasense,* 649 F.3d at 1287; *see also, Human Genome Sciences, Inc. v. Genentech, Inc.,* No. 2:11 C 6519, 2011 WL 7461786, at *8 (C.D. Cal. Dec. 9, 2011). Defendants have not done so, and the Court therefore denies leave to amend to include the proposed unclean hands defense to infringement of the '275 patent.

However, with respect to the '966 patent, Defendants adequately allege inequitable conduct under *Exergen,* meaning that their unclean hands defense based on the same conduct passes muster under the first prong of *Foseco*. As for the second prong, the Court easily finds an immediate relationship between the alleged inequitable conduct before the PTO and Chamberlain's claim in this litigation of infringement of the '966 patent. *See, e.g., Aptix Corp. v. Quickturn Design Sys.,*

269 F.3d 1369, 1377 (Fed. Cir. 2001) (noting as part of an unclean hands analysis that "[e]ven presumably innocent licensees . . . would be properly barred from enforcing the patent, had the rights thereunder accrued through inequitable conduct"); *Worldwide Home Products, Inc. v. Bed Bath and Beyond, Inc.,* No. 11 C 3633, 2013 WL 247839, at *1-2 (S.D.N.Y. 2013) (denying motion to dismiss where the defendants' unclean hands defense stated that "'Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands' based on Plaintiff's 'misrepresentations . . . during the prosecution of the patent application . . . and, further, Plaintiff's intentional with-holding of information from the USPTO that is material'") (quotation omitted); *Collaboration Properties,* 2007 WL 205065 at *7 (noting that an unclean hands defense may rest on allegations of inequitable conduct before the PTO).

As such, the Court denies leave to amend to include the affirmative defense of unclean hands with respect to the '275 patent but grants leave to amend to include the affirmative defense of unclean hands with respect to the '966 patent.

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion is granted in part and denied in part. Defendants may amend the Answer to include the proposed allegations, counterclaims, and inequitable conduct affirmative defense relating to the '966

patent, except for those implicating the misrepresentation of '966 patent claims and non-disclosure of the '676 prior art patent. The Court denies as futile Defendants' Motion with respect to the proposed allegations, counterclaims, and affirmative defenses concerning the '275 patent. The Court also denies as futile leave to amend to include the proposed patent misuse affirmative defense.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: March 22, 2017