IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CHAMBERLAIN GROUP, INC.,

        Plaintiff,

    v.

TECHTRONIC INDUSTRIES CO.,
LTD., TECHTRONIC INDUSTRIES
NORTH AMERICA, INC., ONE
WORLD TECHNOLOGIES, INC.,
OWT INDUSTRIES, INC., ET
TECHNOLOGY (WUXI) CO. LTD.,
and RYOBI TECHNOLOGIES, INC.,

        Defendants.

Case No.  16 C 6097

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff The Chamberlain Group, Inc. ("Chamberlain") brings this action for patent infringement, alleging that certain models of Ryobi-branded garage door openers ("GDOs") infringe two patents it holds on the same technology. Before the Court is Defendant Techtronic Industries Co. Ltd.'s ("TTI HK") Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction [ECF No. 379]. For the reasons stated herein, the Court denies the Motion.

## I.  BACKGROUND

Defendant TTI HK is an investment holding company based in Hong Kong. Its products include power tools, outdoor goods, and floor care products sold under several household brand names,

including Milwaukee, Hoover, Oreck, and Ryobi. TTI HK has a
number of subsidiaries based in Asia and the United States.
Defendant Techtronic Industries North America, Inc. ("TTI NA")
is one such subsidiary, but its activities are strictly
administrative. Defendant One World Technologies, Inc. ("One
World") is a wholly-owned subsidiary of TTI NA that does much of
the heavy lifting in North America for TTI HK's Ryobi products.
(Confusingly, One World previously conducted its business under
the TTI NA name.) Techtronic Trading Limited ("TTI Trading") is
another wholly-owned subsidiary of TTI HK, and it ships TTI HK
products from Asia to the United States. TTI HK and TTI Trading
share a logo, address, and an office at Kowloon Commerce Center,
Tower 2, floor 29/F, Kwai Chung, Hong Kong.

In a concurrent proceeding before the International Trade
Commission (the "ITC") between the parties to this lawsuit, One
World's president, Michael Farrah ("Farrah"), testified on
behalf of One World, TTI NA, and TTI HK as follows: "Q. You're
not sure which legal entity – entity Techtronic Industries
Company Limited falls under? A. No. They're partners – our co-
development partners, really, part of our company. We treat
them as our company. And I'm not sure what – you know, who pays
them, for instance, which legal entity." (ECF No. 410 ("Pl.'s
Resp."), Ex. P at 486:1-9.) Recounting a visit to the "Hong
Kong office," Farrah also could not distinguish between TTI HK

and TTI Trading. He recanted a prior sworn statement in which he denied that TTI HK imported the accused Ryobi GDOs, averring instead that TTI HK "facilitated" importation of the Ryobi GDOs into the U.S. (*See, generally,* Pl.'s Resp. at Ex. P.)

TTI HK's CEO, Joseph Galli ("Galli"), is Farrah's direct report. In an email to Galli captioned "New Business Category Approval Request," Farrah first introduced the Ryobi GDO project as "a very exciting opportunity with The Home Depot" that "will deliver TTI $36M in net sales @ 28%GGM and 8.7% EBIT in year 1 and then grow to $45M at and 33% GGM and an 13.2% EBIT in year 3." (Pl.'s Resp. at Ex. G.) Farrah "look[ed] forward to approval so we can move this program ahead." (*Ibid.*) Once development was approved, Galli asked to be kept abreast of "any Home Depot meetings/decisions on" the Ryobi GDO opportunity. (*Id.* at Ex. H.) Galli, TTI HK's Chief Financial Officer, and TTI HK's Deputy Chief Financial Officer approved line-by-line capital expenditures relating to the project – including $90,925 for a testing facility, $135,395 for an "environmental chamber," $138,408 for certain Ryobi GDO modules, and $815,697 for the program itself. (Pl.'s Resp. at Exs. I-O.)

As relevant, TTI Trading purchases the Ryobi GDOs from a Chinese manufacturer, Defendant ET Technology (WUXI) Co. Ltd. ("ET Door") – with whom TTI HK presumably has an agreement – and imports them to various ports in California and South Carolina.

Once there, title to the GDOs passes to One World, who sells them to The Home Depot – the exclusive retailer of all Ryobi GDOs in the U.S. – for sale at its stores to end users. Around 50 percent of TTI HK's total sales (and approximately 90 percent of One World's sales) are to The Home Depot. (Of TTI HK's roughly $5.5 billion in revenue in 2016, sales at The Home Depot accounted for more than $2.7 billion.) Galli tracks the sales of One World's products to The Home Depot on a weekly basis, and has requested sales information for just the Ryobi GDOs.

A visitor to TTI HK's website can click on the Ryobi USA brand link, which navigates them to the homepage for Ryobi Tools. From there, a user can select "Garage Door Openers," and the first item presented is the allegedly infringing Ryobi GDO. From the landing page for that product, the user can choose to "Buy at The Home Depot," and he or she is then redirected to The Home Depot's online store where they can purchase it.



**RYOBI** POWER TOOLS

INNOVATION | SERVICE & SUPPORT | CONTACT U

SEARCH

PRODUCTS ▼ | ONE+ SYSTEM | PROMOTIONS | RYOBI TV | NATION | TOOLS 101

◀ RETURN TO PRODUCT LISTING

**ULTRA-QUIET GARAGE DOOR OPENER**
MODEL: #GD200A | HOME DEPOT SKU #: 1002278817

Get more out of your garage with RYOBI. Introducing the next generation of garage door openers with the RYOBI Ultra-Quiet Garage Door Opener. The ultra-powerful motor will quietly open and close large doors with ease due to the 2HPs for faster openings. With motion controlled overhead LED light has a selectable duration control so you are never left in the dark. Rest assured even in power outages, this unit is compatible with the RYOBI ONE+ system, and is battery backup ready with over 100 openings using a RYOBI ONE+ P108 4Ah Battery (sold separately). For added control, the Ryobi opener is compatible with HomeLink and is Wi-Fi connectable.

Visit RYOBITools.com/GDO

See Less

BUY AT THE HOME DEPOT | SIGN IN & ADD TO WISH LIST

The Home Depot has a total of 76 stores in Illinois; only five States have more. In 2016, gross U.S. sales revenue of the accused Ryobi GDO totaled approximately $9.5 million. One World sells the GDOs not just to The Home Depot's headquarters but directly to certain store locations, including over 750 GDOs to a Joliet, Illinois location. In addition, One World has held training seminars and advertised in Illinois Home Depot stores. The Home Depot has honored TTI HK's Ryobi-branded products with various awards for innovation and marketing, recognizing TTI HK as both a "top partner" and "the 2016 Home Depot US Partner of the Year." Commenting on these awards, Galli on behalf of TTI HK stated that "[t]he TTI organization is delivering a continuous flow of compelling and innovative new products." (Pl.'s Resp. at Exs. X-Z.)

## II. **DISCUSSION**

TTI HK seeks dismissal of all claims against it for lack of personal jurisdiction under Rule 12(b)(2).  There is no dispute that TTI HK has no direct or advertising presence in Illinois; has never employed anyone in Illinois, maintained a registered agent in Illinois, or paid taxes in Illinois; has never owned, leased, possessed, or maintained any real or personal property in Illinois; and has never itself manufactured, produced, marketed, imported, or sold any products in Illinois.  The question *sub judice* is whether Chamberlain has made a *prima facie* showing that TTI HK is subject to specific personal jurisdiction in Illinois based on its role in approving, monitoring, and overseeing both the development of the allegedly infringing Ryobi GDOs and their sale to an exclusive distributor with a heavy Illinois presence.  Because the Court answers this question in the affirmative, it stops short of considering the alternative ground for jurisdiction - imputation to TTI HK of its subsidiaries' Illinois contacts.

### A.  **Legal Standard**

Federal Circuit law controls whether personal jurisdiction exists over an out-of-state defendant in a patent infringement case.  *See, Hildebrand v. Steck Mfg. Co., Inc.,* 279 F.3d 1351, 1354 (Fed. Cir. 2002).  When personal jurisdiction is challenged under Fed. R. Civ. P. 12(b)(2) without the benefit of an

evidentiary hearing, the plaintiff must "make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed. Cir. 2003); *accord, Purdue Res. Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). In such circumstances, courts are not limited to consideration of facts alleged in the complaint, but may also consider affidavits and other written materials. *See, Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1017 (Fed. Cir. 2009).

The law of the Federal and Seventh Circuits is in harmony on the question whether the Court may exercise jurisdiction here: the forum State's long-arm statute must permit service of process, and exercise of personal jurisdiction must comport with due process. *Compare, Grober v. Mako Prods., Inc.,* 686 F.3d 1335 (Fed. Cir. 2012); *with, e.g., Felland v. Clifton,* 682 F.3d 665, 672 (7th Cir. 2012). The Illinois long-arm statute authorizes personal jurisdiction to the full extent permitted by either the Illinois Constitution or the federal Constitution, 735 Ill. Comp. Stat. 5/2-209(c), meaning that the state statutory and federal constitutional requirements merge. *uBID, Inc. v. The GoDaddy Group, Inc.,* 623 F.3d 421, 425 (7th Cir. 2010).

Specific personal jurisdiction is a more limited assertion of state power than general personal jurisdiction, which

Chamberlain does not advance as a basis for jurisdiction over TTI HK in this case. Specific jurisdiction exists only for controversies that arise out of or are related to the defendant's purposeful availment of the forum. *See, Hyatt Int'l Corp. v. Coco,* 302 F.3d at 707, 713 (7th Cir. 2002). Exercise of specific personal jurisdiction in a patent infringement case comports with due process where: (1) the defendant purposefully directed activities at forum residents; (2) the claim arises out of or relates to those activities; and (3) asserting personal jurisdiction is reasonable and fair. *AFTG-TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1361 (Fed. Cir. 2012) (citation omitted). The specific jurisdiction inquiry centers "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 134 S.Ct. 1115, 1121 (2014).

## B. Specific Personal Jurisdiction

### 1. Purposeful Availment

Chamberlain argues that specific jurisdiction over TTI HK in Illinois is proper on the basis that it directed the development of the accused Ryobi GDO, relies on and monitors GDO sales in populated states like Illinois through The Home Depot's retail stores, and ultimately benefits immensely therefrom. According to Chamberlain's evidence, development and financial feasibility of the Ryobi GDO project were premised from the outset on TTI HK's exclusivity arrangement with The Home Depot

and on the retailer's distribution network; Galli and other TTI HK personnel approved line-by-line capital expenditures for One World to develop and bring the Ryobi GDO to market; and Galli, by requesting updates and continuously monitoring both One World's sales to The Home Depot and the retailer's sales to consumers, expects and knows that the GDOs are being sold to Illinois consumers. Chamberlain also notes that TTI HK's website (indirectly through the Ryobi regional website) links to The Home Depot's online store, where Illinois customers can purchase the infringing product. Apart from these sales-based activities, Chamberlain points to Farrah's ITC testimony and charges TTI HK with "facilitating" importation of the Ryobi GDOs into the U.S., a significant percentage of which are inexorably sold in Illinois thanks to The Home Depot's 76 stores in the state.

TTI HK responds that it has no role in the manufacture, importation, or sale of the Ryobi GDOs – but that ET Door, TTI Trading, and One World are the entities responsible for these allegedly infringing activities. TTI HK argues that, without a more robust nexus, its knowledge of eventual sales of Ryobi GDOs to Illinois residents is legally insufficient to subject it to jurisdiction. Further, it maintains that it merely operates a "passive" (as opposed to an "interactive") website that does not allow any Illinois resident to purchase a Ryobi GDO.

- 9 -

The stream-of-commerce theory governing exercise of specific personal jurisdiction is set forth in *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.,* 480 U.S. 102 (1987), and *J. McIntyre Mach., Ltd. v. Nicastro,* 131 S.Ct. 2780 (2011). In both cases, the Supreme Court struggled to coalesce around a framework for purposeful availment. Under one theory, "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State," and the defendant instead must engage in "additional conduct" showing an intent to serve the forum state's market. *Asahi,* 480 U.S. at 112. The second theory requires only knowledge that the final product is being marketed and sold in the forum state and that such sales were part of the "regular and anticipated flow" of manufacture, distribution, and sale in the forum. Seventh and Federal Circuit precedent "leave open the possibility that a foreign manufacturer, who places its product into the stream of commerce in the United States, may be subject to jurisdiction in a state where that product causes an injury and where there is a regular flow of its product or regular course of sales in that state." *In re Testosterone Replacement Therapy Prods. Liab. Litig.,* No. 14 C 1748, 2016 WL 5890022, at *3 (N.D. Ill. Oct. 10, 2016); *see also, AFTG-TG,* 689 F.3d at 1363 (noting that "the Supreme Court's framework applying the stream-of-commerce theory – including the

conflicting articulations of that theory in *Asahi* – had not changed" in *Nicastro*).

Even under the more stringent test, however, TTI HK is subject to specific personal jurisdiction in this action. Two Federal Circuit guideposts help delineate the crucial "something more" required: whether the defendant to some degree selects or controls the distribution process accounting for the accused product's presence in the forum state. First, in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994), the plaintiff named as defendants the manufacturer and distributor of an allegedly infringing fan that turned up for sale in the local outlet of a chain store. The plaintiffs adduced evidence that a private investigator "purchased the allegedly infringing fan at a chain store with about six outlets in the forum state and that the fans were available for purchase at the other outlets as well." *Id.* at 1560-61. Ruling that the defendants placed the accused fans in the stream of commerce with knowledge of their likely destination, the court reasoned that the "presence of an established distribution channel" suggested an "expectation" that the fans "will be purchased by consumers in the forum state." *Ibid.* (quotation and internal quotation marks omitted).

Then, in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355 (Fed. Cir. 1998), the court found personal

jurisdiction lacking where the defendant patent holder entered into licensing agreements with companies that manufactured or marketed certain athletic shoes. *Id.* at 1357. The court held that the defendant had no control over its licensees and their products, and therefore personal jurisdiction could not be premised on a stream-of-commerce theory – notwithstanding that the defendant received royalty income from sales made in the forum state by its licensees. Moreover, the defendant's product was merely "a covenant not to sue, not a shoe incorporating the patented technology," and so it never placed a product into the stream of commerce of the forum state. *Id.* at 1362.

Applying these precedents, courts hearing patent infringement disputes in this District have found specific personal jurisdiction over a foreign manufacturer who "sold the allegedly infringing products to two distributors with multiple stores in Illinois." *Original Creations*, *Inc. v. Ready America, Inc.,* 836 F.Supp.2d 711, 716-18 (N.D. Ill. 2011) (noting that the foreign defendant "established distribution channels in Illinois such that it 'knew the likely destination' of its products and established 'connections with the forum state'") (quoting *Beverly Hills Fan,* 21 F.3d at 1566). More recently, another sister court applied a corollary articulated by the D.C. Circuit to the more stringent "something more" standard, reposing its finding of personal jurisdiction in the foreign

corporation's opting for – and knowledge that it was enjoying – a "'regular flow or regular course of sales'" in the forum state. *In re Testosterone,* 2016 WL 5890022, at *3 (quoting *Williams v. Romarm*, *S.A.,* 756 F.3d 777, 785 (D.C. Cir. 2014)). While the defendant drug manufacturer did not itself "engage in any marketing or sale of the drug within the United States," it retained a distributor who sold the drug in the U.S. and remitted royalty payments to the tune of over $600 million. *See, In re Testosterone,* 2016 WL 5890022 at *3 ("From these figures, as well as from plaintiffs' evidence that Besins employees *received regular updates on the United States market and sales* of AndroGel, the Court can reasonably infer that Besins knew that a regular and significant flow of the AndroGel it manufactured would end up in each of the forum states.") (emphasis added).

Unlike *Red Wing,* this case involves a foreign company who approved and allocated capital necessary to develop and bring to market the allegedly infringing product, and it had at least some say in the decision to continue exploiting a longstanding distribution channel that inexorably deposits a significant number of the products at issue in Illinois. As in *Original Creations,* TTI HK takes advantage of a retail network – one whose exclusivity is mandated for all its Ryobi products – that has obvious (not merely random or fortuitous) Illinois

consequences.  Similar to *In re Testosterone,* TTI HK's knowledge of the regular flow of products into Illinois cannot seriously be questioned, given Galli's requests for and receipt of regular sales updates.  Regardless of whether an Illinois resident can purchase a Ryobi GDO "from" TTI HK by virtue of its website's indirect links to The Home Depot's online store – or whether, as TTI HK contends, its website is merely "passive" – it is further proof of TTI HK's purposeful and exclusive availment of the retailer's Illinois-heavy distribution network.

Cases declining to find personal jurisdiction where sales by a foreign manufacturer's subsidiary led to the fortuitous presence of the defendant's products in the forum state, are not dispositive.  In *Tile Unlimited, Inc. v. Blanke Corp.,* 47 F.Supp.3d 750 (N.D. Ill. 2014), for example, the defendant manufacturer's subsidiary contracted equally with several distributors, only one of whom sold products into the forum state.  *See, id.* at 755-56 ("Once the Uni-Mat reached the Blanke USA warehouse in Georgia [from the foreign defendant's subsidiary], Blanke USA would sell the product to Virginia Tile and other distributors who would distribute the product throughout the United States.  Tile Unlimited, an Illinois corporation with its principal place of business in Illinois, claims that it purchased Uni-Mat from Virginia Tile. . . .")  On the contrary, conceptualization, development, importation, and

sales of TTI HK's Ryobi GDOs were and are tied to an exclusive distribution arrangement contemplating thousands of sales in the forum state. What is more, the number of Home Depot stores in Illinois (76), in both an absolute sense and relative to other states, allows the Court to draw the reasonable inference that the sales in Illinois of Ryobi GDOs as a percentage of TTI HK's GDO revenues is vastly more substantial than the few thousand dollars in *Tile Unlimited* or the four machines in *Nicastro*. *Cf., uBID, Inc.,* 623 F.3d at 428-29 (holding that "GoDaddy purposefully availed itself of the Illinois market for its services through its deliberate and continuous exploitation of that market").

Seeking to distinguish this case law, TTI HK argues that it does not manufacture the accused Ryobi GDOs, import them into the U.S., or contract with The Home Depot for their sale. But "*Nicastro* does not stand for the proposition that if a defendant places goods into the stream of commerce via a third-party distributor who causes those goods to be sold in [the forum state,] it can never be subject to personal jurisdiction in [the forum state]." *Appjigger GmbH v. Blu Prod., Inc.,* No. 14 C 9650, 2015 WL 3463413, at *5 (N.D. Ill. May 29, 2015). Doubtless, the law of personal jurisdiction – notoriously thorny and fact-specific – would be more lucid if the seminal cases recognized the sort of formal distinction TTI HK advocates. Alas, it is

not so facile as to hale into federal court only those foreign companies that operate the machines of manufacture or the instrumentalities of importation. *See, e.g., World-Wide Volkswagen,* 444 U.S. at 297-98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over *a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.*") (emphasis added). While TTI HK may not physically manufacture, import, or sell its Ryobi products to The Home Depot, there is no question that it has at least some control over their deliverance into the stream of commerce that inexorably deposits them in Illinois. Recall that Galli, acknowledging TTI HK's receipt of The Home Depot's awards, poignantly pronounced that "[t]he TTI organization is delivering a continuous flow of compelling and innovative new products." TTI HK banked on their regular flow into Illinois when it approved and allocated expenses for One World to develop the Ryobi GDOs for exclusive sale to The Home Depot; its CEO, Galli, monitors their distribution and reviews sale reports, confirming that the GDOs indeed reach Illinois; and TTI HK ultimately benefits from the entire arrangement, which was the impetus for Farrah's initial overture to Galli.

Absent some indication contrary to all the evidence that its subsidiaries act unilaterally in availing themselves of the

forum, *see, Purdue,* 338 F.3d at 780, or that it is a mere licensor of the Ryobi name with no opportunity to control the GDOs' distribution, *see, Red Wing,* 148 F.3d at 1362, TTI HK purposefully avails itself of the privilege of doing business in Illinois.

### 2. *Relatedness*

Rehashing its earlier argument, TTI HK contends that it is not subject to personal jurisdiction because Chamberlain has not shown the relatedness of any purposeful availment to this patent infringement action. TTI HK notes that patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). Thus, its argument goes, for there to be specific personal jurisdiction over TTI HK in Illinois, Chamberlain "would have to allege that [TTI HK] did one of these listed activities in" Illinois. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1308 (Fed. Cir. 1999).

However, the Patent Act sweeps more broadly than TTI HK suggests, applying to "[w]hoever actively induces infringement of a patent" and rendering such a person or entity "liable as an infringer." 35 U.S.C. § 271(b). For its part, Chamberlain claims that TTI HK "facilitated" importation into the U.S. of

the allegedly infringing Ryobi GDOs and otherwise actively induced its subsidiaries – particularly, TTI Trading and Defendant One World - to engage in the activities prohibited by the statute. While its burden to show liability will require greater proof that TTI HK in fact did so, Chamberlain's allegations and jurisdictional evidence suffice to defeat TTI HK's Motion to Dismiss. To the extent TTI HK's argument is premised on the idea that actions in Illinois must be the exclusive ground of the complaint, this is incorrect. "Such reasoning would allow defendants with allegedly infringing activities in multiple states to argue that personal jurisdiction did not lie in any state because the activities in the plaintiff's chosen forum were not necessary to the cause of action." *HollyAnne,* 199 F.3d at 1308 n.4 (noting also that the proper test is whether the activity in the forum state "is *a* basis for the cause of action").

Therefore, TTI HK's targeting of Illinois consumers and purposeful availment of the forum with respect to its Ryobi GDO products is sufficiently related to Chamberlain's claim that, for example, importation and sale of those products infringes its patents.

## C. Fair and Reasonable

After a plaintiff has shown that the cause of action is related to or arises out of the defendant's purposeful availment

of the forum, "it becomes defendants' burden to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Coyle,* 340 F.3d at 1351-52 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)). Factors that are relevant to the reasonableness inquiry include: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental social policies.'" *Patent Rights Protection Group, LLC v. Video Gaming Techs., Inc.,* 603 F.3d 1364, 1369 (Fed. Cir. 2010) (quoting *Burger King,* 471 U.S. at 476-77). The ultimate constitutional lodestar is whether it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *uBID,* 623 F.3d at 426.

The burden *par excellence* on a foreign defendant is a travel burden, and it is certainly a long flight from Hong Kong to Chicago. Worth keeping in mind, however, is the fact that "out-of-state defendants *always* face such a burden," *Felland v. Clifton,* 682 F.3d 665, 677 (7th Cir. 2012) (emphasis in original), and the extent to which "modern methods of transportation and communication have significantly ameliorated

[the] burden" of defending suit in a forum other than one's residence. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 632 (11th Cir. 1996) (citation omitted); *see, Menken v. Emm,* 503 F.3d 1050, 1060 (9th Cir. 2007) ("[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past."); *see also*, *Synthes (U.S.A.) v. G.M. Dos. Reis Jr. Ind. Com de Equip. Medico,* 563 F.3d 1285, 1299 (Fed. Cir. 2009) (same). Also warranting a mention is the burden on an international defendant inherent in navigating a foreign legal system. *See, Asahi,* 480 U.S. at 114. Yet these concerns too are somewhat mitigated here; TTI HK has retained U.S. counsel based in Illinois to litigate this case and the parallel ITC proceeding, and counsel appears to have ably represented its interests. Therefore, the first factor weighs against a finding of fairness, but only slightly; traveling to Illinois from Hong Kong – to the extent such travel is necessary in this patent infringement action - does burden TTI HK.

However, the other applicable factors militate in favor of exercising specific personal jurisdiction over TTI HK in Illinois. The second factor – the forum state's interest in adjudicating the dispute – weighs significantly in favor of a finding of fairness. Illinois's interest in this patent

infringement action, which involves the rights of an Illinois company and allegedly infringing products sold to Illinois consumers, is compelling. "Illinois has a strong interest in adjudicating injuries that occur within the state, and this interest extends to patent infringement actions." *CoolSavings.Com, Inc. v. IQ.Commerce Corp.,* 53 F.Supp.2d 1000, 1005 (N.D. Ill. 1999) (citation omitted). In addition, the third factor concerning the plaintiff's interest in obtaining convenient and effective relief weighs slightly in favor of a fairness finding. Illinois is the most convenient forum for Illinois-based Chamberlain to pursue its claims.

The fourth and fifth factors – the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the States in furthering fundamental social policies – have little purchase here, as the case involves the application of uniform federal patent law, not state law. *See, e.g., Litmer v. PDQUSA.com,* 326 F.Supp.2d 952, 959-60 n.8 (N.D. Ind. 2004).

As such, balancing the relevant factors in this case supports the exercise of specific personal jurisdiction over TTI HK in Illinois. "[L]ike the Chinese defendant in *Beverly*," TTI HK's "mere foreign status does not outweigh these interests." *Worldtronics Int'l, Inc. v. Ever Splendor Enter. Co., Inc.,* 969 F.Supp. 1136, 1142 (N.D. Ill. 1997) (citing *Beverly Hills Fan,*

21 F.3d at 1569); *see also, Original Creations,* 836 F.Supp.2d at 719 ("The burdens on [the foreign defendant] are not enough to overcome the interests of the state and [the plaintiff]. Though travel is a burden, it is not generally a reason to find jurisdiction unreasonable.") (citation omitted).

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant TTI HK's Motion to Dismiss [ECF No. 379] is denied.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated: August 8, 2017