**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:16-cv-06097 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| TECHTRONIC INDUSTRIES CO. LTD., | ) | |
| TECHTRONIC INDUSTRIES NORTH | ) | The Honorable Harry D. Leinenweber |
| AMERICA, INC., ONE WORLD | ) | |
| TECHNOLOGIES, INC., OWT | ) | Magistrate Judge Sydney Schenkier |
| INDUSTRIES, INC., ET TECHNOLOGY | ) | |
| (WUXI) CO. LTD., and RYOBI | ) | |
| TECHNOLOGIES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1
II.    LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW .................................1
III.   CGI HAS NOT PROVEN INFRINGEMENT BY A PREPONDERANCE OF THE
       EVIDENCE ...........................................................................................................2
       A. The Legal Standard for Alleged Infringement ............................................2
           1.  Literal Infringement (Direct and Indirect) ...................................2
           2.  Infringement Under the Doctrine of Equivalents...........................3
       B. CGI Has Not Proven Infringement of the '275 Patent. ..............................3
           1.  CGI Has Not Proven Literal Infringement of the '275 Patent. ....3
           2.  CGI Has Not Proven Infringement of the '275 Patent Under the Doctrine of
               Equivalents...................................................................................7
           a.  Prosecution History Estoppel Bars CGI From Asserting Infringement Under the
               Doctrine of Equivalents .................................................................7
           b.  CGI Has Not Proven Infringement Under the Doctrine of Equivalents .................8
           3.  CGI Has Not Proven Direct Infringement of the '275 Patent..................................9
           4.  CGI Has Not Proven Indirect Infringement of the '275 Patent ............................10
           a.  CGI Has Not Proven Contributory Infringement of the '275 Patent .....................10
           b.  CGI Has Not Proven Induced Infringement of the '275 Patent............................11
       C. CGI Has Not Proven Infringement of the '966 Patent ...............................13
           1.  CGI Has Not Proven Literal Infringement of the '966 Patent ...............................13
           2.  CGI Has Not Proven Direct Infringement of the '966 Patent...............................13
           3.  CGI Has Not Proven Indirect Infringement of the '966 Patent ............................14
           a.  CGI Has Not Proven Contributory Infringement of the '966 Patent .....................14
           b.  CGI Has Not Proven Induced Infringement of the '966 Patent............................15
           4.  CGI Has Not Proven Joint Infringement of the '966 Patent...............................16
       D. CGI Has Not Proven Which Defendants Engaged In Any Alleged Acts................16
IV.    CGI HAS NOT PROVEN ITS CLAIM OF WILLFUL INFRINGEMENT .......................17
V.     CHAMBERLAIN FAILED TO PROVE ITS CLAIM FOR DAMAGES..........................19
       A. CGI Failed To Prove Lost Profits for the '275 Patent..............................20
           1.  Legal Standard for Lost Profits in Patent Cases ....................20
           2.  Chamberlain's Experts Admitted That *Panduit* Factor Two Is Not Met, Which
               Bars Lost Profits Damages...........................................................20
       B. CGI Failed To Prove Reasonable Royalty Damages for the '275 Patent and the '966
           Patent .....................................................................................................21
           1.  CGI Failed to Apportion Its Proffered Damages Base ..........................................21
           2.  CGI Presented *Ipse Dixit* Expert Testimony Insufficient to Support Its Royalty
               Rate ......................................................................................22
       C. CGI Did Not Prove Pre-Suit Damages for the '275 Patent ......................................23
       D. CGI Did Not Prove Damages for Any Method Claims..........................................24
VI.    VENUE IN THIS DISTRICT IS IMPROPER ........................................................25
VII.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER TECHTRONIC
       INDUSTRIES CO., LTD. ....................................................................................26
VIII.  CGI HAS NOT PROVEN IT IS ENTITLED TO OTHER RELIEF ...................................27
IX.    CONCLUSION ...................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
    797 F.3d 1020 (Fed. Cir. 2015) (en banc) ................................................ 16

*American Seating Co. v. USSC Group, Inc.,*
    514 F.3d 1262 (Fed. Cir. 2008) ....................................................................... 20

*BMC Res., Inc. v. Paymentech, L.P.,*
    498 F.3d 1373 (Fed. Cir. 2007), *overruled on other grounds in Akamai Techs.,*
    *Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) ................. 2

*Brown v. Snow,*
    94 F. App'x 369 (7th Cir. 2004) ...................................................................... 2

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,*
    576 F.3d 1348 (Fed. Cir. 2009) ..................................................................... 24

*Commil USA, LLC v. Cisco Sys., Inc.,*
    135 S.Ct. 1920 (2015) ..................................................................... 3, 11, 15

*Cordis Corp. v. Boston Scientific Corp.,*
    658 F.3d 1347 (Fed. Cir. 2011) ....................................................................... 2

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,*
    559 F.3d 1308 (Fed. Cir. 2009) ..................................................................... 23

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014) ..................................................................................... 26

*DSU Med. Corp. v. JMS Co.,*
    471 F.3d 1293 (Fed. Cir. 2006) ......................................................... 3, 11, 12, 15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (2002) .......................................................................................... 8

*Fourco Glass Co. v. Transmirra Products Corp.,*
    353 U.S. 222 (1957) ........................................................................................ 25

*Fujitsu Ltd. v. Netgear Inc.,*
    620 F.3d 1321 (Fed. Cir. 2010) ....................................................................... 3

*Garretson v. Clark,*
    111 U.S. 120 (1884) ........................................................................................ 22

*Global–Tech Appliances, Inc. v. SEB S.A.*,
    131 S.Ct. 2060 (2011) ...................................................................................3, 11

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
    897 F.2d 508 (Fed. Cir. 1990) ...............................................................17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) .........................................................................17, 18

*Hedberg v. Indiana Bell Tel. Co.*,
    47 F.3d 928 (7th Cir.1995) ....................................................................2

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ...................................................................2

*K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*,
    52 Fed. Appx. 135 (Fed. Cir. 2002) .....................................................23

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) .................................................................22

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ...............................................................................3

*N. Grain Mktg. LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) .................................................................26, 27

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998) .............................................................23

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ...............................................1, 19, 20, 21

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
    926 F.2d 1161 (Fed. Cir. 1991) .............................................1, 20, 21

*State Industries, Inc. v. Mor-Flo Indus., Inc.*,
    883 F.2d 1573 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990)....................................20

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015) ...............................................................3

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S.Ct. 1514 (2017) ...........................................................................25

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ...............................................................3, 9

*Toshiba Corp. v. Imation Corp.*,
681 F.3d 1358 (Fed. Cir. 2012) ...................................................................... 11

*Touchcom, Inc. v. Bereskin & Parr*,
574 F.3d 1403 (Fed. Cir. 2009) ...................................................................... 26

*Uniloc USA Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ...................................................................... 23

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
917 F.2d 1574 (Fed. Cir. 1990) ...................................................................... 25

*Vita-Mix v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009) ........................................................................ 3

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) ...................................................................... 17

*Williams v. Chavez*,
248 F.3d 1162 (7th Cir. 2000) .......................................................................... 2

STATUTES

28 U.S.C. § 1391(c) ............................................................................................. 25

28 U.S.C. § 1400(b) ....................................................................................... 25, 26

28 U.S.C. § 1404 ................................................................................................. 26

35 U.S.C. § 271(c) ................................................................................................. 3

35 U.S.C. § 284 ............................................................................................... 17, 27

35 U.S.C. § 287 ................................................................................................... 23

Judicial Improvements and Access to Justice Act, § 1013(a), 102 Stat. 4669 ............................. 25

OTHER AUTHORITIES

Federal Rule of Civil Procedure 50(a) .......................................................... 1, 2, 27

# I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), Defendants Techtronic Industries Co. Ltd., Techtronic Industries North America, Inc., One World Technologies Inc., OWT Industries, Inc., and Ryobi Technologies, Inc. (collectively, "TTI") hereby move for entry of judgment as a matter of law that:

1.      The Ryobi GD200 and GD200A (the "Accused Products") do not infringe claims 1, 5, and 15 of U.S. Patent No. 7,224,275 ("the '275 patent") and claims 14, 17, and 18 of U.S. Pat No. 7,635,966 ("the '966 patent") directly, indirectly, literally, or under the doctrine of equivalents;

2.      The Chamberlain Group Inc. ("CGI") has not proven its claim of willful infringement;

3.      CGI failed to present sufficient evidence to support the recovery of lost profits or reasonable royalty damages;

4.      Venue is improper in this District; and

5.      Techtronic Industries Co. Ltd. is not subject to personal jurisdiction in this District.

On the third point, CGI's experts admitted that the Genie Aladdin Connect is a commercially available and acceptable noninfringing alternative. Therefore, prong two of the *Panduit* test is not met, barring recovery of lost profits. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991). No reasonable jury could have a legally sufficient evidentiary basis to award lost profits as a result.

# II.     LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

Rule 50 of the Federal Rules of Civil Procedure allows the court to grant judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find

for the party on that issue." Fed. R. Civ. P. 50 (a)(1). The court "must presume that the jury resolved all factual disputes in favor of the prevailing party, and . . . must leave those findings undisturbed as long as they are supported by substantial evidence." *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011). "Substantial evidence requires more than a mere scintilla . . . and [the court] must review the record as a whole, taking into consideration evidence that both justifies and detracts from the jury's decision." *Id.*; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995) ("Conclusory allegations by the party opposing the motion cannot defeat the motion."); *Williams v. Chavez*, 248 F.3d 1162 (7th Cir. 2000) (affirming JMOL when Plaintiff "offered no evidence to support [a] speculative and conclusory assertion); *Brown v. Snow*, 94 F. App'x 369, 372 (7th Cir. 2004) (stating that a "conclusory assertion is not enough to overcome judgment as a matter of law.").

## III. CGI HAS NOT PROVEN INFRINGEMENT BY A PREPONDERANCE OF THE EVIDENCE

CGI has not adduced substantial evidence such that a reasonable jury could find, under the preponderance of the evidence standard, infringement as to asserted claims 1, 5, and 15 of the '275 patent and asserted claims 14, 17, and 18 of the '966 patent, including for both patents the claims from which the dependent asserted claims depend.

### A. The Legal Standard for Alleged Infringement

#### 1. Literal Infringement (Direct and Indirect)

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007), *overruled on other grounds in Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015). Thus, a method or process claim is infringed only when actually performed. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993).

"Inducement can be found where there is '[e]vidence of active steps taken to encourage direct infringement.'" *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015), quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 545 U.S. 913, 936 (2005). Evidence that the accused infringer was reckless or negligent is insufficient. *Global–Tech Appliances, Inc.* v. SEB S.A., 131 S.Ct. 2060, 2070-71 (2011). The "mere knowledge of possible infringement by others" is also insufficient. *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1305 (Fed. Cir. 2006). Liability for induced infringement "can only attach if the defendant knew of the patent and knew as well that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc*., 135 S.Ct. 1920, 1926-28 (2015), quoting *Global–Tech*, 131 S.Ct. at 2068 (internal quotation marks removed).

To prove contributory infringement under 35 U.S.C. § 271(c), the patent owner must show (1) direct infringement, (2) the accused infringer's knowledge of the patent, (3) lack of substantial noninfringing uses, and (4) materiality of the accused component. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Substantial noninfringing uses are not "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009).

### 2.     Infringement Under the Doctrine of Equivalents

A patentee must "provide particularized testimony and linking argument . . . to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis." *Tex. Instruments, Inc. v. Cypress Semiconductor Corp*., 90 F.3d 1558, 1567 (Fed. Cir. 1996).

### B.     CGI Has Not Proven Infringement of the '275 Patent.

### 1.     CGI Has Not Proven Literal Infringement of the '275 Patent.

CGI has not adduced substantial evidence such that a reasonable jury could find, under

the preponderance of the evidence standard, literal infringement as to at least the following claim limitations of the '275 patent:

      **a.**      **"a controller having a plurality of potential operational status conditions defined, at least in part, by a plurality of operating states" (claims 1 and 5 of the '275 patent)**

The Court construed this limitation as "a programmable platform (such as, for example, a microprocessor, a microcontroller, a programmable logic or gate array, or the like), that can obtain, though self-awareness or through externally developed information (e.g., from sensors), two or more potential operational status conditions defined, at least in part, by two or more operational conditions being experienced by the controller." CGI failed to present substantial evidence to support its burden to prove that the alleged "controller" or "programmable platform" can obtain two or more potential operational status conditions that are defined, at least in part, by two or more operational conditions being experienced by the controller.

CGI identifies three alleged potential operational status conditions. Trial Tr. at 341:25-342:12. The only alleged "operating states" that CGI asserts define these conditions are "different states that they can actually take on." *See id.* at 342:13-16. However, only one alleged state can be "being experienced by the controller" at a particular time. *See id.* at 354:23-355:6. Under this theory of infringement, no reasonable juror could find the Accused Products have a controller having two or more potential operational status conditions that are defined, at least in part, by two or more operational conditions being experienced by the controller.

      **b.**      **"a wireless status condition data transmitter that is operably coupled to the controller, wherein the wireless status condition data transmitter transmits a status condition signal that: corresponds to a present operational status condition defined, at least in part, by at least two operating states from the plurality of operating state" ('275 patent, claims 1 and 5)**

The Court construed this limitation, in part, as "a status condition signal that: corresponds

to a present operational status condition defined, at least in part, by at least two from the two or more operational conditions being experienced by the controller."  CGI failed to present substantial evidence to support its burden to prove the Accused Products transmit a signal corresponding to a "present operational status condition," as claimed.  The requirement of "at least two *from the two or more* operational conditions being experienced by the controller" finds antecedent basis in the "operational conditions being experienced by the controller" that defined the alleged "potential operational status condition" of the controller.  Trial Tr. at 348:1-4.  The only alleged "operating states" that CGI asserts define the conditions of the controller are the "different states that they can actually take on."  *See id.* at 342:13-16.  However, Dr. Rhyne admitted that each of the alleged present operational status conditions are only defined by only one of the possible states.  Trial Tr. at 351:22-34 (light status), 354:4-22 (door status), 355:19-356:4 (operation mode).

Dr. Rhyne also admits that the "ignore value" is not one of the states that define the conditions for light status, door position, or operation mode.  Trial Tr. at 358:6-19.  Indeed, Dr. Rhyne testified "ignore val" is not a state or a condition the garage door opener can be experiencing, as required by this Court's construction.  *Id.* at 359:24-360:1, 360:19-361:10.  No reasonable juror could find the Accused Products transmit a signal corresponding to a "present operational status condition," as claimed.

> c. **"a status condition signal that: . . . comprises an identifier that is at least relatively unique to the movable barrier operator, such that the status condition signal substantially uniquely identifies the movable barrier operator" ('275 Patent, claims 1 5, 14, and 15**)

The Court construed this limitation as "a status condition signal that: . . . comprises an identifier that is sufficiently unique to allow identification of the movable barrier operator [operator that controls movement of the movable barrier and may contain additional

5

functionality] that sent the signal." CGI failed to present substantial evidence to support its burden to prove that Accused Products transmit a "status condition signal that: … comprises an identifier that is at least relatively unique to the movable barrier operator," as claimed. To show this element, CGI relies exclusively on the Ryobi GDO's alleged transmission of signals containing a media access control address ("MAC address"). However, as Dr. Madisetti explained, the MAC address is not part of the "status conditional signal" that allegedly corresponds a present operational status condition. Trial Tr. (8/28 Draft) at 87:20-88:13. No reasonable juror could find the Accused Products transmit a "status condition signal that: … comprises an identifier that is at least relatively unique to the movable barrier operator," as claimed.

> **d.** **"detecting at least one predetermined condition as corresponds to a present operational status defined, at least in part, by at least two operating states, of the movable barrier operator" ('275 patent, claims 14 and 15)**

The Court construed this limitation as "detecting at least one predetermined condition as corresponds to a present operational status of the movable barrier operator, which status is defined, at least in part, by at least two operational conditions being experienced by the controller." CGI relies on the same analysis and evidence as provided for claim 1 and has failed to present substantial evidence to support its burden to prove that the Accused Products detect at least one predetermined condition as corresponds to a present operational status of the movable barrier operator. CGI has also failed to present substantial evidence to support its burden to prove that the alleged "present operational status" is "is defined, at least in part, by at least two operational conditions being experienced by the controller." No reasonable juror could find the Accused Products detect a "predetermined condition as corresponds to a present operational status," as claimed.

e.    **"in response to detecting the at least one predetermined condition, automatically wirelessly transmitting a status condition signal that: represents the present operational status defined, at least in part, by the at least two operating states" ('275 patent, claims 14 and 15)**

The Court construed this limitation, in part, as "a status condition signal that: represents the present operational status condition defined, at least in part, by the at least two operational conditions being experienced by the controller [programmable platform]."  CGI relies on the same analysis and evidence as provided for claim 1 and has failed to present substantial evidence to support its burden to prove that the Accused Products transmit a status condition signal "in response to detecting the at least one predetermined condition," as claimed.  CGI has also failed to present substantial evidence to support its burden to prove that the alleged "present operational status condition" are "defined, at least in part, by the at least two operational conditions being experienced by the controller."  No reasonable juror could find the Accused Products transmit a signal corresponding to a "present operational status condition," as claimed.

### 2.    CGI Has Not Proven Infringement of the '275 Patent Under the Doctrine of Equivalents

TTI hereby moves for entry of judgment as a matter of law that CGI is barred from asserting infringement under the doctrine of equivalents as a result of prosecution history estoppel, and that CGI has not adduced substantial evidence that the GD200A infringes clams 1, 5, and 15 under the doctrine of equivalents.

### a.    Prosecution History Estoppel Bars CGI From Asserting Infringement Under the Doctrine of Equivalents

During prosecution, CGI narrowed the claims of the '275 patent to require transmitting a signal corresponding to a present operational status condition that was defined at least in part by at least *two* operating states.  During the same Office Action response, CGI cancelled dependent claims reciting transmitting data that corresponds to at least *one* operating state.  CGI's

amendment was made for purposes of patentability and was narrowing. Accordingly, under the Supreme Court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, there is a presumption that CGI "surrendered all subject matter between the broader and the narrower language." 535 U.S. 722, 734 (2002). CGI cannot overcome this presumption because the alleged equivalent was foreseeable at the time of amendment. Indeed, the alleged equivalent is the same as was recited by the dependent claims that were cancelled. Additionally, CGI's amendment was made to traverse an anticipation rejection over a prior art application to Doyle that disclosed embodiments for transmitting both an "intermediary position" and "absolute position" of the garage door. Therefore, CGI is barred from using the doctrine of equivalents to recapture alleged equivalents that were present in Doyle and other prior art.

> **b.    CGI Has Not Proven Infringement Under the Doctrine of Equivalents**

CGI has not adduced substantial evidence that the GD200A infringes clams 1, 5, and 15 under the doctrine of equivalents. The accused wireless signal transmitted by the GD200A does not perform the claimed function of transmitting a status condition signal that corresponds or represents a present operational status condition defined, at least in part, by two operating states in substantially the same way as claims 1, 5, and 15 of the '275 patent. Rather, the GD200A's WiFi transmitter transmits signals corresponding, at most, to one state. Trial Tr. (8/28 Draft) at 35:4-10, 38:16-25, 73:20-74:16. The GD200A thus performs a different function in a substantially different way than claimed. Indeed, the GD200A performs the transmitting function in the same way as was surrendered when the applicant canceled original claim 4 during prosecution of the application leading to the '275 patent.

For these same reasons, the GD200A does not create substantially the same result, as the claimed function is transmitting a status condition signal that corresponds or represents a present

operational status condition defined, at least in part, by ***at least two*** operating states.

Finding otherwise would also run contrary to the doctrine of claim vitiation, *i.e.*, the rule that the doctrine of equivalents may not be used in a way that renders a claim term meaningless. Here, permitting the claimed "present operational status condition" to cover a signal corresponding, at most, to a single state would vitiate the claim language "at least two." Thus, no reasonable juror could find the GD200A transmits a signal corresponding to a signal corresponding to or represent a "present operational status condition," as claimed.

Additionally, a patentee must "provide particularized testimony and linking argument . . . to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis." *Tex. Instruments*, 90 F.3d at 1567. Here, CGI never linked any accused product with the alleged infringement or provided testimony about the accused products in such a way to link infringement to the product under the doctrine of equivalents on a limitation-by-limitation basis. Trial Tr. at 292:5-294:14. Dr. Rhyne's conclusory statements that "parallel" signals are equivalent to "serial" signals fail to address the actual limitations of the claims. The claims require "***a*** present operational status condition" to be "defined, at least in part, by at least two operating states." Dr. Rhyne's generalized discussion of serial versus parallel signals fails to even identify what the present status condition is, let alone why it is defined, at least in part, by two operating states. Dr. Rhyne's testimony cannot suffice to meet the requisite "particularized testimony and linking argument" requirement from the Federal Circuit. *Tex. Instruments*, 90 F.3d at 1567.

### 3. CGI Has Not Proven Direct Infringement of the '275 Patent

CGI has not adduced substantial evidence such that a reasonable jury could find that TTI directly infringes claims 1, 5, and 15 of the '275 patent. Claims 1 and 5 are apparatus claims. CGI has not adduced substantial evidence such that a reasonable jury could find TTI directly

infringes claims 1 and 5 of the '275 patent by making, using, selling, offering for sale, or importing a product meeting all of the elements of claims 1 and 5 of the '275 patent.

Claims 14 and 15 are method claims that require performance of the claimed steps. These steps can only performed when a user creates an account using the Ryobi app, registers the account for use, and connects the Ryobi app to the Ryobi GDO. Trial Tr. at 368:2-5. Indeed, Dr. Rhyne testified that this method is allegedly infringed when a customer performs the claimed steps. *Id.* at 301:3-11. Dr. Rhyne also confirmed that if no status condition is sent over WiFi using a MAC address, then the '275 patent cannot be infringed. *Id.* at 366:11-367:10. Thus, CGI has not adduced substantial evidence such that a reasonable jury could find TTI directly infringes claims 14 and 15 of the '275 patent.

### 4.    CGI Has Not Proven Indirect Infringement of the '275 Patent

CGI has not adduced substantial evidence that TTI indirectly infringes '275 patents. CGI has not adduced substantial evidence such that a reasonable jury could find that TTI had knowledge of the '275 patent prior to the filing of this lawsuit, or that any other requirements for a finding of induced infringement are met. CGI also has not adduced substantial evidence such that a reasonable jury could find that TTI contributes to the infringement of the '275 patent.

### a.    CGI Has Not Proven Contributory Infringement of the '275 Patent

CGI has not adduced substantial evidence such that a reasonable jury could find that TTI contributes to the infringement of the '275 patent. CGI's infringement expert, Dr. Rhyne, did not offer ***any*** opinions that TTI contributes to infringement for the '275 patent. The Accused Products have substantial noninfringing uses, because they cannot transmit a status condition signal if and until a user downloads the Ryobi app, registers an account for use, and connects the Ryobi app to the Ryobi GDO. Approximately 50 percent of customers do not perform these

actions, demonstrating that the Accused Products have substantial non-infringing uses. Trial Tr. (8/28 Draft) at 40:9-15, 96:10-12. Dr. Rhyne agreed that it is possible to use the Ryobi GDO without the app. Trial Tr. at 368:2-5. He also admitted that the Accused Products cannot infringe if they do not wireless transmit a status condition signal including a unique identifier. *Id.* at 367:67-22. Indeed, Dr. Rhyne admitted that he had not even considered this aspect of the Accused Products during infringement. *Id.* at 366:11-367:5. No reasonable jury could find that the Accused Products do not have substantial noninfringing uses.

### b. CGI Has Not Proven Induced Infringement of the '275 Patent

Additionally, CGI has not adduced substantial evidence such that a reasonable jury could find that TTI intended to induce infringement of the '275 patent.

To prove induced infringement, CGI must show that TTI had the specific intent to encourage another's infringement. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012). Evidence that TTI was reckless or negligent is insufficient. *Global–Tech*, 131 S.Ct. at 2070-71. The "mere knowledge of possible infringement by others" is also insufficient. *DSU Medical*, 471 F.3d at 1305. Liability for induced infringement "can only attach if the defendant knew of the patent and knew as well that the induced acts constitute patent infringement." *Commil USA*, 135 S.Ct. at 1926-28, quoting *Global–Tech*, 131 S.Ct. at 2068 (internal quotation marks removed).

Here, CGI failed to adduce sufficient evidence for the jury to determine that TTI had knowledge of the '275 patent or knew that the induced acts constituted patent infringement. This lack of evidence of knowledge, coupled with the Accused Products' substantial non-infringing uses, demonstrates that no reasonable jury could determine that TTI intended to induce infringement of the '275 patent. *See Commil USA,* 135 S.Ct. at 1926-28. Moreover, TTI conducted a due diligence search and sought assistance from third parties to identify relevant

patents prior to the Accused Products' launch. Trial Tr. 544:1-4, 670:3-5. None of TTI's efforts discovered the '275 Patent. CGI has not adduced substantial evidence such that a reasonable jury could find that TTI had knowledge of the '275 Patent, or that it was willfully blind to the '275 Patent.

Moreover, if TTI did know of the '275 patent before this lawsuit was filed (and TTI did not), the evidence is uncontroverted that TTI held a good faith belief that its products did not infringe any claim of the '275 patent. For example, TTI presented uncontroverted evidence that it performed a careful patent search and clearance prior to launching the accused products. Trial Tr. 544:1-4 ("Q. Does TTI have a policy relating to clearances before product launch? A. There's – no product gets launched without being cleared by legal that is clear." Q. Did TTI do that clearance before it launched the GD200? A. Absolutely. …"); 670:3-5 ("We wanted to be extra careful. We did our homework trying to avoid ending up right here."). Mike Farrah, President of Techtronic Industries Power Equipment, testified:

> Q. Did TTI copy any Chamberlain patents --
>
> A. Absolutely not.
>
> Q. -- to create the GD200?
>
> A. We had legal clearance. We had no -- no patent issues.

Trial Tr. 567:15-18. A good-faith belief of noninfringement is enough to defeat induced infringement. *DSU Medical Corp*., 471 F.3d at 1307.

In addition, as stated above, the Accused Products have significant and substantial non-infringing uses. *See* **Section III.B.4.a.**, *supra*. For at least these reasons, no reasonable jury could determine that TTI intended to induce infringement of the '275 patent.

### C. CGI Has Not Proven Infringement of the '966 Patent

#### 1. CGI Has Not Proven Literal Infringement of the '966 Patent

CGI has not adduced substantial evidence such that a reasonable jury could find, under the preponderance of the evidence standard, literal infringement of the '966 patent. Claims 9 and 14 of the '966 patent require "a battery charging station in electrical communication with a rechargeable battery and in electrical communication with a head unit of a barrier movement operator for supplying power to at least one rechargeable battery." PTX-2, '966 patent, claims 9 and 14. Claims 15-18 of the '966 patent likewise contains three steps that can only be performed when a battery is placed in electrical communication with a battery charging station, and one step that can only be performed when the same battery is placed in electrical communication with other electrically powered equipment. PTX-2, '966 patent, claim 18. The Accused Products are not sold with a rechargeable battery in electrical communication with a battery charging station or other electrically powered equipment, as claimed. Trial Tr. 382:1-4 (Rhyne) ("Q. You would agree that as sold, the Ryobi garage door opener does not have a rechargeable battery in electrical communication with the battery charging station, correct? A. Yes."); Trial Tr. (8/28 Draft) at 99:16-20 (Madisetti) ("Q. What evidence do you have that the Ryobi GD200 and 200A does not have such a battery? A. Simply put, Claim 9 requires a battery. And the battery is not sold with the GDO. It's sold separately. And it's undisputed that it is sold separately.").

Thus, CGI has not adduced substantial evidence such that a reasonable jury could find literal infringement of the '966 patent.

#### 2. CGI Has Not Proven Direct Infringement of the '966 Patent

CGI has not adduced substantial evidence such that a reasonable jury could find that TTI directly infringes claims 14, 17, and 18 of the '966 patent. Each Asserted Claim of the '966 patent requires a rechargeable battery to be in electrical communication with a battery charging

13

station and/or other electrically powered equipment. CGI has not adduced substantial evidence such that a reasonable jury could find TTI directly infringe these limitations.

Claims 17 and 18 are method claims that requires performance of certain steps. Dr. Rhyne testified he is not asserting that TTI performs these method steps and that "it would be someone who has bought one and installed it in their home and owns one of the tools." Trial Tr. at 386:19-387:2. Dr. Rhyne also testified that two of the claimed steps can only be performed when the battery is plugged into the GDO head unit. Trial Tr. at 383:22-385:4. Dr. Rhyne also testified that the final step can only be performed when the battery is plugged into the GDO head unit. *Id.* at 385:4-386:9. Dr. Rhyne confirmed that all four steps are not capable of being performed without out the user removing the battery from the GDO and plugging it into other electrically powered equipment. *Id.* at 386:10:18. Thus, CGI has not adduced substantial evidence such that a reasonable jury could find TTI directly infringes claims 17 and 18 of the '966 patent.

### 3. CGI Has Not Proven Indirect Infringement of the '966 Patent

CGI has not adduced substantial evidence that TTI indirectly infringes the '966 patent, either through contributory or induced infringement.

### a. CGI Has Not Proven Contributory Infringement of the '966 Patent

CGI has not adduced substantial evidence such that a reasonable jury could find that TTI contributes to the infringement of the '966 patent. CGI's infringement expert, Dr. Rhyne, did not offer any opinions that TTI contributes to the infringement for the '966 patent. CGI's infringement theories for the '966 patent rely on three separate products: a GD200 (or GD200A), a ONE+ battery, and a ONE+ compatible cordless power tool. Each of these products is functionally independent of each other and has substantial non-infringing uses.

The ONE+ battery can be used with any Ryobi ONE+ compatible product. Dr. Rhyne admitted that the ONE+ battery was produced and sold years before the GD200 or GD200A. Trial Tr. at 387:17-21. Likewise, the GD200 and GD200A are capable of being used even if the user never uses a ONE+ battery in conjunction with the opener. Indeed, approximately 80 percent of customers do not use a ONE+ battery in conjunction with the opener, demonstrating that each has substantial non-infringing uses. Trial Tr. (8/28 Draft) at 40:25-41:6, 109:6-10. Dr. Rhyne also agreed that the Ryobi battery pack is not specifically designed for use with the garage door opener. *Id.* at 387:13-16. No reasonable jury could find that the Accused Products do not have substantial non-infringing uses.

### b. CGI Has Not Proven Induced Infringement of the '966 Patent

Additionally, CGI has not adduced substantial evidence such that a reasonable jury could find that TTI intended to induce infringement of the '966 patent. TTI set forth the legal standard for induced infringement in **Section III.B.4.b.**, *supra*. Applying that law, CGI failed to adduce sufficient evidence for the jury to determine that TTI knew that the induced acts constituted patent infringement. This lack of evidence of knowledge, coupled with the Accused Products' substantial non-infringing uses, demonstrates that no reasonable jury could determine that TTI intended to induce infringement of the '966 patent. *See Commil USA,* 135 S.Ct. at 1926-28. Moreover, the evidence is uncontroverted that TTI held a good faith belief that its products did not infringe any claim of the '996 patent. For example, TTI presented uncontroverted evidence that it performed a careful patent search and clearance prior to launching the accused products. Trial Tr. 544:1-4 (TTI performed IP clearance before it launched the GD200); 567:15-18 ("We had legal clearance. We had no -- no patent issues."); 670:3-5 (TTI was "extra careful"). A good-faith belief of noninfringement is enough to defeat induced infringement. *DSU Medical Corp.*, 471 F.3d at 1307.

As stated above, the Accused Products significant and substantial non-infringing uses. *See* **Section III.C.3.a.**, *supra*. For at least these reasons, no reasonable jury could determine that TTI intended to induce infringement of the '966 patent.

### 4. CGI Has Not Proven Joint Infringement of the '966 Patent

CGI has not adduced substantial evidence that TTI and its consumers jointly infringe claims 15-18 of the '966 Patent. The '966 patent's independent claim 15 recites a "method of power flow between at least one rechargeable battery, a barrier movement operator, electrically powered equipment other than and physically separate or separable from the barrier movement operator." Dr. Rhyne testified that claim 15 recites three steps that can only be performed when the rechargeable battery is connected to the head unit of the Ryobi GDO (Trial Tr. at 383:22-385:3), and one step that can only performed when the user removes the battery, connects it to "other electrically powered equipment," and activates a switch on the "other electrically powered equipment" (*id.* at 386:4-18). Thus, method claims 15-18 cannot be infringed by a single actor.

No reasonable juror could find that TTI and its customers jointly infringe claims 15-18, because CGI has not adduced substantial evidence such that a reasonable jury could find that (1) TTI has exercised direction or control over its customers that allegedly performed these acts, or (2) TTI and its customers form a joint enterprise. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1021 (Fed. Cir. 2015) (en banc). Indeed, Dr. Rhyne admits that TTI has no control over whether its customers purchase a battery back or place it in their garage door opener. Trial Tr. at 382:9-16. Accordingly, no reasonable juror could find that TTI and its customers jointly infringe claims 15-18 of the '966 Patent.

### D. CGI Has Not Proven Which Defendants Engaged In Any Alleged Acts

CGI has not adduced substantial evidence such that a reasonable jury could find that specific Defendant entities have engaged in any acts at issue in this lawsuit. For example, CGI

failed to prove which Defendants, if any, allegedly import Accused Products into the United States. Trial Tr. (8/28 Draft) at 41:15-42:3. Accordingly, no reasonable juror could find that any specific Defendant entities have engaged in any allegedly infringing activities.

## IV. CGI HAS NOT PROVEN ITS CLAIM OF WILLFUL INFRINGEMENT

CGI failed as a matter of law to prove its claim of willful infringement, so this issue should not go to the jury. Awards of enhanced damages under 35 U.S.C. § 284 "are not to be meted out in a typical infringement case." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Rather, willful infringement serves as a "sanction for egregious infringement" under the standard expressed by the Supreme Court in *Halo*. *Id*. at 1932. Here, CGI has not advanced sufficient facts for a reasonable jury to find that TTI acted in a manner that was "willful, wanton, malicious bad-faith, deliberate, consciously wrongful, flagrant, or— indeed—characteristic of a pirate" with respect to the asserted patents, as required by *Halo*. CGI was required to, but did not, prove that TTI is one "who intentionally infringes another's patents—with no doubts about its validity or any notion of a defense—for no other purpose other than to steal the patentee's business." *Id*. at 1926. In fact, it is undisputed TTI had no knowledge of the '275 patent before the complaint was filed in this case, and there is no sufficient evidence to support CGI's claim of willful infringement as to either asserted patent.

First, it is undisputed TTI had no pre-suit knowledge of the '275 patent, the threshold requirement for willful infringement. *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) ("[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge."); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages" after Supreme Court's Halo decision). The undisputed

evidence at trial demonstrates that TTI was not aware of the '275 patent before it received the complaint in this case.  Trial Tr. at 681:5-7; PTX-308 at 3.

Second, the evidence is uncontroverted that TTI had and continues to have a good faith belief that its products did not and do not infringe any valid claim of the '275 or '996 patent.  For example, TTI presented uncontroverted evidence that it performed a careful patent search and clearance prior to launching the accused products.  Trial Tr. 544:1-4 ("Q.  Does TTI have a policy relating to clearances before product launch?  A.  There's – no product gets launched without being cleared by legal that is clear.  Q.  Did TTI do that clearance before it launched the GD200?  A.  Absolutely. …"); 670:3-5 ("We wanted to be extra careful.  We did our homework trying to avoid ending up right here.").  A good faith belief of noninfringement is enough to defeat a claim of willful infringement.  *Halo*, 136 S. Ct. at 1933 ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct.").

Third, CGI did not and cannot prove copying as to either asserted patent.  CGI's technical expert Dr. Rhyne testified that TTI did not copy Chamberlain's products to create the Ryobi GD200 or GD200A.  Trial Tr. 388:19-389:4  Moreover, the undisputed testimony from every single TTI witness was that TTI did not copy Chamberlain's products or its patents in order to create the Ryobi GD200 or GD200A.  Trial Tr. 567:15-18 (Farrah) ("Q.  Did TTI copy any Chamberlain patents -- A.  Absolutely not.  Q.  -- to create the GD200?  A.  We had legal clearance.  We had no -- no patent issues."); 568:10-11 ("Q. And at the end of the day, did you copy a single thing?  A. Not one thing.  Like I said, not even down to the screws."); 649:2-9 (Huggins) ("Q.  So I want to ask you upfront, in developing the Ryobi garage door opener, did TTI copy any part, component, system, or signal from any Chamberlain garage door opener?  A.  No, not at all.  None of the parts are the same."); 660:8-14; 706:9-12 (Preuss) ("Q. Did you copy

Chamberlain to create the GD200? A. No, I did not. Q. And did you copy Chamberlain to create the GD200A? A. No, I did not."); 39:7-40:1 (8/28 Draft) ("Q. In -- in designing the code that we just looked at for the GD200A, did you ever attempt to learn how Chamberlain sends its signals to a server? A. No, I didn't. … Q. I see. So in designing the code and writing the code for the GD200A, would you have been able to find out how Chamberlain sends its signals to a server? A. It's highly unlikely because their messages are probably all encrypted, and I don't have access to any of their source code.").

Fourth, specifically with respect to the '966 patent, pre-suit knowledge of the patent alone is not enough to show infringement is egregious, deliberate, wanton, or otherwise characteristic of the type of infringement that warrants the court exercising its discretion to impose the punitive sanction of enhanced damages. As demonstrated above, TTI performed a rigorous patent clearance and did not act in a manner supporting a finding of willful infringement. Thus, no reasonable jury could determine that TTI willfully infringed the '966 patent.

## V. CHAMBERLAIN FAILED TO PROVE ITS CLAIM FOR DAMAGES

TTI hereby moves for entry of judgment as a matter of law on damages, because CGI failed to meet its burden of proof on both lost profits and reasonable royalty. As to lost profits, CGI has not adduced substantial evidence such that a reasonable jury could find that there is an absence of acceptable noninfringing substitutes. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). Instead, CGI's experts admitted that acceptable non-infringing substitutes exist. Therefore, no reasonable jury could find that CGI is entitled to lost profits. As to its claim for a reasonable royalty, CGI failed to adduce evidence sufficient for a reasonable jury to appropriately apportion CGI's alleged royalty base or to calculate an appropriate royalty rate for either asserted patent.

19

### A.  CGI Failed To Prove Lost Profits for the '275 Patent

#### 1.  Legal Standard for Lost Profits in Patent Cases

To obtain a lost profits recovery, the patent owner bears the burden of proving but-for causation; in other words, that "but for" the infringement, it would have made the sales for which lost profits are sought. *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1269 (Fed. Cir. 2008); *State Industries, Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990).  Causation is proven using the four factors set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); namely, (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit that would have been made.  *Id*.  Failure to prove any one of these factors bars recovery of lost profits.  *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991).

#### 2.  Chamberlain's Experts Admitted That *Panduit* Factor Two Is Not Met, Which Bars Lost Profits Damages

CGI failed to adduce evidence sufficient for a reasonable jury to award lost profits.  CGI is not entitled to lost profits for the '275 patent because it failed to prove every prong of the *Panduit* test.  For example, *Panduit* prong two requires proof of an absence of acceptable non-infringing substitutes.  *Panduit*, 575 F.2d at 1156.  However, CGI's experts admitted that the Genie Aladdin  Connect technology: (1) was and is available in the marketplace at the relevant time (i.e., before the Ryobi GD200 was released; (2) is non-infringing; and (3) is an acceptable substitute to Chamberlain's allegedly patented technology.  Trial Tr. at 392:18-22 (Dr. Rhyne), 491:5-492:20 (Mr. Hansen).  As to acceptability, Mr. Hansen admitted:

> Q.      It's an acceptable alternative to Home Depot?

| A. | I would agree that it's acceptable to Home Depot.  I wouldn't expect them to sell products that they don't think are acceptable at some level. |
|---|---|

\*        \*        \*

| Q. | And so it is acceptable to Lowes as well? |
|---|---|
| A. | Again, that's one of the products that they've elected to carry and offer available for sale to their customers. |
| Q. | One of the acceptable products that they've elected to offer, right? |
| A. | I would agree that they think it's acceptable for a certain purpose. |

Trial Tr. 492:2-20 (Hansen; emphasis added).

In light of these admissions, no reasonable jury could find an absence of acceptable non-infringing substitutes as required by *Panduit* prong two.  Because failure to meet any one of the *Panduit* factors bars recovery of lost profits, and because CGI failed to prove multiple *Panduit* factors, no substantial evidence exists to support CGI's lost profits claim.  *SmithKline Diagnostics*, 926 F.2d at 1165.

**B.     CGI Failed To Prove Reasonable Royalty Damages for the '275 Patent and the '966 Patent**

CGI also has failed to provide substantial evidence to support its damages claim for the'275 patent and the '966 patent.  CGI has failed to provide substantial evidence to support its damages theories because CGI did not provide evidence sufficient for any reasonable jury to appropriately apportion the royalty base or to calculate an appropriate royalty rate.

**1.     CGI Failed to Apportion Its Proffered Damages Base**

CGI failed to apportion its damages base to exclude the many non-accused technologies in the accused GD200 and GD200A products.  Here, CGI does not allege that the entire market value rule applies, and thus reasonable royalty damages must be apportioned between the

patented and unpatented features. *Garretson v. Clark*, 111 U.S. 120 (1884). The patentee is required in every case to provide evidence tending to separate or apportion between these features, "and such evidence must be reliable and tangible, and not conjectural or speculative… ." *Id.* However, CGI did not provide any evidence supporting an apportionment, and did not attempt to apportion out any value from TTI's base products. Trial Tr. at 438:5-22; 440:18-445:1. Additional features in TTI's accused products include multiple non-accused technologies such as the smartphone app user interface and controlling the GDO from the smartphone. Trial Tr. at 208:20-23; 369:8-20. The '275 patent does not cover receiving a signal at all. Trial Tr. at 369:21-23. Yet CGI did not attempt to parse out any of these non-accused technologies. This violates the Federal Circuit's standard, which states "where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). This Court should not allow the jury to consider CGI's non-apportioned royalty base because of its failure to account for non-infringing technologies included in TTI's products.

### 2. CGI Presented *Ipse Dixit* Expert Testimony Insufficient to Support Its Royalty Rate

CGI's damages expert, Mr. Hansen, testified without evidentiary support that TTI should pay $12 per unit for its alleged use of the '275 patent and $4 per unit for its alleged use of the '966 patent. Trial Tr. at 456:21-457:4 (summary of royalties claimed). Mr. Hansen did not testify regarding any actual basis for that rate other than to explain that Chamberlain made approximately $11.40 to $15.90 more profits on Wi-Fi enabled GDOs (Trial Tr. at 463:18-464:4) and he would expect TTI to make $3.84 to $7.69 more profits "for every GDO," despite

"information in this litigation that indicates that 22 percent of customers currently have a battery attached to their garage door opener" (Trial Tr. at 468:13-469:4). Nor did CGI introduce any documentary evidence to support Mr. Hansen's extraordinary per-unit royalty rate. Mr. Hansen's *ipse dixit* testimony is not sufficient evidence that would allow a reasonable jury to determine a reasonable royalty rate. Trial Tr. at 456:21-457:21. *See Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("Evidence purporting to apply to [the Georgia-Pacific factors], must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time."). The Court should not allow the jury to consider CGI's unsupported royalty rate.

### C. CGI Did Not Prove Pre-Suit Damages for the '275 Patent

The undisputed evidence at trial demonstrates that TTI was not aware of the '275 patent before it received the complaint in this case. Trial Tr. at 681:5-7; PTX-308 at 3. Therefore, CGI is not entitled to damages prior to when TTI was on notice of the '275 patent.

Moreover, pre-suit damages are barred where the patent owner fails to properly mark products that practice the patent. 35 U.S.C. § 287. "A party that does not mark a patented article is not entitled to damages for infringement prior to actual notice." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009). The patent owner must prove by a preponderance of the evidence that "substantially all of [the patented products] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). If the patent owner fails to meet this burden, damages can only be recovered for the period after actual notice of the infringement was provided. *K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 52 Fed. Appx. 135, 141 (Fed. Cir. 2002).

Here, CGI has alleged that its products practice the '275 patent. *See, e.g.,* Trial Tr. 98:7-9. However, CGI has not proven that substantially all of its patented products were marked, or that once marking began, that marking was substantially consistent and continuous. Moreover, CGI is barred from relying on alleged evidence that it marked its products with the '275 patent, as it provided no notice of this theory in the pre-trial order (*see* Docket #494) or otherwise during the pendency of this lawsuit. Therefore, no reasonable jury could award damages for the '275 patent prior to when this lawsuit was filed.

### D. CGI Did Not Prove Damages for Any Method Claims

In its case in chief, CGI asserted claims 1, 5 and 15 of the '275 patent and claims 14, 17 and 18 of the '966 patent. Claim 15 of the '275 patent and claims 17 and 18 of the '966 patent are method claims. Damages for method claims must be calculated based on the number of times the method was improperly used and the revenue earned due to the use of that method. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009). Here, CGI offered insufficient evidence about whether or how many times TTI's United States customers performed the allegedly infringing methods. CGI's expert Dr. Rhyne admitted that consumers do not have to use the mobile app with the accused products. Trial Tr. at 367:23-5 ("Q. So you don't have to use the mobile app with the Ryobi, correct? A. You don't."). While CGI introduced evidence of the number of garage door openers sold (Trial Tr. at 438:15-22), evidence shows only approximately 50 percent of users have ever used the Ryobi app (Trial Tr. (8/28 Draft) at 40:9-15, 96:10-12). Only approximately 20 percent of customers have used a ONE+ battery in conjunction with the opener. Trial Tr. (8/28 Draft) at 40:25-41:6, 109:6-10. Moreover, CGI introduced no evidence at all of the number of times the accused methods as set forth in the claims were actually used by users. Accordingly, CGI has failed to provide

substantial evidence to support its damages claim for the asserted '275 and '966 patent method claims.

## VI.  VENUE IN THIS DISTRICT IS IMPROPER

CGI has failed to present any evidence that venue is proper in this district.  The patent venue statute, 28 U.S.C. § 1400(b), provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  In *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957), the Supreme Court concluded that for purposes of Section 1400(b) a domestic corporation "resides" only in its state of incorporation. However, in 1988 Congress amended the general venue statute, 28 U.S.C. § 1391(c), to provide that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Judicial Improvements and Access to Justice Act, § 1013(a), 102 Stat. 4669 (emphasis added). The Federal Circuit in *VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574 (Fed. Cir. 1990), held that this 1988 amendment superseded the patent venue statute, so patentees were free to file patent infringement actions anywhere an alleged infringer meets the personal jurisdiction requirements of that state.  The *VE Holding* decision remained the applicable and well-settled law for 27 years.

On May 22, 2017, the Supreme Court issued its decision in *TC Heartland*, 137 S. Ct. 1514 (2017), explicitly overruling *VE Holding* and holding that the amendments to § 1391(c) did not modify the meaning of § 1400(b) as interpreted by *Fourco*.

In view of *VE Holding*, which was binding precedent, TTI did not contest venue when answering the Complaint because it sells the accused products in this District.  *See* Dkt. No. 50 at 7-8, Defendants' Answer to Complaint, filed July 5, 2016; Dkt. No. 365 at 7-8, Defendants'

Amended Answer to Complaint, filed May 18, 2017. Defendants denied that this District was the most convenient venue and reserved their right to seek to transfer pursuant to 28 U.S.C. § 1404. *Id*.

As a result of *TC Heartland*, a domestic corporation "resides" only in its state of incorporation for purposes of the patent venue statute, so the Northern District of Illinois is not an appropriate venue for this action under the first clause of Section 1400(b) ("[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides"). Venue also is not appropriate under the second clause of Section 1400(b) ("or where the defendant has committed acts of infringement and has a regular and established place of business"), because none of the Defendants have a regular and established place of business here. *See* Dkt. No. 50 at 5-7.

Therefore, venue is no longer proper in this District because: (1) none of the Defendants resides in this District under the first clause of Section 1400(b) in view of *TC Heartland*, and (2) none of the Defendants has a regular and established place of business in this District under the second clause of Section 1400(b).

## VII.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER TECHTRONIC INDUSTRIES CO., LTD.

Defendant Techtronic Industries Co. Ltd. hereby moves for entry of judgment as a matter of law that it is not subject to personal jurisdiction in this District. Personal jurisdiction may be "general" or "specific." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *see Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009). "The nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope—that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made in the case." *N. Grain Mktg. LLC v. Greving*, 743 F.3d 487, 492 (7th Cir.

2014), quoting *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

CGI filed this action against Defendants in the Northern District of Illinois on June 10, 2016. Dkt. No. 1. Defendants have no facilities, offices, or employees in this District. Dkt. No. 50 at 5-6. None of the Defendants are incorporated or headquartered in this District. Dkt. No. 50 at 5-6. Defendants do not manufacture any accused products in this District. *Id.* Defendants also have no employees in Illinois. *Id*. Defendants One World Technologies, Inc. d/b/a Techtronic Industries Power Equipment ("TTIPE") and OWT Industries Inc. are incorporated in Delaware and are headquartered in South Carolina. *Id.* Because CGI did not adduce any contrary evidence at trial, the Court should grant judgment as a matter of law that Techtronic Industries Co. Ltd. is not subject to personal jurisdiction in this District.

## VIII. CGI HAS NOT PROVEN IT IS ENTITLED TO OTHER RELIEF

As a result of its failures of proof as set forth elsewhere in this motion, CGI has not proven and cannot prove that it is entitled to a permanent injunction; interest, costs, treble damages, or other damages permitted by 35 U.S.C. § 284; attorneys' fees; or any other equitable or legal relief.

## IX. CONCLUSION

Under Federal Rule of Civil Procedure 50(a), TTI respectfully requests entry of judgment as a matter of law of no literal infringement, no infringement under the doctrine of equivalents, no indirect infringement (induced or contributory), no willful infringement, improper venue, no personal jurisdiction over Techtronic Industries Co. Ltd., and no damages under CGI's damages theories. Alternatively, in light of CGI's unsupported damages model, TTI requests that the Court grant judgment as a matter of law rejecting CGI's damages case and instructing the jury that it may not award damages in excess of the amounts proposed by TTI's expert.

Dated:  August 28, 2017

Respectfully submitted,

By: /s/ *Jason C. White*
    Jason C. White
    Michael J. Abernathy
    Sanjay K. Murthy
    Nicholas A. Restauri
    Jesse T. Dyer
    Caroline S. Lourgos
    Morgan, Lewis & Bockius LLP
    77 W. Wacker Drive, Ste. 500
    Chicago, IL  60601
    Tel:  (312) 324-1000
    Fax:  (312) 324-1001
    E-mail: jason.white@morganlewis.com
        michael.abernathy@morganlewis.com
        sanjay.murthy@morganlewis.com
        nicholas.restauri@morganlewis.com
        jesse.dyer@morganlewis.com
        caroline.lourgos@morganlewis.com

    Margaret A. McGreal
    Morgan, Lewis & Bockius LLP
    1701 Market Street
    Philadelphia, PA 19103-2921
    Tel:  (215) 963-5000
    Fax:  (215) 963-5001
    E-mail: margaret.mcgreal@morganlewis.com

    Sean C. Cunningham (*pro hac vice*)
    Erin Gibson (*pro hac vice*)
    Stanley Panikowski (*pro hac vice*)
    DLA PIPER LLP (US)
    401 B Street, Suite 1700
    San Diego, CA 92101
    Tel:  (619) 699-2700
    E-mail: Sean.Cunningham@dlapiper.com
        Erin.Gibson@dlapiper.com
        Stanley.Panikowski@dlapiper.com

    *Attorneys for Defendants Techtronic Industries North America, Inc., One World Technologies Inc., OWT Industries, Inc., and Ryobi Technologies, Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served via CM/ECF on August 28, 2017 upon all counsel of record.

/s/ *Jason C. White*
Jason C. White