IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC.,<br><br>    Plaintiff,<br>v.<br><br>TECHTRONIC INDUSTRIES CO. LTD.,<br>TECHTRONIC INDUSTRIES NORTH AMERICA,<br>INC., ONE WORLD TECHNOLOGIES INC.,<br>OWT INDUSTRIES, INC., ET TECHNOLOGY<br>(WUXI) CO. LTD., AND RYOBI<br>TECHNOLOGIES, INC.<br><br>    Defendants. | Civil Action No.: 1:16-cv-06097<br><br>Judge Harry D. Leinenweber<br><br>**Jury Trial Demanded**<br><br>**PUBLIC, REDACTED** |

## PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff, The Chamberlain Group, Inc., moves for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50. JMOL is appropriate where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Here, when the evidence is viewed in the light most favorable to OWT Industries, Inc.; One World Technologies, Inc.; Ryobi Technologies, Inc.; Techtronic Industries Co., Ltd.; and Techtronic Industries North America, Inc. (collectively, "TTI"), and TTI is given the benefit of all reasonable inferences, there is insufficient evidence of record to support a jury verdict in favor of TTI on the issue of infringement.

### I. Direct Infringement

A reasonable jury would not have a legally sufficient evidentiary basis to find that TTI did not infringe claims 1, 5, and 15 of the '275 patent and claims 14, 17, and 18 of the '966 patent.

1

A.   The '275 Patent

There is no dispute that TTI offered, sold, used, and imported into the United States the Ryobi GD200, and that TTI offers, sells, uses, and imports the Ryobi GD200A. Tr. at 266:7-17, 387:17-21 (Rhyne); Tr. at 519:14-24, 545:22-546:5, 570:1-3 (Farrah); Tr. at 611:25-612:2, 644:7-645:25 (Huggins); Tr. at 438:18-22, 450:16-24, 493:20-494:19 (Hansen); Tr. at 183:17-21, 190:25-191:2 (Sorice); Ely Dep. Tr. at 46:9-14; 86:14-87:16 (played via video); Tr. at 1058:15-20, 1059:1-6, 1060:1-8 (McNabb); *see also* Tr. (8/21/17) at 8:6 ("The defendants may collectively be referred to as TTI.").

The Ryobi GD200 and Ryobi GD200A meet all of the limitations of claim 1, 5, and 15, as illustrated below. The parties' dispute centers on a single issue—whether the GD200A, which transmits status information as defined by TTI specifications (PTX-239), "transmits a status condition signal that corresponds to a present operational status condition defined, at least in part, by at least two operating states from the plurality of operating states"—a purely legal issue of claim construction that is not to be left to the jury under *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

**Element-by-element analysis of Claim 1:**

| | |
|---|---|
| **Preamble**: A movable barrier operator comprising | • Images from Ryobi GDO Manual showing door in closed and open positions. PTX-625 at 93; Tr. 267:24-268:8 (Rhyne). |
| **Element 1**: a controller having a plurality of potential operational status conditions defined, at least in part, by a plurality of operating states; | • TTI's disclosures to the FCC showed a microcontroller. PTX-218; *see also* Tr. 271:9-272:1 (Rhyne).<br>• TTI's GDO design specification shows 2+ operational status conditions—door state and light state—defined by 2+ operating states. PTX-239; *see also* Tr. 275:4-276:19; 277:7-17 (Rhyne). |
| **Element 2**: movable barrier interface that is operably coupled to the controller | • Ryobi GDO Manual shows a movable barrier interface ("MBI"). PTX-625 at 9; *see also* Tr. 277:18-278:7 (Rhyne). |

2

| | • TTI's disclosures to the FCC show the MBI coupled to the controller. PTX-218; Tr. 278:8-16 (Rhyne). |
|---|---|
| **Element 3**: a wireless status condition data transmitter that is operably coupled to the controller, wherein the wireless status condition data transmitter transmits a status condition signal that: | • Ryobi GDO Manual shows that the GD200 and GD200A has a WiFi antenna. PTX-625 at 10.<br>• TTI's disclosures to the FCC showed that the Ryobi GDO has a controller labeled "WiFi Mode." PTX-218.<br>• GDO design specification showed WiFi Board/Module. PTX-239 at 7.<br>• *See also* Tr. 278:17-281:10, 283:12-284:285:14 (Rhyne). |
| **Element 4**: corresponds to a present operational status condition defined, at least in part, by at least two operating states from the plurality of operating states; | • Claims require sending signal corresponding to "a" present operational status condition, which is defined by at least two states – and therefore only requires sending a single status condition at a time. PTX-0239 at 38; Tr. 287:24-289:16 (Rhyne). |
| **Element 5**: comprises an identifier that is at least relatively unique to the movable barrier operator, such that the status condition signal substantially uniquely identifies the movable barrier operator. | • Dr. Rhyne showed using wireshark that the Ryobi GDO transmits a unique identifier, specifically, MAC addresses. PTX-626; 295:7-296:3 (Rhyne). |

**Element-by-element analysis of Claim 5:**

| **Claim 5**: The movable barrier operator of claim 1 wherein the plurality of operating states includes at least one of:<br>• moving a movable barrier in a first direction;<br>• moving the movable barrier in a second direction;<br>• a lighting status change;<br>• a vacation mode status change; | TTI's GD200 and GD200 specification includes a light state, door state, and operation mode. PTX-0239 at 38; 296:17-297:4. |
|---|---|

**Element-by-element analysis of Claim 15 (which depends on claim 14):**

| **Claim 14**: A method comprising:<br>at a movable barrier operator: | Same reasons as claim 1 |
|---|---|
| **Element 1:** detecting at least one predetermined condition as corresponds to a present operational status defined, at least in part, by at least two operating states, of the movable barrier operator | Same reasons as claim 1 |

3

| **Element 2:** in response to detecting the at least one predetermined condition, automatically wirelessly transmitting a status condition signal that: | TTI software showed that when you have a new state, you call a "███████████" subroutine. Tr. at 299:20-300:9 (Rhyne). |
|---|---|
| **Element 3**: represents the present operational status defined, at least in part, by the at least two operating states; and | Same reasons as claim 1 |
| **Element 4**: comprises an identifier that is at least relatively unique to the movable barrier operator, such that the status condition signal substantially uniquely identifies the movable barrier operator. | Same reasons as claim 1 |

| **Claim 15**: The method of claim 14 wherein detecting at least one predetermined condition includes detecting at least one of:<br>• moving a movable barrier in a first direction;<br>• moving the movable barrier in a second direction;<br>• a lighting status change;<br>• a vacation mode status change; | Same reasons as claim 5 |
|---|---|

### B. The '966 Patent

There is no dispute that TTI offers, sells, uses, and imports into the United States the Ryobi garage door openers alone and in conjunction with the Ryobi ONE+ battery (the "Ryobi system"). *See supra* at 2; *see also* Tr. at 387:17-21 (Rhyne); 453:5-13, 468:24-469:1 (Hansen).

The Ryobi system meets all of the limitations of claims 14, 17, and 18, as illustrated below. Again, the parties' main dispute centers on a legal issue—namely, whether direct infringement requires that all components be sold in a single box. Indeed, this Court has noted that "TTI sells the battery alongside the system, and this coupled with the design of a rechargeable station integrate into the Ryobi GDO could constitute potential direct infringement." ECF No. 104 at 12. A jury may find direct infringement where a party sells components separately, but those components are designed to be used together as a complete and

4

operable system.  *See, e.g.*, *St. Clair Intellectual Prop. Consultants, Inc. v. Toshiba Corp.*, No. 09-354-LPS, 2014 WL 4253259, *3 (D. Del. Aug. 27, 2014) ("direct infringement may be found where one sells or offers to sell all of the components of a claimed system, even if the components are sold separately and are required to be assembled by the customer"); *Immersion Corp. v. Sony Comput. Entm't Am., Inc.*, 4:02-CV-00710-CW, Dkt. No. 1481, at 11 (N.D. Cal. Jan. 10, 2005) ("the jury could reasonably have found that [Defendant] sells a complete and operable system or apparatus rather than mere constituent parts, despite the fact that most of the consoles, controllers and games are sold separately") (slip op.); *EBS Auto. Servs. v. Ill. Tool Works, Inc.*, No. 09-CV-996 JLS MDD, 2011 WL 4021323, at *9 (S.D. Cal. Sept. 12, 2011) ("a reasonable jury could conclude that [Defendant] sells a complete and operable apparatus, as opposed to mere components, even if the BrakeTech and the fresh and waste fluid containers are sold separately").

**Element-by-element analysis of Claim 14 (which depends on claim 9):**

| **Claim 9**: A battery charging apparatus, comprising: | The Ryobi GD200 and GD200A has a flip out door with a socket that the ONE+ battery can plug into.  PTX-625 at 36; Tr. 319:2-8 (Rhyne). |
|---|---|
| **Element 1:** battery charging station in electrical communication with a rechargeable battery and in electrical communication with a head unit of a barrier movement operator for supplying power to at least one rechargeable battery | Ryobi GD200 and GD200A has a station, where you can put the ONE+ battery in and charge it.  Tr. 319:23-320:11 (Rhyne). |
| **Element 2:** at least one rechargeable battery being removably connectable to electrically powered equipment other than and physically separate or separable from the barrier movement operator to provide power to the electrically powered equipment; | • Ryobi GD200 and GD200A has snap-in latches, so the ONE+ battery can be snapped in and removed.  Tr. 320:13-24 (Rhyne).<br><br>• The ONE+ battery is designed to, and can, also be used in other Ryobi tools.  Tr. 321:1-14 (Rhyne). |
| **Element 3**: circuitry electrically connected to the battery charging station to supply power | When the ONE+ battery is plugged in, it powers the GDO if the power is out.  Tr. |

| from the at least one rechargeable battery to the head unit | 321:15-322:3 (Rhyne). |

| **Claim 14:** The battery charging apparatus of claim 9, wherein the electrically powered equipment comprises a tool. | The ONE+ battery can plug into the Ryobi high-powered drill, which is a tool. Tr. 322:20-323:2 (Rhyne). |

**Element-by-element analysis of Claim 17 (which depends on claim 15 and 16):**

| **Claim 15:** A method of power flow between at least one rechargeable battery, a barrier movement operator, electrically powered equipment other than and physically separate or separable from the barrier movement operator, the method comprising: | See claim 9; Tr. 324:23-25 (Rhyne). |
|---|---|
| **Element 1:** detecting whether the at least one rechargeable battery is in electrical communication with a battery charging station; | Ryobi smartphone app displays whether ONE+ battery is plugged in, fully charged, or partially charged. PTX-0087; Tr. 325:1-16 (Rhyne). |
| **Element 2**: providing power from a power source to the at least one rechargeable battery via the battery charging station; | Ryobi smartphone app demonstrates that the ONE+ battery goes from partially charged to fully charged. PTX-0087; Tr. 325:17-25 (Rhyne). |
| **Element 3:** providing stored power from the at least one rechargeable battery to the head unit via the battery charging station to perform movable barrier functions; and | Dr. Rhyne unplugged the head unit and the ONE+ battery could provide power to the head unit. Tr. 326:1-8 (Rhyne). |
| **Element 4**: providing power from the at least one rechargeable battery to the electrically powered equipment in response to the at least one rechargeable battery being electrically connected to the electrically powered equipment. | Dr. Rhyne used the ONE+ battery with drills, saws, and flashlights. Tr. 326:9-14 (Rhyne). |

| **Claim 16:** The method of claim 15, further comprising notifying a user in response to at least one of:<br>    the at least one rechargeable battery being removed from the battery charging station, and<br>    the stored power of the at least one rechargeable battery being below the threshold amount. | The Ryobi GDO WiFi board will send a particular message (value of -1) if there is no ONE+ battery. PTX-87; Tr. 326:17-327:5 (Rhyne). |

| **Claim 17**: The method of claim 16, wherein | The notification that the ONE+ battery has |

| | |
|---|---|
| notifying comprises generating at least one of an audible indication and a visual indication. | been removed is visual. PTX-87; Tr. 327:9-15 (Rhyne). |

**Element-by-Element Analysis of Claim 18 (which depends on claim 15):**

| | |
|---|---|
| **Claim 18**: The method of claim 15, wherein the electrically powered equipment comprises a tool. | • *See supra*, at 6 (analysis of claim 15).<br>• The ONE+ battery can plug into the Ryobi high-powered drill, which is a tool. Tr. 327:23-328:1 (Rhyne). |

## II. Indirect Infringement

### A. The '966 Patent

There is not sufficient evidence of record to support a jury verdict that the TTI Defendants did not indirectly infringe the claims of the '966 patent by inducing others to use and/or sell the Ryobi system in the United States. "To prove inducement of infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) (citations and alterations omitted). TTI admits that its knowledge of the '966 patent dates back to 2010—well before it began work on the infringing Ryobi GDO system. PTX-308 at 15-16. Further, TTI explains how to charge the battery pack in its packaging, advertisements, and marketing, demonstrating that it intends customers to infringe the patents. PTX-625 at 36; Tr. 328:12-329:13 (Rhyne). Lastly, ▮% of TTI's customers use the ONE+ battery pack, showing direct infringement. DX-255 at 15; Tr. 468:24-469:1 (Hansen); Tr. at 1057:8-17 (McNabb).

Dated: August 28, 2017    By:    */s/ Katherine Vidal*

George C. Lombardi
glombard@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Telephone:  (312) 558-5600
Facsimile:   (312) 558-5700

Katherine Vidal
KVidal@winston.com
Michael Rueckheim
MRueckheim@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Aldo A. Badini (*pro hac vice*)
abadini@winston.com
Shanna A. Lehrman (*pro hac vice*)
slehrman@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 294-4601
Facsimile:  (212) 294-4700

Benjamin Elacqua (*pro hac vice*)
elacqua@fr.com
FISH & RICHARDSON PC
1221 McKinney Street, Suite 2800
Houston, Texas 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Maria Elena Stiteler (*pro hac vice*)
stiteler@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

Facsimile: (612) 288-9696

Nicole L. Little (IL 6297047)
nlittle@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

ATTORNEYS FOR PLAINTIFF
THE CHAMBERLAIN GROUP, INC.

# **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was served on opposing counsel via CM/ECF on August 28, 2017.

                                              */s/ Katherine Vidal*
                                              Katherine Vidal
                                              ATTORNEY FOR PLAINTIFF
                                              THE CHAMBERLAIN GROUP, INC.