IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., | ) |
| | ) Civil Action No.: 1:16-cv-06097 |
| Plaintiff, | ) |
| v. | ) Judge Harry D. Leinenweber |
| | ) |
| TECHTRONIC INDUSTRIES CO. LTD., | ) |
| TECHTRONIC INDUSTRIES NORTH AMERICA, | ) **Jury Trial Demanded** |
| INC., ONE WORLD TECHNOLOGIES INC., | ) |
| OWT INDUSTRIES, INC., ET TECHNOLOGY | ) **PUBLIC, REDACTED** |
| (WUXI) CO. LTD., AND RYOBI | ) |
| TECHNOLOGIES, INC. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW
AS TO VALIDITY AND RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW AS TO INFRINGEMENT**

Plaintiff, The Chamberlain Group, Inc., moves for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50 and renews its prior motion for JMOL (ECF Nos. 577, 578). JMOL is appropriate where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Here, when the evidence is viewed in the light most favorable to OWT Industries, Inc.; One World Technologies, Inc.; Ryobi Technologies, Inc.; Techtronic Industries Co., Ltd.; and Techtronic Industries North America, Inc. (collectively, "TTI"), and TTI is given the benefit of all reasonable inferences, there is not sufficient evidence of record to support a jury verdict in favor of TTI on the issue of invalidity.

**I.     Legal Standard**

The claims of an issued patent, like the '275 patent and the '966 patent, are presumed to be valid. 35 U.S.C.A. § 282 (2012); *Microsoft Corp. v. i4i Ltd P'ship*, 131 S. Ct. 2238, 2243

1

(2011). This presumption can only be overcome if Defendants demonstrate that the claims of the patent are invalid by clear and convincing evidence of facts to the contrary. *See, e.g.*, *ProBatter Sports, LLC v. Sports Tutor, Inc.*, 680 F. App'x 972, 974 (Fed. Cir. 2017); *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002).

Anticipation requires disclosure "within the four corners of the documents not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008). A theory of an "inherent" disclosure "may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1350 (Fed. Cir. 2016) (citation omitted). Instead, inherency is "appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (emphasis in original) (citation omitted).

A patent is valid unless the differences between the claimed invention and the prior art are "such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). The Supreme Court in *Graham v. John Deere Co.* provided a four-pronged test for obviousness: (1) the scope and content of the prior art; (2) differences between the prior art and the claims; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations. 383 U.S. 1, 17 (1966). The finder of fact must "consider all evidence relating to obviousness before finding a patent invalid on those grounds." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075 (Fed. Cir. 2012)

(reversing where the district court improperly placed the burden on the patentee with respect to secondary considerations).

## II. The '275 Patent

A reasonable jury would not have a legally sufficient evidentiary basis to find that the asserted claims of the '275 patent were invalid.

### A. Anticipation

No reasonable jury could find that claims 1, 5, or 15 of the '275 patent are anticipated by the Menard PCT reference. The '275 patent claims a movable barrier operator and methods for use at a movable barrier operator with the controller and wireless transmitter on-board, not part of a separate module. PTX-1 at 1:49-2:3. By contrast, Menard PCT discloses a modular system that does not include a controller and wireless transmitter as part of the movable barrier operator. DX-35 at 1 ("A module with a sensor to indicate the position of a door coupled to a door opener."), 2, 3, 34, 41, 47, Figs. 30, 31; *see also* Trial Tr. at 760:6-10, 16-20, 761:20-762:2 (Menard); Trial Tr. at 970:9-13, 1029:7-17 (Foley); Trial Tr. at 1309:9-18; 1338:8-12 (Rhyne). In this way, the Menard PCT application is similar to the Genie Aladdin Connect modular system which all parties agree is non-infringing. Trial Tr. at 1310:22-1311:24 (Rhyne); Trial Tr. at 1264:2-11 (Madisetti).

Further, the '275 patent recites that the claimed status conditions must be defined, at least in part, by two or more operating states. PTX-1 at claim 1, 14. The '275 patent provides examples of how such a definition may be accomplished. PTX-1 at 6:46-53; Fig. 4. By contrast, Menard PCT does not clearly disclose any condition defined by a plurality of states. *See, e.g.*, DX-35 at 34, 39; Trial Tr. at 986:6-10 (Foley); Trial Tr. at 1307:10-1308:9 (Rhyne).

3

Additionally, the Patent Office has already considered and rejected TTI's invalidity theory relating to a substantially similar Menard US patent application. Trial Tr. at 964:25-965:3, 1029:2-6 (Foley); Trial Tr. at 1287:18-1288:1, 1309:1- 8 1309:1- 8 (Rhyne); PTX-499.

**B.     Obviousness**

No reasonable jury could find that claims 1, 5, or 15 of the '275 patent are rendered obvious by the Menard PCT reference in combination with Cohen.

Initially, TTI has failed to adduce any evidence supporting that one of ordinary skill in the art would combine the Cohen and Menard PCT references. Indeed, TTI's own expert admitted that he did not believe one would need to combine the references, and that his only reason for doing so was to obtain four specific states, a motivation derived entirely from improper hindsight. Trial Tr. at 877:11-17 (Foley). Thus, one of ordinary skill in the art would not make such a combination.

The combination likewise fails to disclose the '275 patent inventions. Cohen is very similar to Menard in that it recites a separate module 110 which is entirely separate from the conventional garage door opener 130. DX-181 at 8; Trial Tr. at 1310:4-21 (Rhyne). In this way, both Menard and Cohen are like the Genie Aladdin Connect system, which all parties agree is non-infringing. Trial Tr. at 1310:22-1311:24 (Rhyne); Trial Tr. at 1150:5-13, 1152:19-24 (Madisetti). The combination of Cohen and Menard therefore fails to disclose the claimed movable barrier operator and method of the '275 patent.

Furthermore, Cohen – like Menard – fails to disclose the claimed operational status condition defined by a plurality of operating states. DX-181 at 8; Trial Tr. at 1311:25-1312:9 (Rhyne). Thus, the combination of Cohen and Menard fails to disclose the claimed operational status conditions of the '275 patent.

4

Moreover, as discussed above, the Patent Office recently rejected TTI's IPR petition filed on a substantially similar Menard PCT application. TTI has failed to adduce sufficient evidence for a reasonable jury to conclude that the addition of Cohen would remedy any of the deficiencies of Menard identified by the Patent Office.

Finally, secondary considerations exist that support finding that the '275 patent is non-obvious. First, the invention has been praised by others. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ This praise strongly supports a finding that the '275 patent inventions were not obvious. Trial Tr. at 1312:22-1313:15 (Rhyne). Additionally, CGI's MyQ system, which uses the '275 invention, has been commercially successful. Trial Tr. at 170:10-173:21 (Sorice); Trial Tr. at 497:14-498:22 (Hansen); Trial Tr. at 1313:23-1314:5 (Rhyne). TTI likewise believes that transmitting status updates has driven sales of the Ryobi GDO. Trial Tr. at 1314:6-1315:5 (Rhyne). This success supports that the '275 patent inventions were not obvious.

## III. The '966 Patent

A reasonable jury would not have a legally sufficient evidentiary basis to find that the asserted claims of the '966 patent were invalid.

### A. Anticipation

#### 1. Craftsman 139.53919 GDO/Manual

The Craftsman 139.53919 GDO/Manual ("Craftsman") does not anticipate for several reasons. First, the '966 patent limits the electrically powered equipment to something other than a garage door opener—namely, "**equipment other than** and physically separate or separable from **the barrier movement operator**." (Cls. 9, 15 (emphasis added)). The '966 patent emphasizes that the garage door opener is different from other electrically powered equipment.

5

*See* PTX-2 ('966 patent) at 7:16-20 ("By providing a rechargeable battery backup that can be used with **both a barrier movement operator and an electrically powered equipment**, instead of having to have separate batteries for both of these, a user can minimize the number of batteries needed to keep on hand." (emphasis added)).

Additionally, the Craftsman battery is not removably connectable, which this Court defined as "configured to allow a user to insert, plug-in or otherwise manually attach and detach." ECF No. 339 at 71; *see also* DX-134 at Figs. 1, 2 (illustrating that battery is attached to structural supports using 1-1/2" lag screws). The inventor Mr. Butler's testimony confirmed this. Exhibit A, Butler Dep. Tr. at 81:13-82:3 ("Replaceable battery needs to be done by a qualified service person. Removable battery can be done by the consumer.").

Further, a garage door opener is not a tool as required by claims 14 and 18. Trial Tr. at 1320:7-23 (Rhyne).

### 2. Crusius (U.S. Patent No. 7,786,619)

Crusius does not disclose a removable battery or "electrically powered equipment other than and physically separate or separable from the barrier movement operator." PTX-2 ('966 patent) at 7:48:50; DX-23 at TTI00012178 ("The battery is in circuit at all times with the barrier movement operator power supply.") Crusius is similar to the Craftsman GDO system, and thus fails to invalidate the claims for the reasons identified above. Trial Tr. at 1324:7-19 (Rhyne).

Further, a garage door opener is not a tool as required by claims 14 and 18. Trial Tr. at 1320:7-23 (Rhyne).

### 3. Weik (U.S. Patent No. 6,484,784)

Weik describes a fire door operator having two embodiments: one with a fixed, internal, non-removable battery that can be recharged by the system; and a second embodiment with a portable battery which is not rechargeable by the system. DX-93 at Fig. 7, Fig. 9, 11:1-25; Trial

6

Tr. at 830:1-831:7 (Weik); Trial Tr. at 1321:23-1323:12 (Rhyne). Weik never teaches that the embodiments may be combined and in fact teaches not to combine the inventions because it would be time consuming and expensive. DX-93 at Fig. 1, 2:1-10; Trial Tr. at 1323:13-1324:6 (Rhyne). Thus, Weik does not disclose the claimed 966 patent inventions.

B. Obviousness

1. Crusius (U.S. Patent No. 7,786,619)

Crusius fails to disclose any of the claims of the '966 patent for the reasons described above regarding TTI's anticipation theory, all of which are incorporated herein. Furthermore, TTI has failed to adduce sufficient evidence from which a jury could conclude that one of ordinary skill in the art would make any modification to Crusius. Indeed, TTI's expert did not offer any justification at all for this obviousness theory and failed to identify any proposed alteration to Crusius for this obviousness theory. Trial Tr. at 951:22-952:1 (Foley).

Additionally, secondary considerations exist that support finding that the '966 patent inventions are not obvious. Specifically, TTI itself produced an invention disclosure form that identified the problem addressed by the '966 patent as a long-felt need. PTX-57; Trial Tr. at 1324:20-1327:1 (Rhyne); Trial Tr. at 618:14-627:3 (Huggins). This form touted the advantages of the '966 patent invention regarding saving the user from having to keep multiple batteries. PTX-2; PTX-57; Trial Tr. at 1324:20-1327:1 (Rhyne); Trial Tr. at 612:10-618:25. Additionally, TTI not only filed an internal invention disclosure, they filed a patent application which was ultimately abandoned after the '966 patent had been identified to TTI. PTX-57; PTX-629; PTX-630 (TTI application); Trial Tr. at 618:14-627:3 (Huggins).

2. Weik (U.S. Patent No. 6,484,784)

Weik fails to disclose any of the claims of the '966 patent for the reasons described above regarding TTI's anticipation theory, all of which are incorporated herein. Furthermore, TTI has

7

failed to adduce sufficient evidence from which a jury could conclude that one of ordinary skill in the art would make the proposed modification to Weik, and instead improperly relies on hindsight. Trial Tr. at 947:18-948:5 (Foley).

Additionally, secondary considerations exist that support finding that the '966 patent inventions are not obvious. Specifically, TTI itself produced an invention disclosure form that identified the problem addressed by the '966 patent as a long-felt need. PTX-57; Trial Tr. at 1324:20-1327:1 (Rhyne); Trial Tr. at 618:14-627:3 (Huggins). This form touted the advantages of the '966 patent invention regarding saving the user from having to keep multiple batteries. PTX-2; PTX-57; Trial Tr. at 1324:20-1327:1 (Rhyne); Trial Tr. at 612:10-618:25. Additionally, TTI not only filed an internal invention disclosure, they filed a patent application which was ultimately abandoned after the '966 patent had been identified to TTI. PTX-57; PTX-629; PTX-630 (TTI application); Trial Tr. at 618:14-627:3 (Huggins).

## IV. Infringement

Following the close of TTI's case in chief, CGI renews its motion for JMOL on the issue of infringement. ECF No. 578. The testimony and evidence presented as part of TTI's case further illustrate that there is insufficient evidence of record to support a jury verdict in favor of TTI on the issue of infringement. *See, e.g.*, Trial Tr. at 1201:2-1202:21.

Dated: August 30, 2017                By:    */s/ Katherine Vidal*

George C. Lombardi
glombard@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Katherine Vidal
KVidal@winston.com
Michael Rueckheim

8

MRueckheim@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Aldo A. Badini (*pro hac vice*)
abadini@winston.com
Shanna A. Lehrman (*pro hac vice*)
slehrman@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-4601
Facsimile: (212) 294-4700

Benjamin Elacqua (*pro hac vice*)
elacqua@fr.com
FISH & RICHARDSON PC
1221 McKinney Street, Suite 2800
Houston, Texas 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Maria Elena Stiteler (*pro hac vice*)
stiteler@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Nicole L. Little (IL 6297047)
nlittle@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

ATTORNEYS FOR PLAINTIFF
THE CHAMBERLAIN GROUP, INC.

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was served on opposing counsel via CM/ECF on August 30, 2017.

>*/s/ Katherine Vidal*
>Katherine Vidal
>
>ATTORNEY FOR PLAINTIFF
>THE CHAMBERLAIN GROUP,
>INC.