

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

F I L E D

AUG **3 0** 2017

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TECHTRONIC INDUSTRIES CO. LTD., TECHTRONIC INDUSTRIES NORTH AMERICA, INC., ONE WORLD TECHNOLOGIES INC., OWT INDUSTRIES, INC., ET TECHNOLOGY (WUXI) CO. LTD., AND RYOBI TECHNOLOGIES, INC. <br><br> Defendants. | Civil Action No.: 1:16-cv-06097 <br><br> The Honorable Harry D. Leinenweber <br><br> Magistrate Judge Sidney Schenkier |

## JOINT JURY INSTRUCTIONS

## TABLE OF CONTENTS

I.  **General Jury Instructions** ................................................................................. 4

   Final Jury Instruction No. 1: Functions of The Court And The Jury ................................. 4

   Final Jury Instruction No. 2: Evidence ............................................................................. 5

   Final Jury Instruction No. 3: Stipulations of Fact ............................................................ 6

   Final Jury Instruction No. 4: Deposition Testimony ........................................................ 7

   Final Jury Instruction No. 5: What Is Not Evidence ........................................................ 8

   Final Jury Instruction No. 6: Note-Taking ....................................................................... 9

   Final Jury Instruction No. 7: Consideration Of All Evidence Regardless Of Who
       Produced ..................................................................................................................... 10

   Final Jury Instruction No. 8: Weighing The Evidence ................................................... 11

   Final Jury Instruction No. 9: Definition Of "Direct" And "Circumstantial" Evidence .... 12

   Final Jury Instruction No. 10: Testimony Of Witnesses (Deciding What To Believe) .... 13

   Final Jury Instruction No. 11: Expert Witnesses ........................................................... 14

   Final Jury Instruction No. 12: Demonstrative Exhibits .................................................. 15

   Final Jury Instruction No. 13: Burden Of Proof ............................................................ 16

   Final Jury Instruction No. 14: Clear And Convincing Evidence ..................................... 17

   Final Jury Instruction No. 15: Selection Of Presiding Juror; General Verdict ................ 18

   Final Jury Instruction No. 16: Communication With Court ............................................ 19

   Final Jury Instruction No. 17: Disagreement Among Jurors .......................................... 20

II. **Patent-Specific Jury Instructions** ....................................................................... 21

   Final Jury Instruction No. 18: Glossary of Patent Terms ............................................... 21

   Final Jury Instruction No. 19: Glossary of Technical Terms .......................................... 22

   Final Jury Instruction No. 20: Summary of Issues ......................................................... 23

   Final Jury Instruction No. 21: Claim Construction–Generally ....................................... 24

Final Jury Instruction No. 22: Claim Construction for the Case ....................................... 25

Final Jury Instruction No. 23: Infringement–Generally ................................................... 27

Final Jury Instruction No. 24: Direct Infringement–Knowledge of the Patent and Intent to Infringe Are Immaterial ................................................................................................ 28

Final Jury Instruction No. 25: Direct Infringement–Literal Infringement ....................... 29

Final Jury Instruction No. 26: Infringement of Dependent Claims .................................. 30

Final Jury Instruction No. 27: Infringement of Claims Reciting "Comprising" ............... 31

Final Jury Instruction No. 28: Direct Infringement–Infringement under the Doctrine of Equivalents ..................................................................................................................... 32

Final Jury Instruction No. 29: Inducing Patent Infringement .......................................... 33

Final Jury Instruction No. 30: Summary of Invalidity Defense ....................................... 34

Final Jury Instruction No. 31: Prior Art Defined ............................................................. 35

Final Jury Instruction No. 32: Prior Art Considered or Not Considered by the USPTO .. 36

Final Jury Instruction No. 33: Inter Partes Review Proceedings ..................................... 37

Final Jury Instruction No. 34: Invalidity of Independent and Dependent Claims ............ 38

Final Jury Instruction No. 35: Person of Ordinary Skill in the Art .................................. 39

Final Jury Instruction No. 36: Willful Infringement–Generally ....................................... 40

Final Jury Instruction No. 37: Anticipation .................................................................... 41

Final Jury Instruction No. 38: Obviousness .................................................................... 42

Final Jury Instruction No. 39: Scope and Content of the Prior Art .................................. 44

Final Jury Instruction No. 40: Level of Ordinary Skill .................................................... 45

Final Jury Instruction No. 41: Damages–Generally ......................................................... 46

Final Jury Instruction No. 42: Date of Commencement of Damages ............................... 47

Final Jury Instruction No. 43: Damages–Kinds of Damages That May Be Recovered .... 48

Final Jury Instruction No. 44: Lost Profits–"But-For" Test ............................................. 49

Final Jury Instruction No. 45: Lost Profits–Panduit Factors ........................................... 50

Final Jury Instruction No. 46: Lost Profits–Panduit Factors–Demand..............................51

Final Jury Instruction No. 47: Lost Profits–Panduit Factors–Acceptable Non-Infringing
Substitutes ..........................................................................................................52

Final Jury Instruction No. 48: Lost Profits–Market Share ..............................................53

Final Jury Instruction No. 49: Lost Profits–Panduit Factors–Capacity ............................54

Final Jury Instruction No. 50: Lost Profits–Panduit Factors–Amount of Profit Incremental
Income Approach ................................................................................................55

Final Jury Instruction No. 51: Convoyed Sales ..............................................................56

Final Jury Instruction No. 52: Reasonable Royalty–Generally.........................................57

Final Jury Instruction No. 53: Reasonable Royalty Definition–Using the "Hypothetical
Negotiation" Method...........................................................................................58

Final Jury Instruction No. 54: Reasonable Royalty - Relevant Factors If Using the
Hypothetical Negotiation Method........................................................................59

Final Jury Instruction No. 55: Reasonable Royalty - Attribution.....................................61

Final Jury Instruction No. 56: Reasonable Royalty - Multiple Patents ............................62

Final Jury Instruction No. 57: Reasonable Royalty - Timing ..........................................63

Final Jury Instruction No. 58: Reasonable Royalty - Availability of Non-Infringing
Substitutes ..........................................................................................................64

Final Jury Instruction No. 59: Reasonable Royalty - Use of Comparable License
Agreements..........................................................................................................65

## I.   <u>GENERAL JURY INSTRUCTIONS</u>

**Final Jury Instruction No. 1: Functions of The Court And The Jury**

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, or public opinion to influence you.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

**Final Jury Instruction No. 2: Evidence**

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

**Final Jury Instruction No. 3: Stipulations of Fact**

The parties have stipulated, or agreed, to the following facts.

1. U.S. Patent No. 7,224,275 (referred to as "the '275 patent") was filed on May 29, 2003 and issued May 29, 2007.

2. Plaintiff, The Chamberlain Group, Inc. (referred to as "CGI"), is the owner, by assignment, of all rights, title, and interest in the '275 patent.

3. U.S. Patent No. 7,635,966 (referred to as "the '966 patent") was filed on June 28, 2006 and issued December 22, 2009.

4. CGI is the owner, by assignment, of all rights, title, and interest in the '966 patent.

You must now treat these facts as having been proved for the purpose of this case.

**Final Jury Instruction No. 4: Deposition Testimony**

During the trial, certain testimony was presented to you by video. You should give this testimony the same consideration you would give it had the witness[es] appeared and testified here in court.

**Final Jury Instruction No. 5: What Is Not Evidence**

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

**Final Jury Instruction No. 6: Note-Taking**

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

**Final Jury Instruction No. 7: Consideration Of All Evidence Regardless Of Who Produced**

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

**Final Jury Instruction No. 8: Weighing The Evidence**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

**Final Jury Instruction No. 9: Definition Of "Direct" And "Circumstantial" Evidence**

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

**Final Jury Instruction No. 10: Testimony Of Witnesses (Deciding What To Believe)**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;
- the witness's memory;
- any interest, bias, or prejudice the witness may have;
- the witness's intelligence;
- the manner of the witness while testifying;
- and the reasonableness of the witness's testimony in light of all the evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**Final Jury Instruction No. 11: Expert Witnesses**

You have heard Dr. Thomas Rhyne, Mr. John Hansen, Dr. Michael Foley, Dr. Vijay Madisetti, and Mr. Michael Tate give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

**Final Jury Instruction No. 12: Demonstrative Exhibits**

Certain exhibits, e.g., certain PowerPoint presentations labeled as demonstratives, have been shown to you. Those demonstratives are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

**Final Jury Instruction No. 13: Burden Of Proof**

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

**Final Jury Instruction No. 14: Clear And Convincing Evidence**

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true.

This is a higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."

**Final Jury Instruction No. 15: Selection Of Presiding Juror; General Verdict**

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

**Final Jury Instruction No. 16: Communication With Court**

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

**Final Jury Instruction No. 17: Disagreement Among Jurors**

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

## II.  PATENT-SPECIFIC JURY INSTRUCTIONS

### Final Jury Instruction No. 18: Glossary of Patent Terms

**Application**–The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "USPTO" or "PTO").

**Claims**–The numbered sentences or paragraphs appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper**–See "prosecution history" below.

**License**–Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office Action**–Communication from the Patent Examiner regarding the specification (see definition below) or the claims in the patent application.

**Ordinary skill in the art**–The level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent Examiners**–Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

**Prior art**–Knowledge that is available to the public either prior to the invention by the applicant or more than one year prior to the filing date of the application.

**Prosecution history**–The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant, as well as any communication in an IPR proceeding. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial.

**References**–Any item of prior art used to determine patentability.

**Specification**–The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor describes the invention, how it works, and how to make and use it.

**Final Jury Instruction No. 19: Glossary of Technical Terms**

**CGI**–The Chamberlain Group, Inc. (Plaintiff)

**TTI**–TTI is used to refer collectively to the Defendants Techtronic Industries Co. Ltd.; Techtronic Industries North America, Inc.; One World Technologies, Inc.; OWT Industries, Inc.; and Ryobi Technologies, Inc.

**GDO**–Garage Door Opener

**MBO**–Movable Barrier Opener

**The '966 Patent**–U.S. Patent No. 7,635,966

**The '275 Patent**–U.S. Patent No. 7,224,275

**USPTO or PTO**–United States Patent and Trademark Office

**Final Jury Instruction No. 20: Summary of Issues**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following four main issues:

1.  Whether CGI has proved that TTI infringed claims 1, 5, and 15 of the '275 patent and claims 14, 17, and 18 of the '966 patent.

2.  If infringement of a valid patent is found, whether CGI has proved that TTI willfully infringed the '275 patent and the '966 patent.

3.  Whether TTI has proved that claims 1, 5, and 15 of the '275 patent and claims 14, 17, and 18 of the '966 patent are invalid.

4.  What amount of damages, if any, CGI has proved for infringement.

A.     CLAIM CONSTRUCTION

**Final Jury Instruction No. 21: Claim Construction–Generally**

Before you decide whether TTI has infringed the claims of CGI's patents or whether CGI's patents are invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are claims 1, 5, and 15 of the '275 patent and claims 14, 17, and 18 of the '966 patent. The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of a patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

**Final Jury Instruction No. 22: Claim Construction for the Case**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

| Claim Term | Construction |
| --- | --- |
| "A movable barrier operator comprising" ('275 patent, claim 1) | "An operator that controls movement of the movable barrier and may contain additional functionality, comprising" |
| "a controller having a plurality of potential operational status conditions defined, at least in part, by a plurality of operating states" ('275 patent, claim 1) | "a programmable platform (such as, for example, a microprocessor, a microcontroller, a programmable logic or gate array, or the like), that can obtain, though self-awareness or through externally developed information (*e.g.*, from sensors), two or more potential operational status conditions defined, at least in part, by two or more operational conditions being experienced by the controller [programmable platform]" |
| "a status condition signal that: corresponds to a present operational status condition defined, at least in part, by two operating states from the plurality of operating states" ('275 patent, claim 1)<br><br>"a status condition signal that: represents the present operational status defined, at least in part, by the at least two operating states" ('275 patent, claim 14) | "a status condition signal that: corresponds to a present operational status condition defined, at least in part, by at least two from the two or more operational conditions being experienced by the controller [programmable platform]" (claim 1)<br><br>"a status condition signal that: represents the present operational status condition defined, at least in part, by the at least two operational conditions being experienced by the controller [programmable platform]" (claim 14) |
| "a status condition signal that: . . . comprises an identifier that is at least relatively unique to the movable barrier operator, such that the status condition signal substantially uniquely identifies the movable barrier operator." ('275 patent, claim 1) | "a status condition signal that: . . . comprises an identifier that is sufficiently unique to allow identification of the movable barrier operator [operator that controls movement of the movable barrier and may contain additional functionality] that sent the signal" |
| "detecting at least one predetermined condition as corresponds to a present operational status defined, at least in part, by at least two operating states, of | "detecting at least one predetermined condition as corresponds to a present operational status of the movable barrier operator [operator that controls movement of the movable barrier and may contain |

| Claim Term | Construction |
|---|---|
| the movable barrier operator" ('275 patent, claim 14) | additional functionality], which status is defined, at least in part, by at least two operational conditions being experienced by the controller [programmable platform]" |
| "battery charging station" ('966 patent, claim 9, 15) | No construction necessary beyond the plain and ordinary meaning |
| "barrier movement operator" ('966 patent, claim 9, 15) | "an operator that controls movement of the movable barrier and may contain additional functionality" |
| "removably connectable" ('966 patent, claim 9) | "configured to allow a user to insert, plug-in or otherwise manually attach and detach" |
| "A method of power flow between at least one rechargeable battery, a barrier movement operator, electrically powered equipment other than and physically separate or separable from the barrier movement operator" ('966 patent, claim 15) | No construction necessary beyond the plain and ordinary meaning, with the caveat that "a barrier movement operator" is construed as "an operator that controls movement of the movable barrier and may contain additional functionality" |

**B.** **INFRINGEMENT**

**Final Jury Instruction No. 23: Infringement–Generally**

Questions 1 through 3 and Questions 9 through 10 of the Verdict Form read as follows: [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether CGI has proven that TTI infringed any of the claims of the '275 or '966 patents.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, CGI alleges that TTI's Ryobi garage door openers (including the Ryobi GD200 and GD200A model garage door openers), as well as the associated hardware and software (including the Ryobi GDO smartphone app, Ryobi ONE+ batteries, and/or Ryobi power tools) infringe claims 1, 5, and 15 of the '275 patent and claims 14, 17, and 18 of the '966 patent.

You have heard evidence about both CGI's commercial product and TTI's accused products. However, in deciding the issue of infringement you may not compare TTI's accused products to CGI's commercial product. Rather, you must compare the TTI's accused products to the claims of the '275 and '966 patents when making your decision regarding infringement.

A patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused product or method is covered by at least one claim of a patent. Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

It is not a defense to direct infringement that the accused device sometimes operates in a non-infringing mode of operation.

**Final Jury Instruction No. 24: Direct Infringement–Knowledge of the Patent and Intent to Infringe Are Immaterial**

In this case, CGI asserts that TTI has directly infringed the '275 and '966 patents. TTI is liable for directly infringing CGI's patents if you find that CGI has proven that it is more likely than not that TTI made, used, imported, offered to sell, or sold the invention defined in at least one claim of CGI's patents.

Someone can directly infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing does not infringe a patent or if they believe in good faith that the patent is invalid.

**Final Jury Instruction No. 25: Direct Infringement–Literal Infringement**

To determine literal infringement, you must compare the accused product or method with each claim that CGI asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if TTI's product or method includes each and every element in that patent claim. If TTI's product or method does not contain one or more elements recited in a claim, TTI does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

The accused product or method should be compared to the invention described in each patent claim it is alleged to infringe.

**Final Jury Instruction No. 26: Infringement of Dependent Claims**

There are two different types of claims in the patents. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. For example, claim 1 of the '275 patent is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, claim 5 of the '275 patent is a dependent claim that refers to claim 1 of the '275 patent. A dependent claim includes all of the elements recited in the dependent claim, as well as all of the elements of the claim to which it refers.

To establish literal infringement of a dependent claim, CGI must show that it is more likely than not that the TTI's product or method includes each and every element of the dependent claim and every other claim it refers to.

If you find that an independent claim from which a dependent claim depends is not literally infringed, then you must find that dependent claim is also not literally infringed.

**Final Jury Instruction No. 27: Infringement of Claims Reciting "Comprising"**

The preamble to many of the claims uses the word "comprising." For example, claim 1 of the '275 patent recites "A movable barrier operator comprising:". The word "comprising" means "including the following but not excluding others."

If you find that TTI's product or method includes all of the elements a claim using the word "comprising," even if TTI's product or method includes additional elements, you must find that TTI's product or method literally infringes the claim.

**Final Jury Instruction No. 28: Direct Infringement–Infringement under the Doctrine of Equivalents**

If you decide that TTI's product or method does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that product or method infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product or method can infringe an asserted patent claim if it includes elements that are equivalent to those elements of the claim that are not literally present in the product or method. If the product or method is missing an equivalent element to even one element of the asserted patent claim, the product or method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the product or method has an equivalent element to the individual claim element(s) that is not literally present in the product or method.

An equivalent of an element is a component or action that is insubstantially different from the claimed element. One way of showing that an element is insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product or method.

In deciding whether any difference between a claim requirement and the product or method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the element with the claimed requirement. However, the known interchangeability between the claim requirement and the element of the product or method is not necessary to find infringement under the doctrine of equivalents.

Further, the same element of the accused product may satisfy more than one element of a claim. If you find that all of the remaining elements of the claim are present in the accused product and, further, that these differences are insubstantial, you may find infringement under the doctrine of equivalents.

Further, two elements of the accused product may satisfy a single claim element. If you find that all of the remaining elements of the claim are present in the accused product and, further, that these differences are insubstantial, you may find infringement under the doctrine of equivalents.

**Final Jury Instruction No. 29: Inducing Patent Infringement**

In this case, TTI is accused of inducing another entity or person to directly infringe CGI's patent, either literally or under the doctrine of equivalents. To find that TTI induced infringement, it is not necessary to show that TTI personally directly infringed, provided: (1) a single actor directly infringes one or more claims; and (2) TTI induced these acts of infringement by this other actor. If you do not find that there is direct infringement by a single actor, or if you do not find that TTI induced these acts, you must find that TTI did not induce infringement of the patent.

To prove inducement, CGI must establish that it is more likely than not that:

1.    TTI aided, instructed, or otherwise acted with the intent to cause acts by another actor that would constitute direct infringement of at least one claim of the patent;

2.    TTI knew of the patent, or showed willful blindness to the existence of the patent, at that time;

3.    TTI knew, or showed willful blindness that, the actions of the other actor would infringe at least one claim of the patent; and

4.    the other actor infringed at least one patent claim.

To find willful blindness: (1) TTI must have subjectively believed that there was a high probability that a patent existed covering the accused product or method; and (2) TTI must have taken deliberate actions to avoid learning of the patent.

## C. INVALIDITY

**Final Jury Instruction No. 30: Summary of Invalidity Defense**

TTI contends that the asserted claims of the patents-in-suit are invalid. TTI must prove invalidity by clear and convincing evidence, *i.e.*, that it is highly probable that each asserted claim is invalid.

Claims of an issued patent may be found to be invalid. Thus, you must determine whether each of CGI's claims is invalid.

TTI contends that the claims of the '275 patent and the '966 patent are invalid for the following reasons:

U.S. Patent No. 7,224,275:

- Menard PCT (WO2001/93220) anticipation theory

- Menard PCT (WO2001/93220) + Cohen (U.S. Patent No. 6,388,559) obviousness theory

U.S. Patent No. 7,635,966:

- Craftsman 139.53919 manual/product anticipation theory

- Crusius (U.S. Patent No. 7,786,619) anticipation theory

- Crusius (U.S. Patent No. 7,786,619) obviousness theory

- Weik (U.S. Patent No. 6,484,784) anticipation theory

- Weik (U.S. Patent No. 6,484,784) obviousness theory

I will now instruct you in more detail what rules you should apply in deciding whether TTI has proved that any of the asserted claims are invalid.

### D.   PRIOR ART

**Final Jury Instruction No. 31: Prior Art Defined**

Prior art includes any of the following items received into evidence during trial:

1.   any product or method that was publicly known or used by others in the United States before the patented invention was made;

2.   any product or method that was in public use or on sale in the United States more than one year before the patent was filed;

3.   patents that issued more than one year before the filing date of the patent, or before the invention was made;

4.   publications having a date more than one year before the filing date of the patent, or before the invention was made;

5.   any product or method that was made by anyone in the United States before the patented invention was made by the named inventors where the patented invention was not abandoned, suppressed, or concealed.

In this case, TTI contends that the following items are prior art:

For the U.S. Patent No. 7,224,275:

- Menard PCT (WO2001/93220)
- Cohen (U.S. Patent No. 6,388,559)

For the U.S. Patent No. 7,635,966:

- Craftsman 139.53919 manual/product
- Crusius (U.S. Patent No. 7,786,619)
- Weik (U.S. Patent No. 6,484,784)

**Final Jury Instruction No. 32: Prior Art Considered or Not Considered by the USPTO**

Where the party challenging the validity of the patent is relying on prior art that was not considered by the PTO, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it was different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity. Regardless of whether a reference was considered by the PTO, TTI must still prove that it is highly probable that the challenged claims are invalid.

**Final Jury Instruction No. 33:  Inter Partes Review Proceedings**

The '275 and '966 patents were the subject of proceedings at the Patent Office called inter partes reviews ("IPR"). The legal standards applied by the Patent Office differ from the legal standards that you must apply. For example, Patent Office proceedings may have involved different claim constructions than this Court's claim constructions.

**Final Jury Instruction No. 34: Invalidity of Independent and Dependent Claims**

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. Rather, you must consider the validity of each claim, separately. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid. The dependent claim includes all of the elements of the independent claim from which it depends.

**Final Jury Instruction No. 35: Person of Ordinary Skill in the Art**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date. The effective filing date of the '275 patent is May 29, 2003. The effective filing date of the '966 patent is June 28, 2006.

In order to determine the obviousness of the invention, you must determine the level of ordinary skill in the field of the invention. Regardless of whether you decide to articulate in your verdict what you believe was the level of ordinary skill in the field of the invention, you must consider and assess this factor before reaching your conclusion in this case.

### E.     WILLFUL INFRINGEMENT

**Final Jury Instruction No. 36: Willful Infringement–Generally**

If you find that it is more likely than not that TTI infringed a valid claim of CGI's patent, either literally or under the doctrine of equivalents, then you must also determine whether or not TTI's infringement was willful.

To show that TTI's infringement was willful, CGI must prove by a preponderance of the evidence that TTI knew or should have known of CGI's patents and willfully infringed them. For example, you may consider whether TTI's behavior was malicious, wanton, deliberate, consciously wrongful, or in bad faith. However, you may not find that TTI's infringement was willful merely because TTI knew about the patent, without more. In determining whether CGI has proven that TTI's infringement was willful, you must consider all of the circumstances and assess TTI's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

F.     ANTICIPATION

**Final Jury Instruction No. 37: Anticipation**

If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. Simply put, the invention must be new to be entitled to patent protection under the U.S. patent laws. To prove anticipation, TTI must prove that it is highly probable that the claimed invention is not new.

For the U.S. Patent No. 7,224,275:

- Menard PCT (WO2001/93220)

For the U.S. Patent No. 7,635,966:

- Craftsman 139.53919 manual/product

- Crusius (U.S. Patent No. 7,786,619)

- Weik (U.S. Patent No. 6,484,784)

In this case, TTI contends that all of the asserted claims of the '275 and '966 patents are anticipated.     Specifically, TTI contends that the Menard PCT reference (WO2001/93220) anticipates claims 1, 5, and 15 of the '275 patent. TTI also contends that the Craftsman 139.53919 Product/Manual, the Crusius reference (U.S. Patent No. 7,786,619), and the Weik reference (U.S. Patent No. 6, 484, 784) anticipate claims 14, 17, and 18 of the '966 patent.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art reference, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular reference.

**Inherency:** In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior art reference but also what is inherently present or disclosed in that prior art or inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element or feature would necessarily result from what the single item of prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove that it is highly probable that the allegedly inherent element necessarily is present. Evidence outside of the prior art reference itself may be used to show that elements that are not expressly disclosed in the reference are inherent in it. In order to be inherent, the feature that is alleged to have been inherent must necessarily have existed in the prior art reference. The fact that it was likely is not sufficient. It is not required, however, that persons of ordinary skill actually recognize or appreciate the inherent disclosure at the time the prior art was first known or used. Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent feature was necessarily present in the reference.

### G. OBVIOUSNESS

**Final Jury Instruction No. 38: Obviousness**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, TTI may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the patent was filed in the relevant field of that patent.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the patent was filed, the scope and content of the prior art, any differences between the prior art and the claimed invention, and any additional considerations that suggest the invention was obvious or not obvious.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may consider whether at the time of the patent's filing date there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; or (5) whether it would have been obvious to try the combinations of elements, such as when there is a design or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f.    Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.   Whether the invention achieved unexpected results;

h.   Whether others in the field praised the invention;

i.    Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.    Whether others sought or obtained rights to the patent from the patent holder; and

k.   Whether the inventor proceeded contrary to accepted wisdom in the field.

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. Answering all, or some, of these questions "no" may suggest that the claims would have been obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claims. Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether TTI has proven that the claimed invention would have been obvious.

**Final Jury Instruction No. 39: Scope and Content of the Prior Art**

You must determine what is the prior art that may be considered in determining whether the patent is obvious. A prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.

**Final Jury Instruction No. 40: Level of Ordinary Skill**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent field. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1. the level of education and experience of persons actively working in the field at the time of the invention, including the inventor(s);

2. the types of problems encountered in the art at the time of the invention; and

3. the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

**H.    DAMAGES**

**Final Jury Instruction No. 41: Damages–Generally**

If you find that the accused product or method infringes any of the claims of the '275 patent and that those claims are not invalid, or that the accused product or method infringes any of the claims of the '966 patent, and that those claims are not invalid you must determine the amount of damages to be awarded CGI for the infringement. On the other hand, if you find that each of the '275 patent's claims are invalid or are not infringed and that each of the '966 patent's claims are invalid or are not infringed, then you should not consider damages in your deliberations.

CGI must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If proven by CGI, damages must be in an amount adequate to compensate CGI for the infringement. The purpose of a damage award is to put CGI in about the same financial position it would have been in if the infringement had not happened. But the damage award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My Instructions about damages are for your guidance only in the event you find in favor of CGI. You will need to decide the issue of damages only if you find that one or more of the asserted claims are both not invalid and infringed.

**Final Jury Instruction No. 42: Date of Commencement of Damages**

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that TTI has both infringed and been notified of the alleged infringement of the '275 and '966 patents. Chamberlain and TTI agree that date was early April 2016.

**Final Jury Instruction No. 43: Damages–Kinds of Damages That May Be Recovered**

There are several kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "what profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can include not only the profits the patentee would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the patentee lost from being unable to sell related products with those lost sales. Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and the patent owner would have accepted. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

## I.    LOST PROFITS

**Final Jury Instruction No. 44: Lost Profits–"But-For" Test**

CGI is seeking lost profits damages in this case for the '275 patent. To prove lost profits, CGI must show that, but for TTI's infringement, CGI would have made additional profits through the sale of all or a portion of the sales of the Ryobi GD200 and GD200A model garage door openers made by TTI. CGI must prove this by a preponderance of the evidence, more likely than not. Part of your job is to determine what the customers who purchased TTI's Ryobi GD200 and GD200A model garage door openers would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by CGI, not the profits, if any, made by TTI on the allegedly infringing sales.

**Final Jury Instruction No. 45: Lost Profits–Panduit Factors**

CGI has proven its lost profits if you find that CGI has proven each of the following factors by the more likely than not standard:

1. the demand for the patented product;

2. absence of acceptable non-infringing substitutes;

3. that CGI had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by TTI; and

4. the amount of profit that CGI would have made if it were not for TTI's infringement.

I will now explain each of these factors.

**Final Jury Instruction No. 46: Lost Profits–Panduit Factors–Demand**

The first factor asks whether there was demand for the patented product in the relevant market. CGI can prove demand for the patented product by showing significant sales of CGI's own patented product. CGI also can prove demand for the patented product by showing significant sales of TTI's products that are covered by the patent-in-suit. To use sales of TTI's products as proof of this demand, however, CGI's and TTI's products must be sufficiently similar to compete against each other in the same market or market segment. You also should not consider sales of products mainly due to advertising and marketing and unpatented features of the products as evidence of demand for the patented product.

**Final Jury Instruction No. 47: Lost Profits–Panduit Factors–Acceptable Non-Infringing Substitutes**

The second factor asks whether there were non-infringing, acceptable substitutes for the patented products in the marketplace and the impact of such substitute products on the marketplace absent the sale of TTI's products. If the realities of the marketplace are that competitors other than CGI would likely have captured some or all of the sales made by TTI, even despite a difference in the products, then CGI is not entitled to lost profits on those sales.

To be an acceptable substitute, the products must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitutes also must not infringe the patent because they were licensed under the patent or they did not include all the features required by the patent. The acceptable substitutes, in addition, must have been available during the damages period. An acceptable non-infringing substitute is available if, during the damages period, a competitor or TTI had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable non-infringing substitute. The substitute need not have actually been sold at that time. If you determine that some of TTI's customers would just as likely have purchased a non-infringing acceptable product, then CGI has not shown it lost those sales but for TTI's sales.

Even if you find that CGI's and TTI's products were the only ones with the advantages of the patented invention, CGI is nonetheless required to prove to you that it, in fact, would have made TTI's infringing sales.

**Final Jury Instruction No. 48: Lost Profits–Market Share**

If you find that there were other acceptable non-infringing substitute products in the market, then CGI may be entitled to lost profits on a portion of TTI's infringing sales. The burden is on CGI to prove that it is more likely than not that the patented product competed in the same market as TTI's infringing product, and that CGI would have made a portion of the infringing sales equal to at least CGI's share of that market but for TTI's infringement. It is not necessary for CGI to prove that CGI and TTI were the only two suppliers in the market for CGI to demonstrate entitlement to lost profits. The burden is on CGI, however, to show that it is more likely than not that it would have sold that portion had TTI's product never existed. In a two-supplier market, the burden is on CGI to show that its product competed in the same market with TTI's product and that it would have made those sales if the infringement had not occurred.

**Final Jury Instruction No. 49: Lost Profits–Panduit Factors–Capacity**

The third factor asks whether CGI had the manufacturing and marketing ability to actually make the sales it allegedly lost due to TTI's infringement. CGI must prove that it could have supplied the additional patented products needed to make the sales CGI said it lost, or that someone working with CGI could have supplied the additional patented products. CGI also must prove that it more likely than not had the ability to market and sell these additional patented products.

**Final Jury Instruction No. 50: Lost Profits–Panduit Factors–Amount of Profit Incremental Income Approach**

CGI may calculate the amount of its lost profits by calculating its lost sales for the patented product and subtracting from that amount any additional costs or expenses that CGI would have had to pay to make the lost sales. This might include additional costs for making the products, additional sales costs, additional packaging costs, additional shipping costs, etc. Any costs that do not change when more products are made, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from the lost sales amount. The amount of lost profits cannot be speculative, but it need not be proved with unerring certainty.

collateral

**Final Jury Instruction No. 51: Convoyed Sales**

In this case, CGI contends that the patented product is ordinarily sold along with other products, such as remotes and wall displays. These other products are called "collateral products." It is part of your job to determine whether CGI has proved that it is entitled to damages for the lost sales of any collateral products.

To recover lost profits for lost sales of any collateral products, CGI must prove two things. First, CGI must prove that it is more likely than not that it would have sold the collateral products but for the infringement. Second, the collateral products and the patented product must be so closely related that they effectively act or are used together for a common purpose. Damages for lost collateral sales, if any, are calculated in the same way as for calculating lost profits on the patented product.

J.      REASONABLE ROYALTY

**Final Jury Instruction No. 52: Reasonable Royalty–Generally**

If you find that CGI has not proven its claim for lost profits for the '275 patent, or if you find that CGI has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty. CGI is also seeking a reasonable royalty (and only a reasonably royalty) for the '966 patent.

The patent law provides that the amount of damages that TTI should pay CGI for infringing CGI's patents must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of CGI's invention.

You must award CGI a reasonable royalty in the amount that CGI has proved it could have earned on any infringing sales for which you have not already awarded lost profit damages. A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

**Final Jury Instruction No. 53: Reasonable Royalty Definition–Using the "Hypothetical Negotiation" Method**

      A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between CGI and TTI. Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

**Final Jury Instruction No. 54: Reasonable Royalty - Relevant Factors If Using the Hypothetical Negotiation Method**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

2. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

3. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

4. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

5. The duration of the '275 patent and the '966 patent and the term of the license.

6. The established profitability of the product made under the '275 patent and the '966 patent; its commercial success; and its current popularity.

7. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

8. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

9. The extent to which TTI has made use of the invention; and any evidence that shows the value of that use.

10. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

11. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

12. The opinion testimony of qualified experts.

13. The amount that a licensor and a licensee (such as TTI) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

14. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Final Jury Instruction No. 55: Reasonable Royalty - Attribution**

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other unpatented features of the accused product, or other factors such as marketing or advertising, or CGI's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. It is not sufficient to use a royalty base that is too high and adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented technology.

**Final Jury Instruction No. 56: Reasonable Royalty - Multiple Patents**

If you find that TTI infringed multiple patents, even by a single infringing act, and if you award a reasonable royalty for the infringement, then you may award separate royalties to CGI for each patent that was infringed. You also may consider evidence of the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

**Final Jury Instruction No. 57: Reasonable Royalty - Timing**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

**Final Jury Instruction No. 58: Reasonable Royalty - Availability of Non-Infringing Substitutes**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. A non-infringing alternative must be an acceptable product that is licensed under the patent or that does not infringe the patent.

**Final Jury Instruction No. 59: Reasonable Royalty - Use of Comparable License Agreements**

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between CGI and TTI in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between CGI and TTI, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.