# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., | Civil Action No.: 1:16-cv-06097 |
| Plaintiff, | The Honorable Harry D. Leinenweber |
| v. | |
| | Magistrate Judge Sidney Schenkier |
| TECHTRONIC INDUSTRIES CO. LTD., TECHTRONIC INDUSTRIES NORTH AMERICA, INC., ONE WORLD TECHNOLOGIES INC., OWT INDUSTRIES, INC., ET TECHNOLOGY (WUXI) CO. LTD., AND RYOBI TECHNOLOGIES, INC. | **PUBLIC, REDACTED** |
| Defendants. | |

## PLAINTIFF THE CHAMBERLAIN GROUP, INC.'S
## MOTION FOR ATTORNEYS' FEES

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD ............................................................................................1

III.   ARGUMENT .......................................................................................................3

     A.     The Court Should Award Attorneys' Fees Because this Case
            Stands Out Due to the Clear Evidence of TTI's Willful
            Infringement and the Substantive Weakness of TTI's Defenses .........................3

          1.     CGI's Infringement Case Was Strong and Supported by
                  Significant Evidence of TTI's Deliberate Infringement ..........................4

          2.     TTI's Defenses Were Weak, Frivolous, and Entirely
                  Unsuccessful ..........................................................................................6

     B.     The Court Should Award Attorneys' Fees Because of the
            Unreasonable Manner in Which TTI Litigated this Case ....................................8

     C.     CGI's Requested Attorneys' Fees are Reasonable .............................................10

     D.     TTI's Objections to CGI's Requested Attorneys' Fees are
            Without Merit....................................................................................................13

          1.     TTI Objection 1: "All fees to the extent the Court does
                  not find this case to be exceptional under 35 U.S.C.
                  § 285"....................................................................................................15

          2.     TTI Objection 2: "Fees based on invoices not provided
                   to TTI until after October 5, 2017, the due date for CGI
                   to comply with Local Rule 54.3(d)(1)"..................................................15

          3.     TTI Objection 3: "All fees reflecting billing rates above
                   the market rate".....................................................................................16

           4.     TTI Objection 4: "All fees for secretarial, paralegal, and
                   support staff, including time for clerical, administrative,
                   and/or taxable activities".......................................................................17

          5.     TTI Objection 5: "All expert fees and costs".........................................19

          6.     TTI Objection 6: "All fees associated with trial
                   consultants, mock trials, jury consultants, economic
                   consultants, and/or other optional consultants" ......................................19

          7.     TTI Objection 7: "All time entries relating to case nos.
                   16-cv-05544, 16-cv-06094, and 16-cv-06113 and ITC
                   investigation No. 337-3162, including the patents
                   asserted in the -6094 and ITC proceedings"............................................20

i

8.     TTI Objection 8: "All time entries relating to PTAB proceedings, including time entries reflecting CGI's evaluation of filing IPRs on TTI's patents"..............................................21

9.     TTI Objection 9: "Fees relating to the vacated preliminary injunction, evidentiary hearing, and Federal Circuit appeal, issues on which TTI ultimately prevailed)"....................................................................................21

10.   TTI Objection 10: "All fees for tasks performed by attorneys that were clerical in nature or otherwise delegable to paralegal or secretarially assistance"...................................23

11.   TTI Objection 11: "All excessive fees billed by partners for tasks that should have been delegated to an associate with a lower billing rate" ........................................................23

12.   TTI Objection 12: "All fees for excessive and duplicative time as a result of CGI's retention of three separate law firms and overstaffing of the case" ....................................24

13.   TTI Objection 13: "All fees that cannot be properly evaluated due to redactions or block billing" ...........................................25

IV.    CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blum v. Stenson,*
    465 U.S. 886 (1984) ............................................................................................... 11

*Central Soya Co. v. Geo. A. Hormel & Co.,*
    723 F.2d 1573 (Fed. Cir. 1983) ......................................................... 2, 12, 18, 19

*Deep Sky Software, Inc. v. Southwest Airlines Co.,*
    2015 WL 10844231 (S.D. Cal. Aug. 19, 2015) ................................................... 21

*Delgado v. Mak,*
    2009 WL 211862 (N.D. Ill. Jan. 29, 2009) ................................................... 24, 25

*Farfaras v. Citizens Bank & Tr. of Chicago,*
    433 F.3d 558 (7th Cir. 2006) ..................................................................... *passim*

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
    355 F.3d 1327 (Fed. Cir. 2004) .............................................................................. 3

*GQ Sand, LLC v. Range Mgmt. Sys., LLC,*
    No. 15-CV-152-WMC, 2017 WL 4358055 (W.D. Wis. Sept. 30, 2017) .............. 15

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ............................................................................................. 22

*Integrated Tech. Corp. v. Rudolph Techs., Inc.,*
    629 F. App'x 972 (Fed. Cir. 2015) ................................................................ 22, 23

*Intellect Wireless, Inc. v. Sharp Corp.,*
    45 F. Supp. 3d 839 (N.D. Ill. 2014) ...................................................................... 2

*Mathis v. Spears,*
    857 F.2d 749 (Fed. Cir. 1988) ...................................................................... 12, 18

*Nilssen v. Gen. Elec. Co.,*
    2011 WL 633414 (N.D. Ill. Feb. 11, 2011) ...................................... 13, 18, 20, 22

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
    134 S. Ct. 1749 (2014) .............................................................................. 2, 3, 15

*Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.,*
    776 F.2d 646 (7th Cir. 1985) ............................................................................... 13

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
  840 F.2d 1565 (Fed. Cir. 1988)........................................................................2, 21

*Pickett v. Sheriden Health Care Ctr.*,
  664 F.3d 632 (7th Cir. 2011) .........................................................................11, 16

*Sears, Roebuck & Co. v. Menard, Inc.*,
  2004 WL 2423964 (N.D. Ill. Sept. 23, 2004) ........................................................13

*Serrano v. Telular Corp.*,
  111 F.3d 1578 (Fed. Cir. 1997)...........................................................................7, 9

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  254 F. Supp. 3d 680 (D. Del. 2017).........................................................................8

*Stryker Corp v. Zimmer, Inc.*,
  2017 WL 4286412 (W.D. Mich. July 12, 2017) ......................................................4

*Takeda Chemical Indus., Ltd. v. Mylan Labs., Inc.*,
  549 F.3d 1381 (Fed. Cir. 2008)................................................................3, 12, 19

*Trustees of the Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*,
  570 F.3d 890 (7th Cir. 2009) ................................................................................16

*Trustees of the Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*,
  2008 WL 728897 (N.D. Ill. Mar. 18, 2008)...........................................................13

*Water Techs. Corp. v. Calco, Ltd.*,
  850 F.2d 660 (Fed. Cir. 1988)................................................................................3

**Statutes**

35 U.S.C. § 285.................................................................................... *passim*

## I.     INTRODUCTION

Plaintiff, The Chamberlain Group, Inc. ("CGI"), hereby moves for an attorneys' fees award of $█████████ and related non-taxable expenses (including expert fees) of $█████████.

This case was clearly exceptional within the meaning of 35 U.S.C. § 285, standing apart from ordinary patent cases in several ways.  Clear and overwhelming evidence supported CGI's claims that Defendants (collectively, "TTI") knew of CGI's U.S. Patent Nos. 7,224,275 ("the '275 patent") and 7,635,966 ("the '966 patent") but chose to deliberately infringe in blatant disregard of CGI's patent rights.  The jury found for CGI on all claims and awarded it full damages.  By contrast, TTI's defenses were unsuccessful and were either rejected several times (*e.g.*, its invalidity defenses which were rejected by the Patent Office in IPRs and then again at trial) or so weak they were defeated before trial (*e.g.*, its frivolous inequitable conduct and antitrust defenses). The comparative strength of CGI's case and weakness of TTI's case supports that this case was "exceptional."  Additionally, TTI engaged in bad faith and unreasonable litigation tactics, including deliberately attempting to circumvent this Court's orders, making frivolous arguments, and improperly using privilege as both a sword and a shield.  These unreasonable litigation tactics dramatically increased the cost of this litigation for CGI, further bolstering that this case should be declared exceptional.

CGI respectfully requests that this Court award CGI its requested attorneys' fees and related non-taxable expenses.  Although TTI offers several vague, non-specific objections, each are without merit.

## II.     LEGAL STANDARD

This Court has discretion to award attorneys' fees and other expenses to the prevailing party in an "exceptional" case.  35 U.S.C. § 285.  An exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering

both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "In determining whether to award attorneys' fees, the trial judge considers 'the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser.'" *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 853 (N.D. Ill. 2014) (citation omitted). The Supreme Court has made clear that the requirement to find a case "exceptional" is the "one and only one constraint on district courts' discretion to award attorney's fees in patent litigation." *Octane*, 134 S. Ct. at 1755.

A finding that a case is exceptional under § 285 allows the Court to award the prevailing party for all sums incurred relating to legal services performed for the lawsuit:

> The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit. We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit. . . . Accordingly, we conclude that the award of expenses was properly within the scope of § 285.

*Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (citations omitted). Applying this rule, the Federal Circuit has also held that fees for participation in post-grant proceedings at the Patent Office should also be included in an award of attorneys' fees. *See PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568-69 (Fed. Cir. 1988) (reversing, as an abuse of discretion, district court decision denying attorneys' fees for participation in reissue proceeding because "participation in PPG's reissue application proceedings was not optional . . . PPG forced Celanese to perform in the PTO precisely the same type of work Celanese would have performed had the case proceeded to trial").

Additionally, although expert fees are not recoverable under Section 285, the Court may "invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chemical Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). Courts may impose such sanction in response to "fraud or abuse of the judicial process" or "bad faith that cannot be otherwise reached by rules or statutes." *Id.* (affirming award of expert fees because of "bad faith and vexatious litigation conduct").

## III. ARGUMENT

CGI prevailed on all aspects of this case at trial, where the jury concluded that TTI willfully infringed every asserted claim of CGI's '275 and '966 patents. This case meets both prongs of the exceptional case determination: (1) it "stands out from others with respect to the substantive strength of a party's litigation position" and (2) "the unreasonable manner in which the case was litigated" by TTI. *Octane*, 134 S. Ct. at 1756. Accordingly, the Court should award CGI its attorneys' fees of $_____ and non-taxable expenses of $_____. *See* ECF No. 690.

### A. The Court Should Award Attorneys' Fees Because this Case Stands Out Due to the Clear Evidence of TTI's Willful Infringement and the Substantive Weakness of TTI's Defenses

The jury found that TTI willfully infringed the '275 patent and the '966 patent with respect to both the GD200 and GD200A models of the Ryobi garage door openers. ECF No. 607 at 3, 7. Willful infringement alone is a sufficient basis to find a case exceptional under Section 285. *See, e.g.*, *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) ("[o]ur cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner"); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 674 (Fed. Cir. 1988) ("Having found this to be a case of willful infringement, the district court's discretionary award of attorney fees was proper."). Courts regularly award fees based on a

willfulness finding. *See, e.g.*, *Stryker Corp v. Zimmer, Inc.*, 2017 WL 4286412, at *6 (W.D. Mich. July 12, 2017) (awarding $8,000,000[1] in attorneys fees based on, *inter alia*, a finding of willful infringement)  The jury's verdict of willful infringement was supported by substantial evidence (*see generally* CGI's Motion for Enhanced Damages, ECF No. 625 at 5-11) and CGI's infringement case stands out as particularly strong.  TTI's defenses, by comparison, failed at every stage of this case and stand out as particularly weak.  The contrast between CGI's case and TTI's defenses strongly supports the finding that this case was exceptional.

### 1. CGI's Infringement Case Was Strong and Supported by Significant Evidence of TTI's Deliberate Infringement

The jury heard evidence establishing that TTI knew of the '275 patent, but chose to infringe it anyway—evidence that strongly supported the jury's verdict of willful infringement.  One of the very first steps TTI took was to meet with a former high-ranking CGI executive still bound by a confidentiality agreement to seek information about CGI and its patents.



Learning this information at the outset of the Ryobi GDO project should have cautioned TTI to do something to avoid infringement.  Instead, TTI forged ahead with complete disregard for CGI's

---

[1] Although the amount of fees awarded is not mentioned in the opinion, it is present in the Court's final judgment, attached hereto as Exhibit M.

patent rights and persisted recklessly and wantonly to copy CGI's patented functionality and build the Ryobi GDO.

TTI also repeatedly tore down CGI garage door openers, including the HD930EV, which is marked with the '275 patent. Tr. (Huggins) at 604:14-606:12. TTI's witnesses agreed that this patent marking would have been "something that [TTI] needed to look into." *Id.* at 606:13-17; 607:1-13. But TTI did no such investigation of CGI's patents, instead taking the guts out of the HD930EV (thereby, separating them from CGI's patent markings) to put those CGI guts into a Ryobi shell and show it off to Home Depot as a "Ryobi" demo. *Id.* at 601:17-603:2.

Multiple third parties also warned TTI about its IP risks. Consultant Grant Carlson—who previously worked at Genie/Overhead Door, CGI's then-top competitor—knew of the '275 patent and warned TTI that IP was an area "they needed to look at." ECF No. 610-1 (Carlson Trial Dep. Designations) at 56:4-7, 70:7-11. ███████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ But, TTI never presented any evidence that it took any steps to avoid infringing any of CGI's patents. Instead, TTI actually tried to copy CGI's MyQ app that is used with the '275 patent invention by hiring the vendor LSR, whom TTI believed had written CGI's MyQ app. *See* Tr. (Huggins) at 639:19-640:3.

The evidence of TTI's willful infringement of the '966 patent was similarly clear and indisputable. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████ Despite this, TTI never presented any evidence that it took even one step in the intervening six years to avoid infringement of the '966 patent.

Thus, CGI's infringement case was clear and supported by overwhelming evidence that TTI knew of CGI's patents and deliberately infringed them anyway. The nature of the evidence in this case stands out from an average patent infringement case.

## 2.  TTI's Defenses Were Weak, Frivolous, and Entirely Unsuccessful

Just as the strength of CGI's case stands out from an ordinary patent infringement case, so, too, does the weakness of TTI's defenses. TTI did not succeed on any of its defenses at any stage in this case. The jury rejected TTI's infringement defenses, invalidity defenses, and damages theories, and did so in under two hours.

TTI did not win any of its numerous summary judgment motions. Instead, TTI lost several of its defenses when the Court granted CGI's motions for summary judgment that there was no inequitable conduct and no antitrust violations. ECF No. 549. As the Court noted, TTI abandoned its inequitable conduct theories against three of the five people mentioned in the complaint (*id.* at 10), effectively acknowledging the weakness of TTI's defenses, but only after CGI was forced to waste time and resources on those frivolous theories in briefing its motion for summary judgment. The Court also found that TTI had failed to come forward with even circumstantial evidence suggesting that Messrs. Fitzgibbon or Samples knew of the references' alleged materiality. *Id.* at 12. And the Court noted that TTI's materiality theory had already been rejected twice: initially by TTI's first expert at the PI hearing and again by the PTAB during TTI's IPR petitions. *Id.* at 14–15. Furthermore, the Court found that there was "a profound dearth of evidence concerning a deliberate decision to withhold the three references from the PTO." *Id.* at 16.

TTI's antitrust claims were also frivolous, and rightly dismissed by this Court on CGI's motion for summary judgment. *See* ECF Nos. 415, 511. All parties agreed that CGI does not

practice the '966 patent, which meant that TTI would never have been able to establish a causal connection between the '966 patent and any alleged market power. *See, e.g.*, ECF No. 415 at 28–31. Additionally, TTI's antitrust expert failed to even attempt to perform the basic economic analysis necessary to define a relevant antitrust market, further showing that TTI would never have been able to prove up any monopolization claim. *Id.* at 17–22; *see also* ECF Nos. 417, 509.

TTI's other trial defenses were likewise weak. For its invalidity case, TTI relied on several references that were, in relevant part, already considered by this Court and/or the PTAB, including the Menard PCT reference and the Craftsman reference. TTI mischaracterized this evidence to the jury saying it was something "[n]o one else has seen" in an attempt to mask the weakness of this invalidity argument. *Compare* Tr. (TTI Opening) at 66:10-16 (Menard was new information) *with* Tr. (Rhyne) at 1308:10-25 (explaining that the only relevant difference between the Menard references cited by Dr. Foley was three additional irrelevant sentences in the Menard PCT Abstract). The Federal Circuit has held that "relitigat[ing] issues already decided in [another] case" is a factor that supports finding a case exceptional and awarding fees under Section 285. *Serrano v. Telular Corp.*, 111 F.3d 1578, 1585 (Fed. Cir. 1997). TTI's invalidity defenses were also so weak they had to hire a second expert to provide opinions the first expert would not. ECF No. 549 at 14 ("In this vein, Chamberlain notes that Defendants' first expert conceded that *Peplinski* does not disclose 'electrically powered equipment other than and physically separate or separable from' the GDO; it was only upon retaining a second expert that Defendants posited this second-GDO reading of the claim language.").

TTI's infringement defenses fared no better. At the outset of this case, TTI offered essentially no infringement defenses at all. ECF No. 107 at 7 (noting that TTI's technical expert "did not examine the Ryobi GDO"). The defenses TTI created over the course of the litigation were no better. For example, its argument that the claims required sending two conditions in a

single transmission and that prosecution history estoppel (via the Doyle reference) applied were both rejected by this Court multiple times: at the contempt hearing, during claim construction, and in connection with TTI's motion for summary judgment of no infringement. ECF 397 at 5; ECF 339 at 40-41; ECF 263 at 13-16.

TTI's inequitable conduct and antitrust defenses were frivolous, and its invalidity and infringement defenses were already rejected by this Court and/or the Patent Office, confirming that TTI's only defenses were extremely weak relative to ordinary patent infringement cases. This disparity strongly supports imposing enhanced damages here. *See, e.g.*, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680, 723 & n.58 (D. Del. 2017) (awarding $7,934,881.75 in attorneys' fees based on, *inter alia*, litigation strategies that were "needlessly repetitive or irrelevant or frivolous").

### B. The Court Should Award Attorneys' Fees Because of the Unreasonable Manner in Which TTI Litigated this Case

TTI's behavior throughout this litigation was unreasonable and in bad faith. Specifically, TTI: (1) deliberately attempted to circumvent this Court's orders; (2) pursued frivolous arguments and claims; and (3) attempted to improperly use privilege as both a shield and a sword. *See generally* CGI's Motion for Enhanced Damages, ECF No. 625 at 11-17.

First, TTI's attempts to evade this Court's preliminary injunction strongly support finding this case exceptional. ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████████

████████

                                                                          It evaded this

Court's preliminary injunction order by creating a superficial redesigned version of its GDO (later

named the GD200A), which it began offering for sale ████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████  This redesign was indisputably superficial and

led to the Court finding TTI in contempt.  ECF No. 263 at 9 ("no one disputes that the original and

redesigned Ryobi GDOs are functionally equivalent" and to the extent TTI's arguments "furnish

an ounce of support for Defendants' redesign, two ounces of support evaporate").  TTI's minor

redesign strongly supports finding the case exceptional and awarding CGI attorneys' fees.

*Serrano*, 111 F.3d at 1585 ("selling [new products] embodying only minor differences over the

previous products" supports awarding attorneys' fees).

Second, TTI repeatedly made frivolous arguments throughout this litigation.  As discussed

above, TTI's defenses at trial were invalidity theories that had already been rejected by the Patent

Office and infringement theories that had already been rejected multiple times by this Court.  *See*

*supra* Section III.A.2.  And, TTI's inequitable conduct and antitrust defenses—which were rightly

dismissed on summary judgment—were entirely frivolous.  *See supra* Section III.A.2.

Additionally, TTI made motions that "baffled" the Court, such as its motion to strike parts of CGI's

experts' reports relying on discovery obtained after TTI had successfully postponed the trial.  ECF

No. 519 at 6 ("[T]he Court cannot turn a blind eye to the fact that Defendants, not Plaintiff, pushed

for postponement of trial from February to August 2017. It strains credulity for Defendants to

suggest that they would be prejudiced by Dr. Rhyne's and Mr. Hansen's reliance on discovery obtained largely in the interim.").

Third, TTI attempted to improperly use privilege to shield information from CGI about its alleged IP clearance but then sought to have witnesses testify about that same information at trial. *See, e.g.*, ███████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████ TTI continued to pursue this improper line of argument in post-trial briefing. ████████████
████████████████████████████████████████████ And, in another abuse of a privilege objections, TTI attempted to rely on opinions of counsel in post-trial briefings that it had earlier shielded from discovery by claiming it would no longer rely on them. *Compare* ECF No. 304 at 3 (TTI arguing against CGI's motion to compel by stating "TTI has never intended to rely on the opinions in defense to a charge of willful infringement") *with* ECF No. 645 at 12-13 (TTI arguing against CGI's motion for enhanced damages by relying on the opinions of counsel).

Thus, TTI's behavior throughout this litigation was consistently unreasonable and strongly supports finding this case exceptional and awarding CGI attorneys' fees.

## C.    CGI's Requested Attorneys' Fees are Reasonable

CGI has requested attorneys' fees of $████████ and related non-taxable expenses of $████████. *See* ECF No. 690 at 1–3. CGI's attorneys' fees are based on ████████████████
████████████████████████████████████████████ as broken out in the parties' Joint Local Rule 54.3 Statement. *See id.* These attorneys' fees were incurred in CGI's prosecution

10

of this case, its defense of its patents in response to TTI's IPR petitions, and the two interlocutory appeals relating to this litigation.

The Seventh Circuit has "defined a reasonable hourly rate as one that is 'derived from the market rate for the services rendered.'" *Pickett v. Sheriden Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). Further, "[w]e presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.* These actual billing rates are assessed in view of the rates that comparable attorneys charge for similar services. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate." *Id.* Here, the rates are reasonable as evidenced, in part, by the facts set forth in the accompanying Declaration of Michael L. Brody. Mr. Brody is Co-Chair of Winston & Strawn LLP's Intellectual Property Practice. Brody Decl., ¶ 2. He is experienced with budgeting for patent infringement cases and is also familiar with competitive hourly billing rates charged regionally and nationally. *Id.*, ¶ 3. Mr. Brody reviewed the docket of this case and CGI's legal bills and attests that given the overall complexity of this case, CGI's attorneys' hourly rates and overall fees are reasonable for patent litigation and comparable to those charged in the market for similar litigation. *Id.*, ¶¶ 5-9.

CGI's related non-taxable expenses are primarily expert fees and costs totaling $██████. These expert costs are recoverable under Federal Circuit precedents because of

TTI's "bad faith and vexatious litigation conduct" (*see Takeda*, 549 F.3d at 1391) discussed above, including its frivolous antitrust and inequitable conduct defenses, its repeated reliance on arguments that were already rejected, its improper efforts to circumvent this Court's orders, and its improper use of privilege objections.  The remainder of CGI's non-taxable expenses include

███████████████████████████████████████████████████████████

███████████████████████████████████████████ These remaining costs are compensable under the Federal Circuit's holding that Section 285 permits for the recovery of costs in addition to attorneys' fees.  *See Central Soya*, 723 F.2d at 1578.

CGI's total related-non-taxable expenses includes all costs claimed on its Bill of Costs. ECF No. 690 at 2 n.3.  Should the Court grant CGI's Bill of Costs in whole or in part, it should also reduce CGI's non-taxable expenses by an equivalent amount.  The fact that a cost is not recoverable under the Bill of Costs does not preclude the Court from granting such a cost as part of an award for an exceptional case.  *See Mathis v. Spears*, 857 F.2d 749, 757-58 (Fed. Cir. 1988) (rejecting argument that fees must be limited to the "relatively low 'costs'" set forth by statutes because "it would be inconsistent with the intent of Section 285 to limit prevailing-party Hydro to something less than the fees and expenses to which it was subjected").

For both its expert fees and other costs, CGI has again presented evidence of reasonableness in the declaration of Michael L. Brody.  Mr. Brody attested that these overall costs and expert fees were reasonable and competitive with those rates charged in the market for patent litigation of similar complexity.  Brody Decl., ¶ 10.  These costs were all incurred in protecting CGI's patent rights through this litigation and should be included in the Court's award under Section 285 and pursuant to its inherent power.

### D.     TTI's Objections to CGI's Requested Attorneys' Fees are Without Merit

TTI has provided several purported objections to CGI's requested attorneys' fees.  ECF No. 690 at 8-10.  TTI, however, has failed to state any of its objections "with particularity and clarity" as required by the Seventh Circuit.  *See, e.g.*, *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir. 1985).  Under this Court's local rules, "[g]eneral, unspecific objections are impermissible and may result in a waiver of the objection."  *Nilssen v. Gen. Elec. Co.*, 2011 WL 633414, at *7 (N.D. Ill. Feb. 11, 2011); *see also Sears, Roebuck & Co. v. Menard, Inc.*, 2004 WL 2423964, at *1 (N.D. Ill. Sept. 23, 2004) (Local Rule 54.3 "compels the parties to come to grips with specific objections to specific aspects of the movant's claim for fees, as opposed to simply jousting in generalities").  Additionally, "[m]any of defendant's objections fall under the category of 'nit-picking from the outside and in hindsight [which] provides no basis for disallowance' of fees."  *Trustees of the Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897, at *4 (N.D. Ill. Mar. 18, 2008).  Because TTI has failed to make timely and sufficiently specific objections, it has waived all of its alleged objections.  For example, TTI failed to identify the specific amounts in dispute, instead listing "TBD" for almost every single timekeeper.  ECF No. 690 at 5-8.

TTI apparently realized its objections were insufficient and so, on December 6, 2017—the very day CGI was required to file this motion—TTI served over 1,000 objections, the vast majority of which were entirely new.  This is plainly improper and in violation of both the Court's scheduling order (ECF No. 633) and the Local Rules, and thus constitutes a waiver of the objections.  TTI cannot justify these late objections by referring to CGI's production of its most recent invoices as they became available.  Over 800 objections relate to invoices which were provided to TTI in CGI's initial production according to the Court's scheduling order.  It is clear that TTI has not engaged in the objection process in good faith and has waived its objections.

Furthermore, the new objections provided on December 6, 2017 remain deficient because they still fail to identify the total fees allegedly at issue for most of the objections. TTI apparently intends to state and quantify its objections for the first time in its opposition (*see* ECF No. 690 at 5 n. 8), which violates Local Rule 54.3 and constitutes a waiver of TTI's objections. To the extent that TTI does provide sufficiently detailed objections, however, CGI will respond in its reply.

Additionally, TTI violated the Local Rules by refusing to provide all of its attorneys' fees and costs. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ This clearly violates Local Rule 54.3, which required TTI to disclose "the total amount of attorney's fees paid by respondent" and all "time and work records." L.R. 54.3(d)(5) & 54.3(d)(5)(A). ████████████ ████████████████████████████████████ ██████████████████████ ████████████████████████████████████ This again clearly violates Local Rule 54.3, which requires TTI to disclose "evidence of the specific expenses incurred or billed in connection with the litigation." L.R. 54.3(d)(5)(C). These blatant violations of the Local Rules should constitute a waiver of all of TTI's objections, as they prejudice CGI's ability to evaluate TTI's bills and expenses for inconsistencies between TTI's objections and its own billing practices. *See, e.g.*, *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) ("[Local Rule 54.3]'s purpose is to avoid exactly the type of hypocritical objections presented by the defendants. Although the defendants object to the use of block billing and 'vague' descriptions by Farfaras's counsel, the defendants' counsel used similarly vague descriptions and block billing.").

Even if the Court considers TTI's vague, non-specific objections despite TTI's repeated violations of the Local Rules, it will find that they are without merit for the reasons discussed below. The Court should therefore grant CGI its requested fees.

1.    **TTI Objection 1: "All fees to the extent the Court does not find this case to be exceptional under 35 U.S.C. § 285"**

For all the reasons discussed above, this case is clearly exceptional due to the strength of CGI's case, the weakness of TTI's defenses, and TTI's bad faith litigation conduct. Thus, the Court has discretion to award fees in this case. *Octane*, 134 S. Ct. at 1756.

2.    **TTI Objection 2: "Fees based on invoices not provided to TTI until after October 5, 2017, the due date for CGI to comply with Local Rule 54.3(d)(1)"**

On October 5, 2017, CGI provided all of its then-available attorneys' fee invoices. CGI specifically stated: "We will supplement these documents with additional invoices/entries as they become available." Ex. B. CGI did exactly that. CGI could not provide invoices that were not yet available. Courts regularly permit parties seeking attorneys' fees to supplement their request to include fees not-yet-incurred at the time of the original fees motion. *See, e.g.*, *GQ Sand, LLC v. Range Mgmt. Sys., LLC*, No. 15-CV-152-WMC, 2017 WL 4358055, at *8 (W.D. Wis. Sept. 30, 2017) (granting plaintiffs' original and supplemental motions for attorneys' fees in full to reflect "fees incurred as a result of defendants' post-judgment actions"). So too, here, CGI should be permitted to include these invoices. By the time of its opposition, TTI will have had all of CGI's invoices for even longer than it would have under the ordinary briefing schedule, so there is no prejudice to TTI as it can still state any objections to these later invoices in its opposition. Indeed,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

15

### 3. TTI Objection 3: "All fees reflecting billing rates above the market rate"

TTI objects to CGI's fees as allegedly unreasonable "inasmuch as they exceed the median rate charged by Chicago-area intellectual property attorneys." ECF No. 690 at 4. TTI offers no support for this alleged approach, which directly contravenes Seventh Circuit law that a reasonable rate is one "that is 'derived from the market rate for the services rendered.'" *Pickett*, 664 F.3d at 640. And, TTI provides no reason to depart from the ordinary presumption "that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.*

Additionally, TTI offers no support for its contention that the reasonable rate for every lawyer on the case should be set at the median level for Chicago, regardless of experience, technical background, size of the firm, or any other factor. Again, this contention directly contradicts Seventh Circuit law. *Trustees of the Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 905 (7th Cir. 2009) ("The reasonableness of an attorney's billing rate depends on the experience and qualifications of the professional."). The very AIPLA survey that TTI is relying on also shows that attorneys with more experience, technical specialization, or at firms with large numbers of IP lawyers consistently attain higher hourly rates in the market than the hourly rates cherry-picked by TTI. Ex. C (excerpts of AIPLA survey) at I-27 (partners), I-39 (associates). Many of CGI's attorneys in this case have experience and/or technical specialization, and all of CGI's attorneys come from firms with large, well-respected IP practices, confirming that a reasonable rate for CGI's attorneys would be higher than the rates identified by TTI. Moreover, TTI does not even properly apply its alleged standard, and instead cherry-picks a different, lower number for most of the associates on the case. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ It is clear that the true factor driving TTI's approach

to allegedly reasonable rates is TTI's desire to pick one of the lowest numbers possible in order to reduce its potential liability. This approach, however convenient it may be to TTI, is inconsistent with the law and must be rejected.

TTI's own bills also show that its approach of cherry-picking allegedly reasonable rates is entirely frivolous and bears no connection to market realities. ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

As a final note, TTI miscalculated its application of these allegedly reasonable rates. Should the Court nevertheless accept TTI's approach, CGI would still be owed $███████ in attorneys' fees and an additional $████████ in paralegal fees (assuming TTI's Objection 4 is overruled), for a total of $████████. Ex. E.

### 4. TTI Objection 4: "All fees for secretarial, paralegal, and support staff, including time for clerical, administrative, and/or taxable activities"

TTI offers no support for its proposal that paralegal time should not be compensable. Law firms regularly bill for paralegal time. ████████████████████████████, confirming that

this is regular practice in the legal market. Ex. F (██████████████████████████████████

███████); *Farfaras*, 433 F.3d at 569 (criticizing non-movant for making "hypocritical

objections" to a fees request that applied with equal force to non-movant's own bills). Courts

regularly include paralegal time in a fee award. *See, e.g.*, *Mathis v. Spears*, 857 F.2d 749, 759

(Fed. Cir. 1988) (affirming fee award including paralegal fees); *Central Soya*, 723 F.2d at 1578

("§ 285 held to include lawyer's fees for time spent on the issue of attorney fees, disbursements,

non-legal personnel, and paralegal personnel"). And, in its objection to CGI's Bill of Costs, TTI

acknowledged that Local Rule 54.3 "provid[es] for recovery of appropriate fees for paralegal and

'other persons' as attorney fees." ECF No. 666 at 12. Thus, this objection is entirely without merit

and reflects a continuation of TTI's pattern of frivolous arguments and bad faith litigation conduct.

As far as the remainder of TTI's objections, CGI cannot discern what "secretarial" or

"support staff" TTI is objecting to. CGI did not seek any fees for secretary time. CGI only sought

fees for certain staff performing trial support, trial graphics work, or e-discovery work. ████████

████████████████████████████████████████████████████████████████████████████

███████ Ex. G (██████████████████████████████████████████); *Farfaras*, 433 F.3d

at 569 (criticizing "hypocritical objections"). The Federal Circuit has confirmed that Section 285

can include fees and disbursements for "non-legal personnel." *Central Soya*, 723 F.2d at 1578.

And, again, TTI explicitly acknowledges that Local Rule 54.3 provides for recovery of fees from

"other persons" as attorneys' fees. ECF No. 666 at 12.

Finally, CGI cannot discern what time entries are at issue with respect to TTI's objection

to "time for clerical, administrative, and/or taxable activities." ECF No. 690 at 8. Because TTI

has failed to object with sufficient specificity to identify even one time entry at issue, it has waived

this objection. *Nilssen*, 2011 WL 633414, at *7.

5.      **TTI Objection 5: "All expert fees and costs"**

TTI objects to CGI's request for expert fees "because expert fees are not recoverable absent a finding of fraud or abuse of judicial process." ECF No. 690 at 8. This misstates the law. The Federal Circuit has clearly stated that district courts may award expert fees based on "bad faith and vexatious litigation conduct." *Takeda*, 549 F.3d at 1391. As discussed above, TTI repeatedly engaged in bad faith and vexatious litigation conduct, and thus expert fees are awardable here.

Notably, TTI does not otherwise object to the amount or reasonableness of CGI's expert fees and has thus waived any such objections should the Court find TTI to have engaged in bad faith litigation conduct.

6.      **TTI Objection 6: "All fees associated with trial consultants, mock trials, jury consultants, economic consultants, and/or other optional consultants"**

TTI again fails to clearly identify precisely what time is objected to under its sixth objection, but this appears to be a reference to the fees sought for ███████████████████

████████████████████████████████████████████████████

████  ██████████████  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

It is unclear what the basis of TTI's objection is. The Federal Circuit has confirmed that Section 285 can include fees and disbursements for "non-legal personnel." *Central Soya*, 723 F.2d at 1578. And, TTI explicitly acknowledged that Local Rule 54.3 provides for recovery of fees from "other persons" as attorneys' fees. ECF No. 666 at 12. Finally, although they did not testify at trial, ██████████████████████████████ are considered experts in their fields and these fees are also recoverable due to TTI's bad faith litigation conduct, as discussed above.

7. **TTI Objection 7: "All time entries relating to case nos. 16-cv-05544, 16-cv-06094, and 16-cv-06113 and ITC investigation No. 337-3162, including the patents asserted in the -6094 and ITC proceedings"**

TTI's objection 7 refers to its Defendants' Exhibit A, which contains a list of approximately 100 time entries that TTI objects to as allegedly unrelated to this case. Many of these entries actually relate to litigation work relating to TTI's IPR petitions on the '966 and '275 patents, and thus are directly related to this case. ██████████████████████████████████

███████████████. Other entries relate to work on this litigation, ██████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ Thus, TTI's objections are clearly improper and over-inclusive, and should be denied on that basis alone. Additionally, the entries that do reference other case numbers are not improper: this litigation has required coordination between the cases and several depositions were jointly taken between the cases, so a mere reference to other litigation does not support TTI's argument that these time entries are improper. The time records subject to this objection directly relate to this litigation and to the coordination necessary for this litigation, and are thus properly recoverable.

Additionally, TTI provides no basis by which the Court could discern which entries are at issue for Objection 7 vs. Objection 8, as both are combined into a single exhibit. Because neither the Court nor CGI can discern the amount at issue under this objection, TTI has waived its objection. *See Nilssen*, 2011 WL 633414, at *7.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

8.    **TTI Objection 8: "All time entries relating to PTAB proceedings, including time entries reflecting CGI's evaluation of filing IPRs on TTI's patents"**

TTI objects to CGI's ▇▇▇▇▇▇▇▇ legal fees "inasmuch as they relate to unrelated proceedings before the Patent Trial & Appeal Board." ECF No. 690 at 4. This objection is easy to dispose of: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇, and thus are all directly related to this case and are all compensable. Additionally, the Federal Circuit has confirmed that fees for related Patent Office proceedings are properly included in an award under Section 285. *See PPG Indus.*, 840 F.2d at 1568-69; *see also Deep Sky Software, Inc. v. Southwest Airlines Co.*, 2015 WL 10844231, at *2-3 (S.D. Cal. Aug. 19, 2015) (awarding fees for *inter partes* reexamination proceedings).

Notably, TTI does not otherwise object to the amount or reasonableness of CGI's legal fees associated with TTI's IPRs against the patents-in-suit and thus has waived any objection to the amount or reasonableness of these fees.

9.    **TTI Objection 9: "Fees relating to the vacated preliminary injunction, evidentiary hearing, and Federal Circuit appeal, issues on which TTI ultimately prevailed)"**

The Supreme Court has made clear that fee awards should compensate for all of an attorneys' fees where a party was successful at trial, even if that party did not prevail with respect to certain individual contentions:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters.

21

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  A reduced fee may be appropriate where a party prevails only on certain *claims* and loses other claims.  *Id.* at 440.

Other courts in this District, and the Federal Circuit, have confirmed this same rule applies to patent cases—that an ultimately successful party should ordinarily be awarded its full fees:

> The instant case involves § 285, and the Federal Circuit has made clear time and again that, under § 285, a court is not required to have "parsed out the charges for fees incurred in connection with the presentation of" an issue on which it lost "from all other fees [that party] incurred in defense of" the case.  *Brasseler, U.S.A.I., LP v. Stryker Sales Corp.,* 267 F.3d 1370, 1386 (Fed. Cir. 2001).  When a prevailing party has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation. Litigants in good faith may raise alternative legal grounds for a desired outcome, and "'the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.'"

*Nilssen*, 2011 WL 633414, at *10.

Here, CGI was ultimately successful with respect to every claim it asserted.  CGI proved at trial that (1) TTI infringed both the '275 and '966 patents with respect to all accused products, (2) TTI willfully infringed both the '275 and '966 patents with respect to all accused products, and (3) that CGI was entitled to lost profits.  CGI successfully defeated all of TTI's defenses at trial and had previously defeated TTI's inequitable conduct and antitrust defenses and counterclaims on summary judgment.  Thus, CGI prevailed in all respects and should be awarded its fees for the entire case.  CGI's temporary loss of the preliminary injunction on claim construction grounds did not finally resolve any of CGI's claims and ultimately had no effect on TTI's willful infringement of all asserted claims for all asserted products.  *Cf. Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 629 F. App'x 972, 977 (Fed. Cir. 2015) (reducing fee award where, after interlocutory appeal, certain products were found not to infringe because "[a]fter the appeal, [plaintiff] won only a portion of its original case").  Indeed, the Federal Circuit's ruling broadened the claims, enhancing CGI's infringement case.

10. **TTI Objection 10: "All fees for tasks performed by attorneys that were clerical in nature or otherwise delegable to paralegal or secretarially assistance"**

TTI identifies only six specific time entries under this objection, totaling $█████ in dispute. Ex. I. These time entries properly reflect time spent by attorneys on matters related to his case. For example, TTI alleges that a time entry for ███████████ is improper. However, ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████

11. **TTI Objection 11: "All excessive fees billed by partners for tasks that should have been delegated to an associate with a lower billing rate"**

TTI objects only to 18 time entries which appear to all ███████████████████ ████████████████████████████████████████████████████████████████████ ████████ █████ ███████████████████████ ████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

*See Farfaras*, 433 F.3d at 569 (criticizing non-movant for making "hypocritical objections" to a fees request that applied with equal force to non-movant's own bills). ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████

12. **TTI Objection 12: "All fees for excessive and duplicative time as a result of CGI's retention of three separate law firms and overstaffing of the case"**

Other than objecting to ███████████████████, TTI fails to identify what time entries are allegedly excessive or duplicative. Thus, TTI has waived any objection to ████████████ ████████████████ allegedly excessive or duplicative.

CGI's bills in this case were reasonable overall for a patent litigation matter of this complexity. *See supra* Section III.C; Brody Decl. at ¶¶ 5-11. To the extent TTI is objecting to the overall amount of fees, "it is important to bear in mind that Plaintiff bore the burden of proof at trial. For that reason, many courts have remarked that '[u]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant.'" *Delgado v. Mak*, 2009 WL 211862, at *5 (N.D. Ill. Jan. 29, 2009). Even so, ████████████████ ███████████████████████████████████████████████████████ █████████████████████████████████████████████

Additionally, TTI's contention that Fitch Even operated exclusively as local counsel is incorrect. Moreover, there is no support for TTI's argument that local counsel fees cannot be recoverable. Fitch Even was originally retained as local counsel and performed legal services at a reasonable rate in that role. But, Fitch Even was forced to become more involved in the case in response to TTI's specious inequitable conduct and antitrust defenses and counterclaims (*see supra* Section III.A.2), which Fitch Even was knowledgeable about due to its role as prosecution counsel for the asserted patents. ███████████████████████████████████

---

[2] 



Finally, TTI's complaints about CGI hiring multiple law firms are misplaced.

This confirms that it is neither improper nor unusual to retain multiple firms in complex patent litigation like this case.

### 13. TTI Objection 13: "All fees that cannot be properly evaluated due to redactions or block billing"

TTI only objects to 15 entries, totaling only $_____ of CGI's requested fees. Ex. K.

TTI's objection, however, is meritless. Block billing "is not a prohibited practice." *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) (affirming award of fees). Instead, the standard is "based on the market—that is, 'the level of detail paying clients find satisfactory.'" *Delgado*, 2009 WL 211862, at *4. The market clearly tolerates block billing, as shown by the fact that _____. *See* Ex. L (_____); *Farfaras*, 433 F.3d at 569 (criticizing non-movant for making "hypocritical objections" to a fees request that applied with equal force to non-movant's own bills). And, CGI's redactions are appropriate and limited to redacting privileged information. TTI fails to identify any way in which the presence of redactions prevents it from opposing CGI's fees motion.

## IV. CONCLUSION

For the foregoing reasons, CGI respectfully requests the Court find this case exceptional under Section 285, find that TTI engaged in bad faith litigation conduct, and award CGI attorneys' fees of $_____ and related non-taxable expenses (including expert fees) of $_____.

Dated: December 6, 2017       By:    */s/ Katherine Vidal*

Katherine Vidal
KVidal@winston.com
Michael Rueckheim
MRueckheim@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Benjamin Elacqua (*pro hac vice*)
elacqua@fr.com
FISH & RICHARDSON PC
1221 McKinney Street, Suite 2800
Houston, Texas 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Maria Elena Stiteler (*pro hac vice*)
stiteler@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

ATTORNEYS FOR PLAINTIFF
THE CHAMBERLAIN GROUP, INC.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document was served on opposing counsel via

CM/ECF on December 6, 2017.

/s/ Katherine Vidal
Katherine Vidal
*Attorneys for Plaintiff*
*The Chamberlain Group, Inc.*